**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| ALLISON L. MERRILL and BRITTANY WILK, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| TRANSWORLD SYSTEMS, INC., and U.S. BANK NATIONAL ASSOCIATION, | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

Case No.: 1:20-cv-00183

Hon. Paul L. Maloney
U.S. District Judge

Hon. Sally J. Berens
U.S. Magistrate Judge

ORAL ARGUMENT REQUESTED

<u>**MEMORANDUM OF LAW IN SUPPORT OF U.S. BANK NATIONAL ASSOCIATION'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**</u>

Albert J. Rota
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
ajrota@jonesday.com

Andrew J. Clopton
JONES DAY
150 West Jefferson Avenue
Suite 2100
Detroit, Michigan 48226
Telephone: (313) 733-3939
Facsimile: (313) 230-7997
aclopton@jonesday.com

*Counsel for U.S. Bank National Association*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... iv

INTRODUCTION ......................................................................................1

BACKGROUND ........................................................................................1

I.  THE TRUSTS ....................................................................................1

  A.  The Trusts Were Formed to Issue Securities ........................................1

  B.  The Trusts Act Only Through Duly Appointed Agents and Contractors ...............2

II.  THE CURRENT DISPUTE...........................................................................4

STANDARD OF REVIEW ..............................................................................6

ARGUMENT ..........................................................................................7

I.  PLAINTIFFS' FDCPA CLAIM MUST BE DISMISSED................................................7

  A.  Plaintiffs Fail to Allege That U.S. Bank Is a "Debt Collector"
      and Thus Subject to the FDCPA .................................................8

  B.  Even if U.S. Bank Were a "Debt Collector" Under the FDCPA,
      Plaintiffs' Allegations Are Insufficient to Impose Vicarious Liability ................10

    1.  TSI Acts on Behalf of the Trusts, not U.S. Bank......................................12

    2.  The Agreements Explicitly Provide That TSI Is an Independent
        Contractor .............................................................................13

    3.  U.S. Bank Lacks the Requisite Amount of Control Over TSI..................14

  C.  Plaintiff Wilk's FDCPA Claim Is Time-Barred ....................................16

II.  PLAINTIFFS' MCPA CLAIM MUST BE DISMISSED ................................................18

  A.  Plaintiffs Have Not Adequately Alleged that U.S. Bank Is Subject
      to Liability Under the MCPA .....................................................18

  B.  Plaintiff Wilk's MCPA Claim Is Partially Time-Barred .......................18

III.     PLAINTIFFS' OTHER STATE-LAW CLAIMS FAIL ....................................................19

     A.     Plaintiffs Fail to Allege a Malicious Prosecution Claim ........................................19

     B.     Plaintiffs Fail to Allege a Claim for Unjust Enrichment .......................................23

CONCLUSION ...........................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

CASE                                                                                                      PAGE(S)

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................6

*Barber v. SMH (US), Inc.*,
    509 N.W.2d 791 (Mich. Ct. App. 1993) ..........................................................23, 24

*Barnard v. Hartman*,
    344 N.W.2d 53 (Mich. Ct. App. 1983) ................................................................22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).....................................................................................6, 18

*Brady v. Chase Home Fin., LLC*,
    No. 1:11-cv-838, 2012 WL 1900606 (W.D. Mich. May 24, 2012).........................18

*Brewer v. William C. Grossman, PLLC*,
    No. 2:17-cv-13609-TGB, 2018 WL 4688944 (E.D. Mich. Sept. 28, 2018) ...........17

*Cates v. Crystal Clear Techs., LLC*,
    874 F.3d 530 (6th Cir. 2017) ....................................................................7, 14, 21

*Chrysler Corp. v. Fedders Corp.*,
    540 F. Supp. 706 (S.D.N.Y. 1982) ....................................................................22

*Clark v. Capital Credit & Collection Servs., Inc.*,
    460 F.3d 1162 (9th Cir. 2006) ...........................................................................11

*Davidson v. Capital One Bank (USA), N.A.*,
    797 F.3d 1309 (11th Cir. 2015) ...........................................................................9

*Friedman v. Dozorc*,
    312 N.W.2d 585 (Mich. 1981).............................................................19, 20, 21, 22

*Gold v. Cadence Innovation, LLC*,
    577 F. Supp. 2d 896 (E.D. Mich. 2008)...............................................................24

*Gold v. Midland Credit Mgmt., Inc.*,
    82 F. Supp. 3d 1064 (N.D. Cal. 2015) .............................................................8, 10

*Greenberg v. Life Ins. Co. of Virginia*,
177 F.3d 507 (6th Cir. 1999) ....................................................6

*Hall v. Sweet*,
666 F. App'x 469 (6th Cir. 2016) ..............................................6

*Hartford Fire Ins. Co. v. Walter Kidde & Co.*,
328 N.W.2d 29 (Mich. Ct. App. 1982) ......................................11

*Hoch v. SunTrust Mortgage, Inc.*,
No. 1:18-cv-767, 2019 WL 1383712 (W.D. Mich. Jan. 18, 2019)..........18

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
130 S. Ct. 1605 (2010)..........................................................11

*Jodway v. Orlans, PC*,
759 F. App'x 374 (6th Cir. 2018) ...........................................17

*Johnson v. Midland Credit Mgmt. Inc.*,
No. 1:05-cv-1094, 2006 WL 2473004 (N.D. Ohio Aug. 24, 2006).....................9, 10

*Jones v. Royal Administration Services, Inc.*,
887 F.3d 443 (9th Cir. 2018) ..........................11, 12, 13, 14, 15, 16

*Kauffman v. Shefman*,
426 N.W.2d 819 (Mich. Ct. App. 1988) ....................................20

*Keating v. Peterson's Nelnet, LLC*,
615 F. App'x 365 (6th Cir. 2015) ......................................13, 14

*Little v. Howard Johnson Co.*,
455 N.W.2d 390 (Mich. Ct. App. 1990) ............................14, 15, 16

*Meyer v. Holley*,
537 U.S. 280 (2003)..............................................................11

*Miranda v. Field Asset Services*,
No. 3:11-cv-1514, 2013 WL 124047 (S.D. Cal. Jan. 9, 2013) ................10

*New Dimension Dev., Inc. v. Orchard, Hiltz & McCliment, Inc.*,
No. 262565, 2005 WL 2806234 (Mich. Ct. App. Oct. 27, 2005)......................23, 24

*Rotkiske v. Klemm*,
140 S. Ct. 355 (2019)..........................................................17

*Sage Int'l, Ltd. v. Cadillac Gage Co.*,
  556 F. Supp. 381 (E.D. Mich. 1982)......................................................................19

*Slorp v. Lerner, Sampson & Rothfuss*,
  587 F. App'x 249 (6th Cir. 2014) ...................................................................16, 17

*Smith v. Glenmark Generics, Inc., USA*,
  No. 315898, 2014 WL 4087968 (Mich. Ct. App. Aug. 19, 2014)...........................23

*Smith v. Lerner, Sampson & Rothfuss, L.P.A.*,
  658 F. App'x 268 (6th Cir. 2016) ...........................................................................17

*Stone v. JPMorgan Chase Bank, N.A.*,
  415 F. Supp. 3d 628 (E.D. Pa. 2019) .......................................................................9

*Wadlington v. Credit Acceptance Corp.*,
  76 F.3d 103 (6th Cir. 1996) ..............................................................................8, 10

*Wheatley v. W. Cent. Michigan Employment & Training Consortium, Inc.*,
  341 F. Supp. 3d 753 (W.D. Mich. 2018) ..........................................11, 12, 13, 15, 16

*Williams v. CitiMortgage, Inc.*,
  498 F. App'x 532 (6th Cir. 2012) .......................................................................7, 21

*Young v. Motor City Apartments Ltd. Dividend Hous. Ass'n No. 1 & No. 2*,
  350 N.W.2d 790 (Mich. Ct. App. 1984) .............................................................19, 22

RULES

Fed. R. Civ. P. 8.............................................................................................................18

STATUTES

12 Del. C. § 3806(a)........................................................................................................2

15 U.S.C. § 1692a.......................................................................................................8, 9

15 U.S.C. § 1692k.....................................................................................................8, 16

Mich. Comp. Laws § 445.252......................................................................................18

Mich. Comp. Laws § 600.5813....................................................................................18

**OTHER AUTHORITIES**

Black's Law Dictionary (11th ed. 2019).........................................................................20

Restatement (Third) Of Agency § 1.04 (2006).............................................................13

Restatement (Third) Of Agency § 1.04 (2006), Cmt. a ................................................12

Restatement (Third) Of Agency § 1.04 (2006), Cmt. i ................................................13

## INTRODUCTION

Plaintiffs Allison Merrill and Brittany Wilk sue U.S. Bank National Association ("U.S. Bank") and Transworld Systems Inc. ("TSI") alleging that TSI improperly serviced student loans on behalf of various National Collegiate Student Loan Trusts (the "Trusts").  Their complaint is based entirely on unproven allegations that are borrowed from other plaintiffs and that have no basis in fact.  But the claims against U.S. Bank fail for even more fundamental reasons. Specifically, Plaintiffs sue U.S. Bank for violations of the Fair Debt Collection Practices Act ("FDCPA") and the Michigan Collection Practices Act ("MCPA"), but they have failed to allege that U.S. Bank is even subject to those statutes, and most of Plaintiff Wilk's claims are time-barred in any event.  Moreover, Plaintiffs have not alleged the required elements of their state-law claims for malicious prosecution and unjust enrichment.  All claims against U.S. Bank must therefore be dismissed.

## BACKGROUND

### I.    THE TRUSTS.

#### A.  The Trusts Were Formed to Issue Securities.

Each of the Trusts is a Delaware Statutory Trust formed between 2003 through 2007 for the purpose of acquiring student loans and issuing debt securities through Indentures.[1]  The holders of the debt securities ("Noteholders"), via an Indenture Trustee, are entitled to a first-priority security interest in the payments made on the underlying student loans.  *See* Indenture ("Granting

_____

[1] Four Trusts are relevant to Plaintiffs' allegations.  TSI allegedly sued Plaintiffs on behalf of NCSLT 2005-3; NCSLT 2006-4; NCSLT 2004-2; and NCSLT 2006-3.  Compl. ¶¶ 73, 79, 86.  The relevant governing contracts, including the Trust Agreements and Indentures, were publically filed for each of these Trusts through the SEC's EDGAR system.  Because the relevant terms are substantively similar for purposes of this motion, citations will specifically refer to the governing contracts for NCSLT 2005-3.

Clause").[2]  The Trusts also issued residual equity interests in the form of certificates to other investors ("Residual Owners").  The Residual Owners get paid only after all obligations to the Noteholders have been satisfied and the Indentures discharged.  *Id.*

### B.  The Trusts Act Only Through Duly Appointed Agents and Contractors.

As Delaware Statutory Trusts, the Trusts have no officers or directors and act exclusively through limited agents or contractors with specific duties, as set forth in a series of agreements (collectively, the "governing contracts").  The Delaware Statutory Trust Act provides that "the business and affairs of a statutory trust shall be managed by or under the direction of its trustees," unless otherwise provided in the trust's governing contracts.  12 Del. C. § 3806(a).  The Trust Agreement for each Trust vests in an Owner Trustee "all the rights, powers and duties set forth" in the Trust Agreement and in the Delaware Statutory Trust Act.  *See* Trust Agreement § 2.04.[3] The Trusts additionally appointed an Administrator to perform certain duties on behalf of the Trusts.  *See* Administration Agreement ("Second and Third Whereas Clauses");[4] *id.* § 1(a)–(d), Schedule A; Trust Agreement §§ 7.11, 8.01, 8.03.  The Residual Owners have limited rights to direct the Owner Trustee to take certain actions but cannot act directly on behalf of the Trusts. *See, e.g.*, Trust Agreement § 4.02(b).  Such direction cannot be "contrary to" the governing contracts, and the Owner Trustee is not "obligated to follow any such direction, if given."  *Id.*; *see also id.* §§ 4.02(a), 2.03(b)(i); *see, e.g.*, Exhibit A, Special Master Order at 3, *The National*

---

[2] *Available at* 
https://www.sec.gov/Archives/edgar/data/1338373/000088237705003116/ncslt_ex4-1.htm.

[3] *Available at* 
https://www.sec.gov/Archives/edgar/data/1338373/000088237705003116/ncslt_ex10-9.htm.

[4] *Available at* 
https://www.sec.gov/Archives/edgar/data/1338373/000088237705003116/ncslt_ex10-10.htm.

*Collegiate Student Loan Master Trust v. Pennsylvania Higher Education Assistance Agency*, No. 12111-VCS (Del. Ch. Ct. June 21, 2019) (recognizing the Owner Trustee's right to decline to follow the Residual Owners' instructions involving the Trusts).[5]

Servicers and subservicers collect amounts due on the underlying loans on behalf of the Trusts.  For special servicing (*i.e.*, delinquent and default loan servicing), the Owner Trustee, acting on behalf of the Trusts, entered into a Special Servicing Agreement with First Marblehead Education Resources, Inc. ("First Marblehead") to act as Special Servicer to collect on delinquent loans.  Exhibit B, Special Servicing Agreement ("SSA") § 2.A.  When loans reach certain levels of delinquency, Pennsylvania Higher Education Assistance Agency ("PHEAA"), the pre-default servicer, is required to transfer those loans to the Special Servicer pursuant to a September 26, 2008 agreement entered into by the Trusts, PHEAA, and the transaction sponsor (the "Read and Agreed Letter").

The Special Servicing Agreement designated U.S. Bank as Back-Up Special Servicer to automatically become the Successor Special Servicer in the event of First Marblehead's resignation.  Exhibit B, SSA § 8.A.  Additionally, a Default Prevention and Collection Services Agreement (the "TSI Agreement") designated TSI's predecessor, NCO Financial Systems Inc. ("NCO"), as a special subservicer to manage the past-due and default servicing for the Trusts in the event U.S. Bank became the Successor Special Servicer.  Exhibit C, TSI Agreement.  The TSI Agreement was attached as an exhibit and incorporated by reference into the Special Servicing Agreement and consented to by the Trusts through the Owner Trustee.  *See* Exhibit B, SSA § 8.G (stating that U.S. Bank, as Backup Special Servicer, "shall at all times maintain in full force (i) the

---

[5] References to "Exhibit" herein refer to Exhibits A through C, submitted with this Motion.

NCO [TSI] Agreement, and the engagement of NCO [TSI] thereafter as Subservicer . . . .").  Thus, when First Marblehead resigned in 2012, U.S. Bank became the Successor Special Servicer and NCO became Special Subservicer.  In 2014, NCO was succeeded by TSI, which currently manages the past-due and default loan servicing for the Trusts.  *See* Compl. ¶ 11 (acknowledging that NCO is TSI's "predecessor").

The TSI Agreement expressly provides that TSI will act as an independent contractor for the Trusts.  Exhibit C, TSI Agreement § 11.4.  Nothing in the Special Servicing Agreement or the TSI Agreement requires any further authorization or direction to TSI with respect to bringing collection actions.  Additionally, in its role as Successor Special Servicer, U.S. Bank is prohibited from directly undertaking special servicing activities, and it has no duty to monitor or supervise such activities.  *See* Exhibit B, SSA § 8.A ("[N]othing in this Agreement shall be construed to require *or permit* the Back-Up Special Servicer (in its capacity as Special Servicer or otherwise) to undertake direct collection or enforcement activities . . . ." (emphasis added)); *id.* § 8.D (U.S. Bank not required to "supervise or monitor the performance" of Servicers or Subservicers and "shall have no liability for the acts or omissions of any such Servicer or Subservicer").  U.S. Bank does not receive any fees in its role as Successor Special Servicer.

## II.    THE CURRENT DISPUTE.

After Plaintiffs took out student loans and then defaulted on those obligations, the Trusts sued Plaintiffs to recover the amounts owed.  Plaintiffs now bring claims against TSI and U.S. Bank stemming from those previous lawsuits.

Plaintiffs assert throughout the Complaint that TSI lacks authority to service loans for the Trusts.  *See, e.g.*, Compl. ¶¶ 74, 87, 115(a), 122(a), 134.  Accordingly, they claim that TSI falsely represented that the collection lawsuits were brought on behalf of the Trusts.  *See, e.g.*, Compl. ¶ 74.  These allegations are based entirely on two irrelevant actions taken, not by the Trusts, but

by the Residual Owners.[6]  Plaintiffs allege: (1) that in 2015, the Residual Owners issued a directive to the Administrator to stop providing TSI with loan files, Compl. ¶ 43; and (2) that a lawsuit was filed in 2018 in Delaware state court against TSI and U.S. Bank to enjoin them from continuing to service loans without authorization, Compl. ¶ 44.

*2015 Direction Letter*.  The 2015 "directive" from the Residual Owners did not, in fact, direct the Administrator to "stop providing TSI with defaulted loan files."  *See* Compl. ¶ 43. Instead, it told the Administrator to "cease and desist from giving any direction to PHEAA," the pre-default loan servicer for the Trusts.  *See* Verified Amended Complaint ¶ 60(2), *The National College Master Student Loan Trust I, v. U.S. Bank National Ass'n*, No. 2018-0167-JRS, 2018 WL 3094756 (Del. Ch. Ct. June 15, 2018).  Regardless, the "directive" is irrelevant because PHEAA transfers the loans pursuant to the Read and Agreed Letter, not a direction from the Administrator. And, in any event, TSI services the loans pursuant to the TSI Agreement.  The Residual Owners did not direct the Administrator to terminate the TSI Agreement (not that they have the power to do so), and the Administrator did not terminate that agreement.

*2018 Litigation*.  Plaintiffs allege that, to enforce the 2015 directive, the "NCSLT Trusts" filed suit in Delaware against the Administrator, U.S. Bank, and TSI.  Compl. ¶ 44.  Again, however, the 2018 litigation was brought by the Residual Owners, not the Owner Trustee on behalf of the Trusts.  Consequently, all defendants moved to dismiss the complaint for lack of standing because the Residual Owners cannot act unilaterally for the Trusts.  *See, e.g.*, Administrator Br. in

---

[6] Given the historical default rates for loans in the Trusts, the Residual Owners are unlikely to receive any cash flow from the loan repayments after all obligations to the Noteholders have been discharged.  Accordingly, the Residual Owners began a self-interested campaign against the other Trust deal parties with the goal of inverting the contractual priority of interests to place themselves above the Noteholders.  U.S. Bank will otherwise spare the Court most of the details regarding this self-serving campaign by the Residual Owners for purposes of the immediate motion.

Supp. of its Mot. to Dismiss, No. 2018-0167-JRS, 2018 WL 3601375 (Del. Ch. Ct. July 20, 2018);

U.S. Bank Nat'l Ass'n. Br. in Supp. of Mot. to Dismiss, No. 2018-0167-JRS, 2018 WL 3601376

(Del. Ch. Ct. July 20, 2018).   The propriety and scope of the Residual Owners' direction to the

Administrator to cease and desist directing PHEAA, as well as whether the Administrator must

follow that direction, are at issue in the lawsuit, which has yet to result in any final judgment.

Indeed, the court has not ruled on the initial dispositive motions.[7]   Regardless, TSI remains the

duly appointed Special Subservicer for the Trusts.[8]

## STANDARD OF REVIEW

To withstand a motion to dismiss, Plaintiffs must allege "enough facts to state a claim to

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563, 570 (2007).

The complaint must provide "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Id.* at 555.   "Nor does a complaint suffice if it tenders

naked assertions devoid of further factual enhancement."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (internal quotations and brackets omitted).   When reviewing a motion to dismiss, a court

may consider any document "not formally incorporated by reference or attached to a complaint"

if the document is "referred to in the complaint and is central to the plaintiff's claim."   *Greenberg*

*v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999); *see also Hall v. Sweet*, 666 F. App'x

469, 474 (6th Cir. 2016) (explaining that courts may consider "contracts attached to defendant's

motion to dismiss that were referenced in and central to plaintiff's complaint").   And where "a

---

[7] The case was consolidated on January 21, 2020 with *Nat'l Collegiate Student Loan Master Tr. I v. PHEAA*, C.A. No. 12111-VCS (Del. Ch. Ct.).

[8] Accordingly, the Delaware litigation does not affect the issues in this motion.  To the extent the Court has questions or concerns about that pending litigation, U.S. Bank will provide supplemental briefing.

written instrument contradicts allegations in the complaint," the written instrument "trumps the allegations." *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017); *see also Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) ("[A] court need not feel constrained to accept as truth . . . pleadings . . . that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." (citation omitted)).

## **ARGUMENT**

Using the above allegations—which are themselves based on unproven allegations made in other disputes—Plaintiffs bring claims against TSI and U.S. Bank for violation of the FDCPA, violation of the MCPA, malicious prosecution, and unjust enrichment. Putting aside that Plaintiffs' underlying allegations have no basis in fact (as demonstrated above), their claims against U.S. Bank still fail as a matter of law. Plaintiffs have not adequately pleaded that U.S. Bank is even subject to the FDCPA or the MCPA, and Plaintiff Wilk's FDCPA and MCPA claims are time-barred in any event. Finally, the complaint is missing key allegations regarding the elements of malicious prosecution and unjust enrichment, causing those claims to fail as well.

### **I.    PLAINTIFFS' FDCPA CLAIM MUST BE DISMISSED.**

Plaintiffs first claim that TSI and U.S. Bank violated the FDCPA by "[f]alsely representing," through the filing of the collection lawsuits, that they were authorized to act on behalf of the Trusts, that the Trusts owned the loans in question, and that documents to prove ownership were true and accurate. Compl. ¶ 115.

Plaintiffs' allegations, even if true, fail to state a claim. They have not alleged that U.S. Bank is a "debt collector" as defined by the FDCPA. Instead, they claim that TSI is a debt collector and that TSI is U.S. Bank's agent. But, as the Sixth Circuit has held, a defendant must *itself* be a

"debt collector" under the FDCPA before courts will even consider whether vicarious liability should attach.  Thus, Plaintiffs cannot impute TSI's alleged debt collector status upon U.S. Bank. Even if that were permitted, Plaintiffs' agency allegations still fail.  TSI acts on behalf of the Trusts, not on behalf of U.S. Bank, foreclosing any type of agency relationship.  And regardless, Plaintiffs have not plausibly pled that U.S. Bank exercises the requisite control over TSI's day-to-day collection activities to impose vicarious liability.  Finally, Plaintiff Wilk's FDCPA claim must additionally be dismissed as untimely.

**A. Plaintiffs Fail to Allege that U.S. Bank Is a "Debt Collector" and Thus Subject to the FDCPA.**

The FDCPA applies only to "debt collectors."  *See* 15 U.S.C. § 1692k (imposing liability only on a "debt collector who fails to comply with any provision of this subchapter").  Accordingly, an entity must itself qualify as a debt collector to be held vicariously liable for an alleged violation committed by another debt collector.  *See Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996) ("We do not think it would accord with the intent of Congress, as manifested in the terms of the Act, for a company that is *not* a debt collector to be held vicariously liable for a collection suit filing that violates the Act only because the filing attorney is a 'debt collector.'"); *Gold v. Midland Credit Mgmt., Inc.*, 82 F. Supp. 3d 1064, 1072 (N.D. Cal. 2015) ("[T]he majority of courts to have considered the issue have determined that a principal must be a debt collector in order to be held vicariously liable for the debt collection activities of another." (citing cases)).

The FDCPA defines "debt collector" using two formulations:  (1) any person "who uses any instrumentality of interstate commerce or the mails in any business the *principal purpose* of which is the collection of any debts" or (2) any person "who *regularly collects* or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a (emphasis added).  Plaintiffs' allegations do not satisfy either formulation.

*Principal-purpose prong*.   Plaintiffs say nothing about the principal purpose of U.S. Bank's business.  That pleading failure ends the inquiry as to the principal-purpose prong.

In any event, Plaintiffs could not allege that debt collection is U.S. Bank's principal purpose.  To satisfy the principal-purpose test, debt collection must be the organization's "most important aim."  *Stone v. JPMorgan Chase Bank, N.A.*, 415 F. Supp. 3d 628, 633 (E.D. Pa. 2019).  Plaintiffs have not even alleged that U.S. Bank itself "regularly collects debt," *see* Compl. ¶ 4, let alone that debt collection is U.S. Bank's "most important aim."

In fact, courts have determined, at the pleadings stage, that traditional banks (like U.S. Bank) do not qualify as debt collectors under the principal-purpose prong.  *See, e.g., Stone*, 415 F. Supp. 3d at 633 (dismissing FDCPA claim because JPMorgan Chase is closer to a "traditional creditor, such as a bank," even though its business lines include debt collection as "one of perhaps many parts of its business"); *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1317 (11th Cir. 2015) (dismissing FDCPA claim even where plaintiff alleged that "Capital One has attempted to collect delinquent or defaulted debts in the regular course of its business," because that allegation provided a basis to infer only "that *some* part of Capital One's business is debt collection," not that "the 'principal purpose' of Capital One's business is debt collection" (internal ellipses omitted)).  Plaintiffs' claim against U.S. Bank merits the same outcome.

*Regularity prong*.   Plaintiffs also fail to allege that U.S. Bank—as opposed to TSI— "regularly collects" debts "owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a.[9]  Plaintiffs' sole allegation is that U.S. Bank, "*through TSI*, regularly collects debts

---

[9] The statute references regularly collecting debt "directly or indirectly."  15 U.S.C. § 1692a.  But to qualify as an "indirect debt collector" under this language, the defendant must form "a single economic enterprise" with a direct debt collector such that the court may "pierce the corporate veil."  *Johnson v. Midland Credit Mgmt. Inc.*, No. 1:05-cv-1094, 2006 WL 2473004, at **14–18

allegedly owed to various NCSLT Trusts, and thus is a 'debt collector.'"  Compl. ¶ 4 (emphasis added).  Plaintiffs' apparent concession that U.S. Bank does not itself regularly collect debt on behalf of the Trusts aligns with the Special Servicing Agreement, which unambiguously provides that U.S. Bank is neither required *nor permitted* to itself undertake special servicing activities.  *See* Exhibit B, SSA § 8.A ("[N]othing in this Agreement shall be construed to require or permit the Back-Up Special Servicer (in its capacity as Special Servicer or otherwise) to undertake direct collection or enforcement activities . . . .").

Plaintiffs' FDCPA claim thus boils down to an allegation that U.S. Bank succeeded to a role as Successor Special Servicer, resulting automatically in the engagement of TSI, which is potentially a debt collector.  But a party cannot be deemed a debt collector just because it contracts with one.  *Wadlington*, 76 F.3d at 108; *Gold*, 82 F. Supp. 3d at 1072; *see also Miranda v. Field Asset Services*, No. 3:11-cv-1514, 2013 WL 124047, at *4 (S.D. Cal. Jan. 9, 2013) (holding that the FDCPA does not a support the theory that an entity who "regularly engages" a debt collector "becomes a 'debt collector' by virtue of that engagement").  Accordingly, the FDCPA claim against U.S. Bank must be dismissed.

### B.  Even if U.S. Bank Were a "Debt Collector" Under the FDCPA, Plaintiffs' Allegations Are Insufficient to Impose Vicarious Liability.

Even if Plaintiffs had adequately alleged that U.S. Bank qualifies as a "debt collector" under the FDCPA, Plaintiffs' vicarious liability theory still fails as a matter of law because the complaint does not establish: (1) that TSI acts on behalf of U.S. Bank and is therefore U.S. Bank's

---

(N.D. Ohio Aug. 24, 2006) (citing cases).  Plaintiffs have not even attempted to plead a veil-piercing theory, which, in any event, succeeds only "in extraordinary circumstances."  *Id.* at *14.

agent; and (2) even if TSI did act on behalf of U.S. Bank, that U.S. Bank exercises the requisite amount of control over TSI's day-to-day collection activities so as to impose vicarious liability.

Even assuming ordinary tort-related agency rules apply to impose vicarious liability on a debt collector for the activities of another debt collector, [10] Plaintiffs fail to state a claim based on those rules. "In determining whether vicarious liability may be imposed" upon a principal, the court must determine "whether a principal has enough authority to control the actions of its agent such that the principal may be held vicariously liable to the same extent as an employer may be held liable for the conduct of its employee," *Jones v. Royal Administration Services, Inc.*, 887 F.3d 443, 450 (9th Cir. 2018), or—on the other hand—whether the agent functions more as an "independent contractor," s*ee Hartford Fire Ins. Co. v. Walter Kidde & Co.*, 328 N.W.2d 29, 34 (Mich. Ct. App. 1982) ("Generally, one who employs an independent contractor is not vicariously liable for the latter's negligence.")   Courts consider a variety of factors in making this determination, including the "hiring party's right to control the manner and means by which the" hired party performs; "the source of the instrumentalities and tools" to accomplish the work; "the location of the work"; "the extent of the hired party's discretion over when and how long to work"; "the method of payment"; and "the hired party's role in hiring and paying assistants."  *Wheatley v. W. Cent. Michigan Employment & Training Consortium, Inc.*, 341 F. Supp. 3d 753, 764 (W.D. Mich. 2018) (Maloney, J.) (describing the "common law agency test"); *see also Jones*, 887 F.3d

---

[10] The Supreme Court has not directly considered whether the FDCPA incorporates "ordinary background tort principles." *Meyer v. Holley*, 537 U.S. 280, 286 (2003); *see Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1622 (2010).  However, lower courts have incorporated those principles, using the general common law of agency to determine whether a debt collector should be held vicariously liable for the acts of another.  *See, e.g., Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006) (explaining that "general principles of agency . . . form the basis of vicarious liability under the FDCPA").

at 450 (citing similar factors).  This determination is one "that the trial judge normally makes as a matter of law."  *Wheatley*, 341 F. Supp. 3d at 764.

### 1.  TSI Acts on Behalf of the Trusts, not U.S. Bank.

Here, Plaintiffs' claim that TSI acts as U.S. Bank's agent fails for a very basic reason—the contracts make clear that TSI acts on "behalf of" the Trusts, not U.S. Bank.  *See Jones*, 887 F.3d at 448 ("Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act *on the principal's behalf*" (emphasis added)).  The Special Servicing Agreement expressly directs the Special Servicer to "retain[] and enter[] into agreements with licensed collection agencies and other legally authorized persons (the 'Subservicers') . . . pursuant to which the Subservicers, *for and on behalf of the applicable Trust*, will contact borrowers . . . ."  Exhibit B, SSA § 2.B(i) (emphasis added);[11] *see also, e.g. id.*, § 2.B(viii) (providing that the Special Servicer will "refer the loan for collection by a Subservicer *on behalf of such Trust*" (emphasis added)).  At most, then, U.S. Bank (as Successor Special Servicer) and TSI both function as independent contractors of the Trusts.  *See* Exhibit B, SSA § 17 ("For all purposes of this Agreement, the Special Servicer shall be an independent contractor and shall not be subject to the supervision of the Trusts with respect to the manner in which it accomplishes the performance of its obligations hereunder."); Exhibit C, TSI Agreement § 11.4 ("The parties agree that in carrying out their responsibilities pursuant to this Agreement they are in the position of independent contractors.").  Even if they both functioned as agents of the Trusts (they do not), they would at most be considered "coagents," and so "neither is vicariously liable for wrongs committed by the other."  Restatement (Third) Of Agency § 1.04 (2006), Cmt. a; *see*

---

[11] To be clear, it was First Marblehead (with the consent of the Trusts)—and not U.S. Bank—that retained TSI pursuant to the TSI Agreement.

*also id.* Cmt. i ("A superior coagent's right to direct a subordinate coagent does not itself create a relationship of agency between them.").[12]

### 2. The Agreements Explicitly Provide That TSI Is an Independent Contractor.

Even if TSI acts on behalf of U.S. Bank (it does not), TSI would at most be considered an independent contractor whose actions cannot be imputed to U.S. Bank for purposes of vicarious liability.  In evaluating the common-law factors, courts "first look[] to any express agreement between the parties."  *Wheatley*, 341 F. Supp. 3d at 764.  Here, the TSI Agreement is explicit that all parties are considered independent contractors, and that the agreement does not create any type of employment relationship.  *See* Exhibit C, TSI Agreement § 11.4 ("The parties agree that in carrying out their responsibilities pursuant to this Agreement they are in the position of independent contractors.").  Further, the Special Servicing Agreement expressly limits U.S. Bank's liability and duties as Back-Up Special Servicer—it "shall have no liability for the acts or omissions of any . . . Subservicer in performing its obligations under the applicable Servicing Agreement" and it shall not be required to "supervise or monitor the performance of such Servicers or Subservicers."  Exhibit B, SSA § 8.D.

These "contracts memorializing the relationship between" TSI and U.S. Bank provide "extremely probative evidence that the parties intended for [TSI] to work as an independent contractor."  *Wheatley*, 341 F. Supp. 3d at 765; *see also Jones*, 887 F.3d at 450 (one factor is the "subjective intent of the parties"); *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 372 (6th

---

[12] Given that U.S. Bank is prohibited from itself undertaking special servicing activities, *see* Exhibit B, SSA § 8.A, TSI could not, in any scenario, be considered a "subagent" of U.S. Bank. *See* Restatement (Third) Of Agency § 1.04 (distinguishing between "coagents" and "subagents" and explaining that "[a] subagent is a person appointed by an agent *to perform functions that the agent has consented to perform on behalf of the agent's principal*" (emphasis added)).

Cir. 2015) (no agency relationship where "the clear wording of the operative contract between CUnet and CornerBlue states 'that the parties to th[e] Agreement are independent contractors'" because "[s]uch contractual language flies directly in the face of the classic definition of common-law agency").

### 3.   U.S. Bank Lacks the Requisite Amount of Control Over TSI.

Additionally, courts analyzing potential vicarious liability look to whether the principal "control[s] the day-to-day operations" of the agent.  *Little v. Howard Johnson Co.*, 455 N.W.2d 390, 393 (Mich. Ct. App. 1990).  It is not enough that the principal "retain[] mere contractual control" or "general oversight."  *Id.* at 394; *see also Jones*, 887 F.3d at 451 (fact that the principal "exercised some amount of control" was insufficient to impose vicarious liability).  Here, the relevant agreements show that U.S. Bank does not exercise the requisite level of control over TSI. *See Cates*, 874 F.3d at 536 (written instrument "trumps the allegations").

It is true that the initial "Special Servicer" under the TSI Agreement may have had the right to exercise some amount of "general oversight" over subservicers' collection operations.  But U.S. Bank, as Back-Up Special Servicer, did not inherit each and every duty of the initial Special Servicer.  The Special Servicing Agreement states that the "Back-Up Special Servicer . . . shall assume the rights, duties and obligations of the Special Servicer *to the extent expressly required to be assumed and performed by the Back-Up Special Servicer* under this Agreement."  Exhibit B, SSA § 8.A (emphasis added).  Importantly, the Special Servicing Agreement also states that "nothing in this Agreement shall be construed to require *or permit* the Back-Up Special Servicer (in its capacity as Special Servicer or otherwise) to undertake direct collection or enforcement activities" and that "the Back-Up Special Servicer in its capacity as successor Special Servicer" shall not be required to "supervise or monitor the performance of . . . Subservicers" and "shall

have no liability for the acts or omissions of any such . . . Subservicer."  Exhibit B, SSA §§ 8.A, 8.D.  No comparable provisions apply to the initial Special Servicer.

Even if U.S. Bank could be deemed to have assumed all duties and responsibilities of the initial Special Servicer under these agreements (which it has not), U.S. Bank still does not exercise the requisite amount of control for vicarious liability.  The TSI Agreement requires TSI to "provide [certain] reports" to the Special Servicer, *e.g.*, Exhibit C, TSI Agreement § 2.2(a), and to obtain "written consent" from the Special Servicer in certain circumstances, *e.g.*, *id.* § 2.3(b)(i).  But requirements that the alleged agent must "keep records of its interactions with consumers," or provide "weekly reports" to the principal, or "obtain [the principal's] approval" before taking certain actions or using certain call scripts, or "comply with the 'guidelines and procedures'" provided by the principal are not enough.  *Jones*, 887 F.3d at 451; *see also Little*, 455 N.W.2d at 393 (fact that the principal "retain[ed] the right to set standards" regarding the agent's work and the right to "regulate" and "inspect" the work was insufficient).  The principal must direct and control the agent's "actual day-to-day work," *id.* at 394, and Plaintiffs have not pleaded (and cannot plead) such a relationship here.  Indeed, Plaintiffs' own allegations show that TSI controls its own collection work.  They allege that "TSI employees . . . direct attorneys retained by TSI to bring collection suits in the name of the Trusts."  Compl. ¶ 46.  And when a lawsuit is brought, "TSI directs the litigation, responds to discovery requests, and confers with the attorneys."  *Id.* ¶ 47.

Additional factors likewise counsel against imposing vicarious liability.  TSI is "an independent business, separate and apart from" U.S. Bank.  *Jones*, 887 F.3d at 452.  It was not "obligated to work exclusively for" U.S. Bank, and U.S. Bank was authorized to retain additional subservicers on behalf of the Trusts.  *Wheatley*, 341 F. Supp. 3d at 765; *see* Exhibit C, TSI Agreement § 11.4.  TSI, not U.S. Bank, "supplies [the] tools and instrumentalities and the place

of work." *Jones*, 887 F.3d at 450 (brackets omitted); *see also id.* at 452 (the agent "provided far more tools and instrumentalities, including its own phones, computers, furniture, and office space"); Exhibit C, TSI Agreement § 2.10(f). TSI uses its own employees and U.S. Bank does not "supervis[e]" TSI's employees. *Little*, 455 N.W.2d at 394; *see* Exhibit B, SSA § 8.D; Exhibit C, TSI Agreement §§ 2.4(a); 2.10(b), (c). Nor does U.S. Bank provide any benefits to TSI or its employees. *See Wheatley*, 341 F. Supp. 3d at 765 ("MWWC provided no salary or benefits to Wheatley—instead only paying based on the invoices Wheatley submitted for services rendered."); Exhibit C, TSI Agreement § 2.11(a). TSI was paid a set fee, not a "salary or hourly rate," *Wheatley*, 341 F. Supp. 3d at 765; *see* Exhibit C, TSI Agreement § 2.3(c), and paid its own expenses for the work performed, *see id.* § 3.2. And in no event was TSI paid *by U.S. Bank*—TSI retained its fee from the collected funds due to the Trusts' secured Noteholders. *Id.* at § 2.3(c).

In sum, Plaintiffs have failed to allege that U.S. Bank is a debt collector and thus cannot establish a claim for either direct or vicarious liability under the FDCPA. But even if they did allege debt-collector status, Plaintiffs have still not sufficiently pleaded an agency relationship, let alone one involving the requisite amount of control to impose vicarious liability. Plaintiffs' FDCPA claim against U.S. Bank must therefore be dismissed.

### C. Plaintiff Wilk's FDCPA Claim Is Time-Barred.

Independently, Plaintiff Wilk's FDCPA claim should be dismissed as time-barred. An FDCPA claim must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Plaintiff Wilk's FDCPA claim is based on the collection suits that resulted in 2014 judgments. Compl. ¶¶ 86–89. "[W]hen a debt collector initiates a deceptive, abusive, or otherwise unfair lawsuit, there is no doubt that the FDCPA claim—insofar as it is viable—accrues on that date." *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 258 (6th Cir. 2014); *see*

*also Rotkiske v. Klemm*, 140 S. Ct. 355, 361 (2019) (discovery rule does not apply to FDCPA claims).  Thus, Plaintiff Wilk's claim is untimely by more than four years.

        And Plaintiff Wilk cannot rely on any subsequent filings in the collection suits or any later attempts to enforce the judgments or collect on the loans to argue that her claim accrued later. Those later actions would merely give "present effect to deceptive conduct that had occurred outside the limitations window" and would not constitute discrete, new violations.  *Slorp*, 587 F. App'x at 259 (internal quotation marks omitted); *see id.* (in a lawsuit based on the defendant's alleged filing of a foreclosure action without proper ownership of the loan, "[t]he defendants did not commit a fresh violation of the FDCPA each time they filed pleadings or memoranda reaffirming the legitimacy of their state-court suit"); *Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 F. App'x 268, 273 (6th Cir. 2016) (in a lawsuit based on the defendant's alleged filing of a foreclosure action without proper ownership of the loan, the defendant's assertion of a subsequent "proof of claim in [a] bankruptcy action did not constitute a new FDCPA violation" but instead "gave continuing effect to [the defendant]'s initial assertion that it had an interest in the mortgage, an interest first recognized in the state court" foreclosure action); *Jodway v. Orlans, PC*, 759 F. App'x 374, 380 (6th Cir. 2018) (in a lawsuit based on the defendants' alleged filing of a foreclosure action without a valid mortgage, the "[d]efendants did not commit new FDCPA violations every time they asserted the validity of the mortgage throughout the various proceedings"); *Brewer v. William C. Grossman, PLLC*, No. 2:17-cv-13609-TGB, 2018 WL 4688944, at *2 (E.D. Mich. Sept. 28, 2018) (in a lawsuit based on the defendant's filing of a suit to collect a debt plaintiff allegedly did not owe, the defendants' "continued actions to collect the underlying debt during the pendency of the state court litigation—including sending [the plaintiff] demand letters" did not "constitute continuing harms that operated to reset the statute of limitations").

17

Accordingly, Plaintiff Wilk's FDCPA claim is untimely.

## II.    PLAINTIFFS' MCPA CLAIM MUST BE DISMISSED.

### A.  Plaintiffs Have Not Adequately Alleged That U.S. Bank Is Subject to Liability Under the MCPA.

Plaintiffs have likewise failed to state a claim against U.S. Bank under the MCPA.  The MCPA forbids certain actions taken by a "regulated person."  Mich. Comp. Laws § 445.252. Plaintiffs offer the bare legal conclusion that "Defendants are 'regulated persons' as defined by the MCPA."  Compl. ¶ 118.  This "formulaic recitation" of the statutory language is plainly insufficient to meet Plaintiffs' obligations under Rule 8.  *Twombly*, 550 U.S. at 563; *see also Brady v. Chase Home Fin., LLC*, No. 1:11-cv-838, 2012 WL 1900606, at *10 (W.D. Mich. May 24, 2012) (dismissing an MCPA claim where the plaintiff's "allegations merely parrot certain provisions of the statute").  Plaintiffs do not, and cannot, allege that U.S. Bank falls into any one of the categories of businesses listed in the statute as constituting a "regulated person." Accordingly, Plaintiffs' MCPA claim against U.S. Bank must be dismissed.

### B.  Plaintiff Wilk's MCPA Claim Is Partially Time-Barred.

Additionally, one of the alleged collection lawsuits against Plaintiff Wilk was initiated outside the applicable statute of limitations.  *See* Compl. ¶ 86 (citing *National Collegiate Student Loan Trust 2006-3 v. Wilk*, No. 131036-CK (22nd Circuit Court, Washtenaw Cty. Wash.)).  The MCPA's text does not expressly provide a limitations period, so Michigan's fallback six-year statute of limitations applies.  *See* Mich. Comp. Laws § 600.5813 (providing six-year period for "[a]ll other personal actions . . . unless a different period is stated in the statutes."); *see also Hoch v. SunTrust Mortgage, Inc.*, No. 1:18-cv-767, 2019 WL 1383712, at *2 n.1 (W.D. Mich. Jan. 18, 2019) (noting that the parties agreed that "the six-year statute of limitations set forth in M.C.L.A. § 600.5813 applies to Hoch's . . . [MCPA] claims.").  Here, Plaintiffs allege that judgments were

obtained against Plaintiff Wilk in 2014.  Compl. ¶ 86.  But they conveniently omitted the dates the two actions were filed.  *See* Compl. ¶ 86.  The publically available online docket indicates that No. 131036-CK was filed on October 22, 2013, over six years before Plaintiffs brought the present suit.  Plaintiff Wilk's MCPA claim is thus untimely to the extent it relies upon that collections suit. *See* Compl. ¶ 86.

## III.   PLAINTIFFS' OTHER STATE-LAW CLAIMS FAIL.

### A.  Plaintiffs Fail to Allege a Malicious Prosecution Claim.

Plaintiffs' malicious prosecution claim fares no better.  Under Michigan law, a plaintiff must plead the following elements: (1) "Prior proceedings terminated in favor of the present plaintiff;" (2) "Absence of probable cause for those proceedings;" (3) "Malice, defined as a purpose other than that of securing the proper adjudication of the claim;" and (4) "A special injury that flows directly from the prior proceedings."  *Young v. Motor City Apartments Ltd. Dividend Hous. Ass'n No. 1 & No. 2*, 350 N.W.2d 790, 792 (Mich. Ct. App. 1984) (citing *Friedman v. Dozorc*, 312 N.W.2d 585, 603 (Mich. 1981)); *see also Sage Int'l, Ltd. v. Cadillac Gage Co.*, 556 F. Supp. 381, 387–88 (E.D. Mich. 1982) (noting statutory cause of action for "malicious prosecution" shares the common-law elements).

As an initial matter, Plaintiffs' claim against U.S. Bank must be dismissed because, as explained above, Plaintiffs have no basis to hold U.S. Bank vicariously liable for TSI's collection suits.  *See supra* Argument § I.B.  In any event, Plaintiffs have failed to plead the elements of malicious prosecution.

***Favorable Termination***.  Plaintiffs have not alleged that the prior proceedings were terminated in their favor.  *Friedman*, 312 N.W.2d at 603.  As for Plaintiff Wilk, the complaint pleads the opposite—in 2014 "TSI or its predecessor NCO, as agents for US Bank, obtained judgments *against* Plaintiff Wilk."  Compl. ¶ 86 (emphasis added).  Wilk has not alleged that these

19

judgments were ever reversed or vacated.  And Plaintiff Merrill is in the same boat—she alleges that that the lawsuits against her were voluntarily dismissed with prejudice.  Compl. ¶¶ 78, 82. That does not qualify as a termination in her favor for purposes of a malicious prosecution claim. *See Kauffman v. Shefman*, 426 N.W.2d 819, 820–21, 825 (Mich. Ct. App. 1988) (holding that where one prior proceeding "was dismissed with prejudice by stipulation of counsel" and the other prior proceeding was "dismissed . . . for lack of progress," there was no favorable termination for malicious prosecution purposes because the prior suits "did not determine" the relevant issues). Plaintiffs' malicious prosecution claims must be dismissed for this reason alone.

***Probable Cause***.  Plaintiffs have also failed to allege that TSI lacked probable cause, *i.e.*, that TSI or U.S. Bank "proceeded *with knowledge* that the [underlying suits] had no factual or legal basis." *Friedman*, 312 N.W.2d at 606 (emphasis added).

Plaintiffs allege that Defendants "knew or should have known that TSI was not authorized by the NCSLT Trusts" to act on their behalf.  Compl. ¶ 134.  But Plaintiffs' allegations do not show that TSI lacks authority to service on behalf of the Trusts or (more importantly) lacked that authority at the time of the collections suits.  Plaintiffs rely entirely on (1) the 2015 "directive" from the Residual Owners that *did not* seek to terminate the TSI Agreement or the Read and Agreed Letter, and (2) the 2018 lawsuit brought by the Residual Owners (not acting through the Owner Trustee) that has been fiercely litigated by the other deal parties and has *yet to be adjudicated*. *See supra* Background § II.  Regardless, these allegations certainly cannot show that U.S. Bank *knew* TSI lacked authority to service loans for the Trusts. *Friedman*, 312 N.W.2d at 603; *see also* Black's Law Dictionary (11th ed. 2019) (defining "knowledge" as "[a]n awareness or understanding of a fact or circumstance; a state of mind in which a person has no substantial doubt about the existence of a fact.").  Indeed, Plaintiffs do not dispute that the TSI Agreement—

20

which was consented to by the Trusts via the Owner Trustee, Exhibit B, SSA § 8.G, and which *explicitly grants* TSI the authority to service loans for the Trusts—remains in effect. [13]

And Plaintiff Wilk's claim suffers an additional fatal flaw in that TSI obtained judgments against her *in 2014*. Compl. ¶ 86. She therefore cannot rely on events occurring *in 2015* and later to allege that the prior proceedings were brought at a time when U.S. Bank had knowledge regarding TSI's alleged lack of authority.

***Malice***. Plaintiffs have also failed to allege the malice required for a malicious prosecution action. Michigan courts have defined malice as having "a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based." *Friedman*, 312 N.W.2d at 603. A plaintiff may show improper purpose, for example, by alleging the defendant operated with "intent to harass or injure the [the plaintiff] by bringing the [prior] action." *Id.* at 607. Plaintiffs do not make such an allegation. Nothing in the complaint suggests that the collection suits were brought "for a purpose other than that of securing the proper adjudication of the claim." *Id.* at 603. Instead, Plaintiffs again allege that "TSI and US Bank knew or should have known that TSI was not authorized" to act on behalf of the Trusts. Compl. ¶ 134. Not only does that allegation fail for the same reasons set forth above, it also fails because Plaintiff must allege an improper purpose "supported by evidence independent of the evidence establishing that the action was brought without probable cause." *Friedman*, 312 N.W.2d at 607. They have failed to do so. A failure to plead malice on its own merits dismissal.

---

[13] Again, the Court "need not . . . accept as truth" allegations that are "contradicted" by "documents upon which [the] pleadings rely" or "by facts of which the court may take judicial notice." *Williams*, 498 F. App'x at 536; *see also Cates*, 874 F.3d at 536 ("a written instrument . . . trumps the allegations").

*Special Injury*.  Plaintiff Merrill's claim also fails because she has not alleged a "special injury that flows directly from the prior proceedings." *Young*, 350 N.W.2d at 792.  Merrill alleges she suffered "actual damages" in the form of "payments made to TSI or collected by TSI or others on [her] debts" and "the costs associated with defending the collection lawsuits."  Compl. ¶ 134.  Neither of these qualifies as a special injury for purposes of malicious prosecution.

Where, as here, the plaintiff relies on the "injury to property" category of "special injury," the plaintiff must have suffered something "equivalent to a seizure of property as a result of the defendant's institution of civil proceedings."  *Friedman*, 312 N.W.2d at 599.  Additionally, "special injury" must be "some injury which would not necessarily occur in all suits prosecuted for similar causes of action." *Barnard v. Hartman*, 344 N.W.2d 53, 54 (Mich. Ct. App. 1983); *see also Chrysler Corp. v. Fedders Corp.*, 540 F. Supp. 706, 721 (S.D.N.Y. 1982) (applying Michigan law) (finding no special injury where the plaintiff "suffered only those sorts of encumbrances which may reasonably be expected to flow from complex, vigorously fought litigation").

Thus, the "costs associated with defending" the prior lawsuits, Compl. ¶ 134, do not qualify as a special injury. *See Young*, 350 N.W.2d at 793 (holding that "[c]osts incurred to defend against the [prior] lawsuit," the "[t]ime and revenue lost while defending," and the resulting "[i]njury to reputation and goodwill" did not qualify as special injuries).  And the same goes for "payments made to TSI or collected by TSI" on Merrill's loan, Compl. ¶ 134—those are not the "equivalent to a seizure of property." *Friedman*, 312 N.W.2d at 599.  Nor does Merrill explain how those payments were in any way caused by the filing of the prior lawsuits. *See Young*, 350 N.W.2d at 792 (the "special injury" must "flow[] directly from the prior proceedings").  Thus, among all of the other flaws, Merrill's malicious prosecution claim must be dismissed for failure to allege a special injury.

**B.  Plaintiffs Fail to Allege a Claim for Unjust Enrichment.**

Plaintiffs' unjust enrichment claim also fails as a matter of law.

As a threshold problem, the doctrine of unjust enrichment does not apply because there is an "express contract[] cover[ing] the subject matter under which plaintiffs claim[] defendant was unjustly enriched." *New Dimension Dev., Inc. v. Orchard, Hiltz & McCliment, Inc.*, No. 262565, 2005 WL 2806234, at *6 (Mich. Ct. App. Oct. 27, 2005).  Specifically, TSI collected student loan payments pursuant to the underlying loan agreements with the borrowers.  The unjust enrichment claim must be dismissed for this reason alone.

Even if unjust enrichment could be applied here, Plaintiffs have not plausibly alleged the required elements.  To sustain such a claim, the Plaintiffs must plead "(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 796 (Mich. Ct. App. 1993).  Here, Plaintiffs allege that "TSI and US Bank have obtained a benefit from Plaintiffs and Class Members in the form of payments and/or seizures by garnishment of Plaintiffs' and Class Members' personal funds."  Compl. ¶ 136.

The first unjust enrichment prong, however, requires that U.S. Bank have "*directly* receive[d] a benefit from the plaintiff." *Smith v. Glenmark Generics, Inc., USA*, No. 315898, 2014 WL 4087968, at *1 (Mich. Ct. App. Aug. 19, 2014) (emphasis added).  Plaintiffs make no claim that U.S. Bank itself actually collected any payments from them—indeed, the Special Servicing Agreement forbids that.  Exhibit B, SSA § 8.A.  U.S. Bank therefore never received a benefit directly from Plaintiffs.  In any event, the Special Servicing Agreement makes clear that any funds collected by subservicers like TSI are remitted to a collection account held for the benefit of the Trusts' secured Noteholders, and that the subservicers retain only a fee earned for their services. *See* Exhibit B, SSA § 2.B.(ix)-(x), (xiii); *id.* § 5.B.  Such fees retained by TSI, of course, do not

23

count as a *direct* benefit to TSI, let alone to U.S. Bank.  *See, e.g.*, *New Dimension*, 2005 WL 2806234, at *6 (where the defendant received "engineering fees" that were not paid directly from plaintiffs, "any indirect benefit defendant derived from plaintiffs was too attenuated to warrant imposing the equitable doctrine of unjust enrichment").  What is more, U.S. Bank does not even receive a special servicing fee in its role as Successor Special Servicer.  No matter how you cut it, then, Plaintiffs cannot allege that they conferred a direct benefit upon U.S. Bank.

Nor have Plaintiffs alleged that they would suffer an injustice if the collected funds were not returned to them.  *See Barber*, 509 N.W.2d at 796 (there must be an "inequity resulting to plaintiff"); *see also Gold v. Cadence Innovation, LLC*, 577 F. Supp. 2d 896, 902 (E.D. Mich. 2008) (explaining that courts "employ" the doctrine of unjust enrichment "with caution" because it "vitiates normal contract principles" and because "the mere fact that a benefit has been conveyed does not necessarily indicate that it is unjust for the party to retain that benefit.").  They do not deny, for example, that they are the debtors on the underlying student loans.  And they do not claim that they have been subject to "duplicative billings" from different creditors claiming to own the loan.  *New Dimension*, 2005 WL 2806234, at *6.  Thus, they have not pleaded the exceptional circumstances that might justify invoking the court's equitable powers here.  *See Gold*, 577 F. Supp. 2d at 902 ("The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor.").

## CONCLUSION

For the reasons stated above, all claims against U.S. Bank must be dismissed.

Respectfully submitted,

/s/Albert J. Rota_____
Albert J. Rota
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
ajrota@jonesday.com

Andrew J. Clopton
JONES DAY
150 West Jefferson Avenue
Suite 2100
Detroit, Michigan 48226
Telephone: (313) 733-3939
Facsimile: (313) 230-7997
aclopton@jonesday.com

*Counsel for U.S. Bank National Association*