IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| ALLISON L. MERRILL and BRITTANY WILK, *individually and on behalf of all others similarly situated,* | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 1:20-cv-00183-PLM-SJB |
| TRANSWORLD SYSTEMS, INC. and U.S. BANK NATIONAL ASSOCIATION, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM IN SUPPORT OF
## TRANSWORLD SYSTEMS INC.'S MOTION TO DISMISS

Defendant, Transworld Systems Inc. ("TSI"), pursuant to Fed. R. Civ. P. 12(b)(6), moves for entry of an Order dismissing with prejudice the Class Action Complaint ("Complaint") filed by plaintiffs, Allison L. Merrill ("Merrill") and Brittany Wilk ("Wilk") (collectively, "plaintiffs"), for failure to state a claim upon which relief can be granted.

## I. INTRODUCTION

Plaintiffs assert class claims against TSI for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*., Michigan state consumer protection statutes, and common law. Plaintiffs' claims arise out of alleged actions relating to the state court collection lawsuits filed against them. Merrill was sued in state court by National Collegiate Student Loan Trust 2005-3 for one of the loans she owes that entity and separately sued by National Collegiate Student Loan Trust 2006-4 for the loan she owes that entity. Similarly, Wilk was sued by National Collegiate Student Loan Trust

2004-2 for one of the loans she owes that entity and separately sued by National Collegiate Student Loan Trust 2006-3 for the loan she owes that entity.[1]

Relying upon *mere allegations* made in a *separate lawsuit* filed against TSI and others in a Delaware Chancery Court where neither Wilk nor Merrill is a party, and also upon a mischaracterization of TSI's servicing role and activities stated in a separate consent order with the Consumer Financial Protection Bureau ("CFPB"), plaintiffs attack the propriety of the collection lawsuits brought against them. Wilk brings claims even though *judgments were entered against her in both collection lawsuits*, including one collection lawsuit where she answered and contested *but lost*. Merrill believes she has the right to bring claims simply because the collection lawsuits against her were withdrawn after contested and expensive litigation. Both Wilk and Merrill are mistaken. Under Michigan law, a final judgment is not subject to collateral attack, even if the judgment was wrong or rested on erroneous findings. *Lamie v. Smith*, 2013 WL 12109526, *5 (W.D. Mich. Feb. 14, 2013), *report and recommendation adopted,* 2013 WL 12109421 (W.D. Mich. Mar. 6, 2013). Furthermore, "'filing a lawsuit . . . is not a false representation about the character or legal status of a debt, nor is it unfair or unconscionable' in violation of § 1692(e)—even if the creditor 'intends to dismiss []' based on the economics of pursuing challenged claims[.]" *Juarez v. Portfolio Recovery Assocs., LLC*, 2015 WL 4764226, *3 (N.D. Ill. Aug. 12, 2015) (quoting *Deere v. Javitch, Block & Rathbone LLP*, 413 F.Supp. 2d 886, 890-91 (S.D. Ohio 2006)). Indeed, "voluntarily dismissing a collection case does not by

_____

[1] The trust entities are collectively referred to herein as the "NCSLTs."

itself create an FDCPA claim[.]"  *Krawczyk v. Centurion Capital Corp.*, 2009 WL 395458, *9 (N.D. Ill. Feb. 18, 2009).

The Court should dismiss plaintiffs' Complaint against TSI for several reasons:

**_First_**, Wilk is collaterally estopped from asserting her claims against TSI because those claims are subsumed and adjudicated in the judgments entered against her.  Her claims are also time-barred.  The Court should dismiss Wilk from the case.

**_Second_**, plaintiffs have not pled any plausible misrepresentations or unconscionable debt collection practices in the course of any collection activity against them.  Plaintiffs have not adequately pled TSI is a debt collector, or that the conduct at issue lies within the scope of the consumer protection statutes asserted.  In fact, the only discrete activity of TSI alleged relates to a records custodian affidavit that was *produced in discovery in response to a request for production of documents* in one of the state court collection lawsuits filed against Merrill.  But this single affidavit cannot form the basis of any claim against TSI because the animating purpose of the affidavit was *not* to induce payment.  The affidavit was produced because it was *demanded by Merrill in discovery*.  Simply put, any statements contained in the affidavit were *not* made in connection with the collection of any debt.  Considering the animating purpose for the affidavit was not plausibly to induce payment, the production of the affidavit in discovery cannot give rise to a claim as a matter of law under the consumer protection statutes alleged.

**_Third_**, plaintiffs' claims for malicious prosecution fail as a matter of law, as both plaintiffs have failed to plead one or more of the required elements as to each of their claims.  Wilk has failed to plausibly allege that prior proceedings terminated in her favor,

and Merrill has failed to allege special injury from the prior proceedings.  Further, neither plaintiff has shown that there was an absence of probable cause for the proceedings or the existence of malice.

*Fourth*, plaintiffs' unjust enrichment claims fail because they have not alleged TSI retained any benefit from plaintiffs, and they cannot escape the fact that any common law unjust enrichment claim is displaced and barred by the existence of an express contract, *i.e.*, the student loan contracts which formed the basis of the state court collection lawsuits filed against them.

## II. ARGUMENT AND AUTHORITIES

Under Rule 12(b)(6), the defendant may seek to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To state a claim, a complaint must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "To state a claim, the complaint must allege sufficient facts that, taken as true, state a plausible claim for relief."  *Thomas v. Noder-Love*, 621 F. App'x 825, 828 (6th Cir. 2015).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft* 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In deciding a Rule 12(b)(6) motion to dismiss, the court construes the facts in the light most favorable to the plaintiff. *Thomas*, 621 F. App'x at 828 (citing *D'Ambrosio v. Marino,* 747 F.3d 378, 383 (6th Cir. 2014)). To survive a Rule 12(b)(6) motion, the plaintiff must sufficiently plead facts that "contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *Id*. The court cannot accept a plaintiff's legal conclusions, conclusory allegations, nor "a formulaic recitation of the elements of a cause of action," as sufficient to survive a motion to dismiss. *Id.*

1.   **Wilk Is Collaterally Estopped From Challenging Prior Judgments Against Her, Including The Lack Of Authority And Chain Of Title Issues She Attempts To Relitigate Here**

28 U.S.C. § 1738 requires this federal court give the state court judgments against Wilk the same preclusive effect such judgments would have in a state court. *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 918 F.2d 658, 662 (6th Cir.1990). Under both Michigan and federal law, collateral estoppel bars plaintiffs from relitigating issues that could have been raised in prior litigation. *See Bryan v. JPMorgan Chase Bank*, 304 Mich. App. 708, 715, 848 N.W.2d 482, 486 (2014) (Michigan courts broadly apply the doctrine of res judicata barring not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not); *McCormick v. Wayne Cty. Election Comm.*, 2014 WL 2452955, *2

5

(E.D. Mich. June 2, 2014) (collateral estoppel bars cases if the determination of issues in previous actions is conclusive to the issues in the subsequent litigation).  Once judgment is entered and final, all procedural defenses are deemed waived and will not be relitigated. *See Haller v. Walczak*, 79 N.W.2d 622, 625 (1956) (where defendant failed to interpose a defense, the defense is waived upon entry of default judgment); *Wallace v. JP Morgan Chase Bank, N.A.*, 2014 WL 4772029, \*6 (E.D. Mich. Sept. 24, 2014), *aff'd as modified sub nom Wallace v. JPMorgan Chase Bank, N.A.*, 628 F. App'x 940 (6th Cir. 2015) (issues of standing, authority, fraudulent representations not raised in state court actions were barred from relitigation); *Lamie*, 2013 WL 12109526 at \*5 (under Michigan law, a final judgment is not subject to collateral attack on the mere ground that it was wrong or rested on erroneous findings).

Wilk alleges the collection complaints against her were filed without authorization, that chain of title to her student loans was defective, and that the judgments were obtained through fraud.[2]  These are claims arising from defenses that could have been asserted in the prior collection actions.  Those defenses to the validity of the debts and Wilk's liability thereon were adjudicated by final judgments Wilk acknowledges were rendered in favor of the NCSLTs in those prior actions.  Compl. ¶ 86; PageID.16.  As such, the validity of the loans and Wilk's liability thereon cannot be further contested here.  *See Epps v. 4 Quarters Restoration LLC*, 872 N.W.2d 412, 431 (2015) (even a judgment by default constitutes an admission of liability).  Her claims are also time-barred.  The statute of limitations for an

---

[2] The fraud claim plainly fails to meet the specificity pleading requirements of Fed. R. Civ. P. 9(b).

FDCPA claim is "one year from the date on which the violation occurs."  15 U.S.C. § 1692k.  The judgments obtained by the NCSLTS against Wilk were rendered in 2014, and so any conduct upon which these claims are based necessarily took place prior to that time and are clearly time-barred..

Similarly, to the extent Wilk's claims arise from any ensuing garnishment actions against her (Compl. ¶¶ 86-96; PageID.16-18), those claims must also be dismissed. "Generally, a garnishee-defendant is barred from challenging the validity of the judgment entered in the original action."  *In re Smith Estate*, 226 Mich. App. 285, 288, 574 N.W.2d 388, 390 (1997).  Further, the garnishment actions do not revive any of Wilk's time-barred claims.  *See Perry v. Cavalry SPV I, LLC*, No. 18-10311, 2018 WL 3912995, *5 (E.D. Mich. Aug. 16, 2018) (finding an FDCPA claim filed within one year of a garnishment but more than one year from the state court collection action forming the basis of the violation to be time-barred).

**2.    Plaintiffs Fail To State An FDCPA Claim Against TSI**

The crux of plaintiffs' FDCPA claims is that TSI misrepresented material facts regarding the alleged debt.  Compl. ¶ 115; PageID.22.  Plaintiffs' FDCPA claims identify three misrepresentations, none of which state a claim under the Act.

First, plaintiffs allege TSI violated the FDCPA by:

Falsely representing, directly or indirectly, expressly or by implication, that their actions, including the filing of collection lawsuits and/or collecting on the purported debts, were authorized by the NCSLT Trusts, when in fact no such authorization existed and/or was rescinded expressly or by implication;

Compl., ¶ 115(a); PageID.22.

Second, plaintiffs assert TSI violated the FDCPA by:

Falsely representing, directly or indirectly, expressly or by implication, that it could be proven that the Trusts owned the loans in question, when in fact no valid and enforceable assignment existed;

Compl., ¶ 115(b); PageID.22.

Third, plaintiffs alleged TSI violated the FDCPA by:

Falsely representing, directly or indirectly, expressly or by implication, that the documents they filed and served in collection actions were true and accurate copies of original instruments and could be authenticated by TSI, when, in fact, such documents were either inadmissible hearsay, or created by TSI for litigation purposes.

Compl. ¶ 115(c); PageID.22.

As an initial matter, plaintiffs' claims that the state court collection complaints were filed by TSI or on its behalf are directly contradicted by the exhibits to the Complaint. The state court collection complaints against Merrill attached as Exhibits A (PageID.29) and C (PageID.82) to the Complaint[3] plainly show they were filed by attorneys of record on behalf of National Collegiate Student Loan Trust 2005-3 and National Collegiate Student Loan Trust 2006-4, respectively; not TSI. Where the "pleadings internally contradict verifiable facts central to [a plaintiff's] claims, that makes [the plaintiff's] allegations implausible." *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017). On this basis alone, the Court should dismiss any claim predicated on the allegation that the underlying state court actions were *filed by TSI or on its behalf*.

---

[3] These documents are appropriately considered on a motion to dismiss. In determining whether a plausible claim for relief has been stated, a court may consider "exhibits attached to the complaint," without converting the motion to dismiss into a motion for summary judgment, *Rondigo, L.L.C. v. Twp. of Richmond,* 641 F.3d 673, 681 (6th Cir. 2011).

Moreover, the Complaint does not identify any TSI dunning letters, phone calls, consumer credit reporting, or other non-time-barred pre-suit collection efforts against either plaintiff containing or conveying any alleged misrepresentation.  In other words, plaintiffs identify no facts indicating how, or to whom, or when TSI ever misrepresented anything during vaguely characterized "collection efforts" or "activities" against these plaintiffs.  It is not even clear from the Complaint what TSI is alleged to have misrepresented.  Although plaintiffs characterize the supposed misrepresentations as ones in which TSI represented "directly or indirectly, expressly or by implication" that it was "authorized" by the NCSLTs or that "it could be proven" the NCSLTs owned the subject loans, as noted above, the filing of a complaint is not an assurance that the claim will prevail.  *See Lena v. Cach LLC*, 2015 WL 4692443, *4 (N.D. Ill. Aug. 6, 2015).  *See also Heintz v. Jenkins*, 514 U.S. 291 (1995) ([W]e do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an action that cannot legally be taken.").  Regardless, plaintiffs failed to plead, quote, or attach to the Complaint any documents showing how, when, or where TSI allegedly conveyed these misrepresentations.  Accordingly, any claim predicated on these unspecified collection efforts by TSI fails outright under Fed. R. Civ. P. 8(a).

If plaintiffs had complied with Fed. R. Civ. P. 8, it would be evident that TSI is not subject to FDCPA liability because it did not act as a "debt collector" with respect to the plaintiffs and the subject loans.  Again, TSI took no affirmative actions against these plaintiffs to collect a debt from them.  The only affirmative act alleged is TSI's provision of a records custodian affidavit to counsel for NCSLT 2005-3 in connection with that

trust's collection lawsuit against Merrill.  To be clear, Wilk makes no specific allegations relating to an affidavit.  But even that affidavit cannot form the basis of an FDCPA claim, for the reasons explained below.

### A.     The Records Custodian Affidavit Cannot Form The Basis Of An FDCPA Claim

Assuming *arguendo* TSI is a "debt collector" subject to the FDCPA with respect to the subject debts, and assuming further that the records custodian affidavit contained misrepresentations, which TSI categorically denies, that alone cannot support an FDCPA claim against TSI because the records custodian's representations were not made *in connection with the collection of a debt*.

Section 1692e provides, "[a] debt collector may not use any false, deceptive, or misleading representation or means *in connection with the collection of any debt*." 15 U.S.C. § 1692e (emphasis added).  However, "[a]s the text of § 1692e makes clear, "the statute does not apply to every communication between a debt collector and a debtor." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) (quoting *Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 385 (7th Cir. 2010)).

When a defendant argues a case should be dismissed at the pleading stage on a theory that a communication was not made in connection with the collection of any debt and is therefore not actionable under the FDCPA, the question for the court is whether it is plausible, based on the facts alleged in the complaint, that one of the purposes animating the defendant's decision to send the communication was to induce payment.  *Underhill v.*

*Best*, 2018 WL 2150464, *3 (W.D. Mich. May 10, 2018) (citing *Estep v. Manley Deas Kochalski*, 552 F. App'x 502, 505 (6th Cir. 2014)).

The Sixth Circuit outlined seven factors to consider in determining whether inducing payment is plausibly an animating purpose of the decision to send a communication and thus subject the representations therein to the Act: (1) the nature of the relationship of the parties; (2) whether the communication expressly demanded payment or stated a balance due; (3) whether it was sent in response to an inquiry or request by the debtor; (4) whether the statements were part of a strategy to make payment more likely; (5) whether the communication was from a debt collector; (6) whether it stated that it was an attempt to collect a debt; and (7) whether it threatened consequences should the debtor fail to pay. *Goodson v. Bank of Am., N.A.*, 600 F. App'x. 422, 432 (6th Cir. 2015) (citing *Grden*, 643 F.3d at 173, and *McDermott v. Randall S. Miller & Assocs., P.C.*, 835 F. Supp. 2d 362, 370-71 (E.D. Mich. 2011)).

Application of the *Goodson* factors to the records custodian affidavit establish as a matter of law that the affidavit was ***not*** made with the purpose of inducing payment and, as such, cannot support an FDCPA claim.  Five of the *Goodson* factors weigh strongly against a finding that the affidavit was made in connection with the collection of a debt; 2 factors are either neutral or unavailing on the facts alleged; and none of the factors affirmatively support a finding that the affidavit was made "in connection with the collection of a debt."

11

- **Five Factors Overwhelmingly Lead To The Conclusion That Production Of The Affidavit Was Not Intended To Induce Payment**

Although the underlying facts detailing the production of the affidavit at issue are conspicuously absent from the Complaint, there will be no dispute that the affidavit was provided to counsel for Merrill in response to discovery he propounded in one of the collection lawsuits filed against his client.  The records custodian affidavit was provided to Merrill's counsel after Merrill had threatened a motion to compel NCSLT 2005-3 to respond to written discovery.[4]  With that in mind, it is self-evident that the animating purpose of the decision to produce the affidavit was to comply with the state court rules relating to discovery.

As such, *Goodson* Factor 3 (whether the communication was sent in response to an inquiry or request by the debtor) weighs clearly against a finding that an animating purpose for submitting the affidavit was to induce payment.

*Goodson* Factor 1 also compels a finding that any misrepresentation in the affidavit is not actionable.  Factor 1 questions the nature of the relationship of the parties.  Here, the affidavit was executed by TSI as the records custodian for NCSLT 2005-3, yet the document was produced by counsel for NCSLT 2005-3 in discovery in the state court

---

[4] A copy of the June 14, 2019 discovery responses were also included with NCSLT 2005-3's opposition to Merrill's motion to compel discovery in the collection lawsuit.  *See* attached Exhibit A (Declaration of Eduardo Pallares).  As a general rule, when considering a 12(b)(6) motion to dismiss, matters outside the pleadings may not be considered by the court.  *Sims v. Mercy Hospital of Monroe*, 451 F.2d 171, 173 (6th Cir. 1971).  However, despite the general rule, a court may consider a document outside the pleadings if, as here, the pleadings refer to it.  *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).  "Courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." *Id.* (internal citations omitted).  Consequently, in deciding this motion, the Court may consider the discovery documents and proceedings in the underlying state court collection action against Merrill.

collection lawsuit in which NCSLT 2005-3, not TSI, was the plaintiff.  In other words, TSI did not communicate the affidavit (or the representations therein) to Merrill, and plaintiffs have not clearly articulated how TSI participated in the decision to communicate the affidavit.

*Goodson* Factor 2 questions whether the communication expressly demanded payment or stated a balance due.  While the current balance as of May 23, 2019 is attested for informational purposes, nowhere within the affidavit is payment of any sum demanded. By the same token, *Goodson* Factors 6 and 7 (whether the communication stated that it was an attempt to collect a debt; and whether the communication threatened consequences should the debtor fail to pay) also overwhelmingly favor a finding that the decision to submit the affidavit was ***not*** plausibly to induce payment.  The affidavit does not state that it is an attempt to collect a debt, and it does not threaten Merrill with any adverse consequences such as adverse credit reporting, loss of property, or risk of credit worthiness, for any failure to pay.

- **The 2 Remaining Factors Are Neutral Or Unavailing**

*Goodson* Factor 5 questions whether the communication was from a debt collector. This factor cannot logically apply where, as here, the only concrete fact upon which plaintiffs assert TSI is a debt collector is the very same communication that is being evaluated.

*Goodson* Factor 4 questions whether the statements were part of a strategy to make payment more likely.  Merrill has not alleged any facts to support any theory that the production of affidavits in response to discovery requests (as opposed to those which may

be offered in support of affirmative relief or accompanying collection complaints) is part of a larger strategy to induce payment from debtors. The factor is neutral and cannot support a plausibility finding, one way or the other, that the animating purpose of NCSLT 2005-3 or its counsel's decision to produce the affidavit in discovery responses was to induce payment.

**B.    The Complaint Fails To State A Claim Under § 1692f**

Plaintiffs also invoke § 1692f of the FDCPA in passing to claim it is a violation of the Act to collect an amount (including any interest, fee, charge, or expense incidental to the principal obligation) that is not expressly authorized by the agreement creating the debt or permitted by law. *See* Compl. ¶ 114; PageID.21-22. But the Complaint does not actually allege the underlying state court collection complaints sought recovery for any amount not expressly authorized by agreement.

The Complaint's mere mention of § 1692f, without any facts to show what amount was sought in either of the underlying state court actions that was not authorized by the Credit Agreements under which the debts at issue were created, is not sufficient to survive Rule 12(b)(6). Plaintiffs' conclusory § 1692f claim is impermissibly asserted in the abstract and must be dismissed.

**C.    Plaintiffs Fail To State A Claim Against TSI Under State Consumer Protection Statutes**

Plaintiffs assert claims under the Michigan Consumer Protection Act ("MCPA") MCL § 445.251, *et seq.*, and the Michigan Occupational Code ("MOC") MCL § 339.901, *et seq.*, based on the same factual allegations underpinning their FDCPA claims. Compare

14

Complaint FDCPA Count I (¶ 115, subparagraphs a, b and c; PageID.22) with MPCA Count II (¶ 122, subparagraphs a, b and c; PageID.23-24) with MOC Count III (¶ 130, subparagraphs a, b and c; PageID.24-25).

Courts generally analyze MCPA claims in the same manner as FDCPA claims when based on the same factual allegations, as the language in the MCPA is "very similar" to the language in the FDCPA. *Adams v. Seterus, Inc.*, 2019 WL 4735157, *5 (E.D. Mich. Sept. 27, 2019) (citing *Gamby v. Equifax Info. Servs., LLC*, 462 F. App'x 552, 556 n. 6, 2012 WL 447491 (6th Cir. 2012) (citing § 1692e)); *Scheuer v. Jefferson Cap. Sys., LLC*, 43 F.Supp.3d 772, 786 (E.D. Mich. 2014); *Newman v. Trott & Trott, P.C.*, 889 F.Supp.2d 948, 967 (E.D. Mich. 2012). Consequently, "MCPA claims which 'simply duplicate . . . claims under the FDCPA' need not be addressed separately." *Newman v. Trott & Trott, P.C.,* 889 F.Supp.2d 948, 967 (E.D. Mich. 2012) (quoting *Lovelace v. Stephens & Michaels Assoc., Inc.,* 2007 WL 3333019, *2 (E.D. Mich. Nov. 9, 2007)); *see also Saltzman v. I.C. System, Inc.,* 2009 WL 3190359, *9 (E.D. Mich. Sept. 30, 2009); *Millsap v. CCB Credit Svcs., Inc.,* 2008 WL 8511691, *10 (E.D. Mich. Sept. 30, 2008).

Similarly, because the MOC also mirrors the FDCPA, courts likewise dispose of identical MOC claims in the same way. *Boozer v. Enhanced Recovery Co., LLC*, 2019 WL 5295730, *11 (E.D. Mich. Oct. 18, 2019) (citing *Millsap*, 2008 WL 8511691 at *10).

Accordingly, plaintiffs' parallel claims under MCPA §§ 445.252(a), (e), and (f) and MOC §§ 339.915(a), 339.915(e), and 339.915(f) fail for the same reasons their FDCPA claims fail as a matter of law, as discussed above.

3.     **Plaintiffs Fail To State A Claim Against TSI For Malicious Prosecution**

To state a cause of action for malicious prosecution under MCL § 600.2907, plaintiffs must plead: (1) "that prior proceedings terminated in favor of the present plaintiff[s]"; (2) "that there was an absence of probable cause for the proceedings"; (3) "that malice, defined as a purpose other than that of securing the proper adjudication of the claim, existed"; and (4) "that a special injury flowed directly from the prior proceeding." *Kloian v. O'Jack*, No. 301544, 2012 WL 205833, *1 (Mich. Ct. App. Jan. 24, 2012) (citing *Friedman v. Dozorc*, 412 Mich. 1, 48, 312 N.W.2d 585, 603 (1981)). Plaintiffs have not adequately pled each element, and so both of their claims for violation of MCL § 600.2907 must be dismissed.

### A.     Wilk Cannot Show A Prior Proceeding Terminated In Her Favor

As noted, a malicious prosecution plaintiff must allege a prior proceeding terminated in her favor. But here, as to Wilk, the Complaint establishes the opposite: the prior state court collection lawsuits filed against her terminated in favor of NCSLT 2006-3 and NCSLT 2004-2. Compl. ¶ 86; PageID.16. Moreover, Wilk does not allege that any alleged garnishment action resulting from those judgments terminated in her favor. As such, Wilk has not and cannot meet this first element, and her claim for malicious prosecution must fail for that reason alone.

### B.     Plaintiffs Have Not Alleged The Absence Of Probable Cause In Prior Proceedings

"The absence of probable cause in bringing a civil action may not be established merely by showing that the action was successfully defended." *Friedman*, 312 N.W.2d at

603.  Furthermore, "[o]ne who takes an active part in the initiation, continuation or procurement of civil proceedings against another has probable cause for doing so if he *reasonably believes in the existence of the facts upon which the claim is based*, and . . . correctly or reasonably believes that under those facts the claim may be valid under the applicable law . . . ."  *Callahan v. Simmons*, 47 F.3d 1167 (6th Cir. 1995) (quoting *Friedman*, 312 N.W.2d at 606 (emphasis added)).

Here, plaintiffs have not disputed that they took out and received the student loans at issue; they merely attack the foundation for *the admissibility* of the documents substantiating that indebtedness to the NCSLTs.  They do not, and cannot, allege that there was no probable cause in the filing of the respective collection lawsuits against them.

### C. Plaintiffs Have Not Alleged The Existence Of Malice

Michigan caselaw defines malice as "a purpose other than that of securing the proper adjudication of the claim."  *Friedman*, 312 N.W.2d at 603.  The *Friedman* court also noted that, at least in the case of an attorney, the expectation of a fee for services, even a contingency fee, cannot constitute an improper purpose meeting the malice element in a malicious prosecution claim.  *Id.* at n.61.

Even taking as true the demonstrably false allegation that TSI filed the underlying state court collection lawsuits against plaintiffs or that TSI was not authorized by the NCSLTs to initiate those actions, plaintiffs still have not alleged any ulterior purpose for those actions other than to seek the adjudication of the NCSLTs' claims pursuant to TSI's subservicing obligations which plaintiffs acknowledge in their Complaint.  Compl. ¶¶ 35-41; PageID.8.

17

### D.      Plaintiffs Cannot Show They Suffered A Special Injury

"An action for malicious prosecution of a civil action may not be brought absent a special injury." *Kloian*, 2012 WL 205833 at *2. As such, "an action for malicious prosecution will lie only upon a showing of 'special injury equivalent to a seizure of property as a result of the defendant's institution of civil proceedings.'" *Sage Int'l, Ltd. v. Cadillac Gage Co.*, 556 F. Supp. 381, 384 (E.D. Mich. 1982) (citing *Friedman*, 312 N.W.2d at 599). Furthermore, a special injury must result "from the prior proceedings," and it "'must be some injury which would not necessarily occur in all suits prosecuted for similar causes of action.'" *Reffitt v. Mantese*, No. 346471, 2019 WL 5204542, *4 (Mich. Ct. App. Oct. 15, 2019) (quoting *Barnard v. Hartman*, 130 Mich. App. 692, 695, 344 N.W.2d 53, 54 (1983)).

Here, plaintiffs allege "actual damages, including but not limited to: payments made to TSI or collected by TSI or others on debts that were in fact not legally enforceable; the costs associated with defending the collection lawsuits; and such other damages as may be proved at trial." Compl. ¶ 135; PageID.26. Plaintiffs cannot show their injuries are special. In other words, they cannot show their injuries are different than those that would occur in all similar collection actions. Nor can they show the costs associated with defending collection complaints are special injuries, because any such costs are not "equivalent to a seizure of property" as a result of the underlying civil proceedings. *See Young v. Motor City Apartments Ltd. Dividend Hous. Ass'n No. 1 & No. 2*, 133 Mich. App. 671, 677, 350 N.W.2d 790, 793 (1984) (alleged injuries including "1. Time and revenue lost while defending the lawsuit; 2. Medical expenses for treatment of various illnesses and mental

anguish related to defending the lawsuit; 3. Public ridicule; 4. Injury to reputation and goodwill, both private and professional; 5. Costs incurred to defend against the lawsuit and to defend against grievances brought before the State Bar; 6. Lost profits from accounts receivables that became uncollectable while defending the lawsuit; and 7. Lost profits from the closing of a section of plaintiffs' business materially affected by the lawsuit … fall short of being equivalent to a seizure of property").  Moreover, such costs are by no means *special*; litigation defense costs would necessarily be incurred in the defense of any collection or garnishment action and are included in "the damage which would ordinarily result in the type of action brought[.]"  *See Reffitt*, 2019 WL 5204542 at *4 (internal quotation and citation omitted); *see also Early Detection Ctr., P.C., v. New York Life Ins. Co.*, 157 Mich. App. 618, 628, 403 N.W.2d 830, 834 (1986) (alleged damages including the cost of the litigation insufficient to establish the element of special injury).

Furthermore, any injury resulting to Wilk from the garnishment actions against her results from the underlying collection judgments upon which the garnishment actions were brought.  But a garnishment is merely a form of execution on a prior judgment.  Wilk's garnishment is thus not an injury "which would not necessarily occur" as a result of the underlying collection judgments.  Moreover, as noted above, considering the prior collection lawsuits terminated *against* her, she is collaterally estopped from challenging them now for the reasons discussed above.  Accordingly, Wilk cannot now assert that amounts she may have paid pursuant to any valid final judgment—whether by voluntary payment, garnishment, foreclosure, or otherwise—are injuries caused by TSI; any such "injuries" resulted from the judgments entered against her in 2014.

19

In summary, Merrill has not sufficiently alleged an absence of probable cause, malice, or any special injury. Likewise, Wilk has not sufficiently alleged a prior proceeding terminated in her favor, an absence of probable cause, malice, or any special injury. The absence of any one of these elements is fatal to the claim. As such, plaintiffs have failed to state a claim for malicious prosecution under MCL § 600.2907, and those claims must be dismissed.

**4.     Plaintiffs Fail To State A Claim Against TSI For Unjust Enrichment**

Plaintiffs allege "TSI and US Bank have obtained a benefit from Plaintiffs and Class Members in the form of payments and/or seizures by garnishment" and that "[i]t would be inequitable for Defendants to retain the benefit so obtained." Compl. ¶¶ 136-7; PageID.26. Under Michigan law, the elements of an unjust enrichment claim are "(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Sweet Air Inv., Inc. v. Kenney*, 275 Mich. App. 492, 504, 739 N.W.2d 656, 663 (2007) (citations omitted). However, "[t]here is no claim for unjust enrichment when there exists a valid contract covering the same subject matter." *Ajuba Int'l, L.L.C. v. Saharia*, 871 F. Supp. 2d 671, 692 (E.D. Mich. 2012).

**A.     Plaintiffs Have Not Alleged TSI Retained Any Benefit From Plaintiffs**

Plaintiffs have not asserted a plausible cause of action against TSI for unjust enrichment because they have failed to sufficiently allege the most basic element of that claim—that TSI retained or received any benefit from them. Nowhere does Merrill allege she made any payments to TSI. *See* Compl. ¶¶ 73-85; PageID.14-16. As acknowledged

by plaintiffs in the Complaint, the collection lawsuits filed by NCSLT 2005-3 and NCSLT 2006-4 against Merrill were ultimately dismissed with prejudice.  *Id.* at ¶¶ 78, 82; PageID.15.

Likewise, Wilk does not allege she made any payments to TSI.  *Id.* at ¶¶ 86-96; PageID.16-18.  While plaintiffs do allege that "[p]ursuant to the garnishments filed by Defendant TSI, Wilk has had her personal funds seized by TSI[,]" even that allegation is deficient on its face.  *Id.* at ¶ 93; PageID.17.  First, plaintiffs concede the garnishments were filed pursuant to judgments rendered against Wilk.  Thus, any such garnishments would likewise be garnishments *in favor of the NCSLTs*, not TSI.  Second, and critically, plaintiffs do not allege that TSI *retained* any of Wilk's personal funds.  To the extent that TSI obtained Wilk's funds on behalf of the NCSLTs, Wilk has still not sufficiently pled that TSI kept those funds for itself.  As such, plaintiffs have not alleged facts sufficient to state a claim for unjust enrichment against TSI, and those claims must be dismissed.

### B.    Plaintiffs' Unjust Enrichment Claim Is Barred By Express Contract

Plaintiffs' student loans, including the collection of any money owed thereon, are governed by express contracts, namely the Credit Agreements signed by plaintiffs.  *See, e.g.,* Compl., Exh. B at pp. 9-12; PageID.38-41; *see also*, Compl., Exh. A at ¶ 2; PageID.29; Compl., Exh. C at ¶ 2; PageID.82.  Importantly, nowhere in their Complaint do plaintiffs dispute they signed the Credit Agreements, that they received the funds disbursed pursuant to those Credit Agreements, or that they received the benefit of the funds through their attendance at the schools for which those student loans were borrowed.  Any claim for

unjust enrichment plaintiffs now attempt to assert are precluded here, where "there exists a valid contract covering the same subject matter." *Saharia*, 871 F. Supp. 2d at 692.

Moreover, to the extent plaintiffs are seeking to challenge TSI's rights and responsibilities pursuant to the Default Prevention and Collection Services Agreement, an additional express contract of which they acknowledge the existence and to which plaintiffs are neither parties nor third-party beneficiaries, they lack the standing to do so. *See, e.g.*, *Livonia Properties Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010) ("[T]here is ample authority to support the proposition that a litigant who is not a party to an assignment lacks standing to challenge that assignment.") (citation omitted); *Dauenhauer v. Bank of New York Mellon*, 562 F. App'x 473, 480 (6th Cir. 2014) ("Courts have consistently rejected borrowers' requests to have mortgage assignments and foreclosures invalidated due to non-compliance with Pooling and Servicing Agreement provisions, based on borrowers' lack of standing.") (citation omitted). In sum, plaintiffs' unjust enrichment claim cannot stand where the subject matter of their obligations on their student loans is expressly governed by contract and plaintiffs lack standing to challenge TSI's role in servicing those loans.

In summary, plaintiffs have not sufficiently alleged that TSI obtained or retained any benefit from them, and their claim is precluded by express contract. Plaintiffs have thus failed to state a claim for unjust enrichment. Those claims fail as a matter of law and must be dismissed.

## III. CONCLUSION

For the reasons stated above, all of plaintiffs' claims against TSI should be dismissed with prejudice.

Respectfully submitted,

*/s/ Deborah A. Lujan*_____
Deborah A. Lujan (P46990)
Collins Einhorn Farrell PC
4000 Town Center, 9th Floor
Southfield, MI 48075
Telephone: (248) 355-4141
Email: deborah.lujan@ceflawyers.com

Bryan C. Shartle
Justin H. Homes
SESSIONS, FISHMAN, NATHAN & ISRAEL
3850 N. Causeway Blvd., Suite 200
Metairie, LA 70002
Telephone: (504) 828-3700
Facsimile: (504) 828-3737
Email: jhomes@sessions.legal

Dated: May 15, 2020

*Attorneys for Defendant*
*Transworld Systems Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2020, a copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record herein.

*/s/ Deborah A. Lujan*_____
Deborah A. Lujan (P46990)
Collins Einhorn Farrell PC
Email: deborah.lujan@ceflawyers.com