IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ALLISON L. MERRILL and<br>BRITTANY WILK, *individually and on*<br>*behalf of all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>TRANSWORLD SYSTEMS, INC. and<br>U.S. BANK NATIONAL<br>ASSOCIATION,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br><br>Case No. 1:20-cv-00183-PLM-SJB |

## DECLARATION OF EDUARDO PALLARES

    1.    I, Eduardo Pallares, am a Supervising Associate Attorney at Shermeta Law Group, PLLC ("Shermeta"), which firm was counsel of record for National Collegiate Student Loan Trust 2005-3 in *National Collegiate Student Loan Trust 2005-3, A Delaware Statutory Trust v. Allison L. Merrill*, Case No. 2019-34821-CK, 13th Circuit Court, Grand Traverse County, Michigan (the "State Court Action"). From my review and personal knowledge of Shermeta's files in the State Court Action, I declare as follows:

    2.    Attached as Exhibit 1 hereto is a true and correct copy of Plaintiff's Response to Defendant's Motion to Compel Discovery and for Sanctions and Brief in Opposition filed on behalf of National Collegiate Student Loan Trust 2005-3 in the State Court Action (the "Opposition"). Included as attachments to the Opposition were copies of documents provided to Merrill's counsel during discovery in the State Court Action, including an Affidavit and Verification of Account.

3.    Attached as Exhibit 2 hereto is a true and correct copy of the file-stamped Proof of Service of the Opposition, which I downloaded from the 13th Circuit Court's e-file system on May 14, 2020.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 15th day of May, 2020 at _Auburn Hills_____, Michigan.

Eduardo Pallares

# EXHIBIT 1

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF GRAND TRAVERSE

NATIONAL COLLEGIATE STUDENT LOAN
TRUST 2005-3, a Delaware Statutory Trust,

        Plaintiff,

v                                   Case No. 2019034821-CK
                                   Hon. Thomas G. Power

ALLISON L. MERRILL,

        Defendant.
                                                            /

| | |
|---|---|
| Shermeta Law Group, PLLC | The Law Offices of Daniel O. Myers |
| Tricia N. McKinnon (P60448) | Daniel O. Myers (P49250) |
| Attorney for Plaintiff | Attorney for Defendant |
| P.O. Box 5016 | 4020 Copper View, Suite 225 |
| Rochester, MI 48308 | Traverse City, MI 49684 |
| (248) 519-1700 | (231) 943-1135 |

                                                              /

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
## TO COMPEL DISCOVERY AND FOR SANCTIONS

       NOW COMES Plaintiff, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3, A DELAWARE STATUTORY TRUST, by and through its attorneys, SHERMETA LAW GROUP, PLLC, and for Its Response to Defendant's Motion to Compel Discovery and for Sanctions, states the following:

       1.     In response to paragraph one (1), Plaintiff admits that Defendant served Discovery Requests on Plaintiff. However, Plaintiff denies that it failed produce any documents that were relevant or within the scope of discovery.

       2.     In response to paragraph two (2), Plaintiff admits.

       3.     In response to paragraph three (3), Plaintiff admits that Defendant sent a letter and requested that Plaintiff supplement its responses. However, Plaintiff denies that it failed produce any documents that were relevant or within the scope of discovery.

4.      In response to paragraph four (4), Plaintiff admits.

5.      In response to paragraph five (5), Plaintiff admits that Defendant sent a letter and requested that Plaintiff supplement its responses and admits that it did not respond to the additional request to supplement its Answers. However, Plaintiff denies that it failed produce any documents that were relevant or within the scope of discovery.

6.      In response to paragraph six (6), Plaintiff denies because the statement is untrue. Plaintiff produced all documents that were relevant or within the scope of discovery.

7.      MCR 2.119(A)(1)(b) provides that a motion must state with particularity the grounds and the authority on which it is based. Defendant provides no authority for this Motion.

8.      In addition, the scope of discovery is defined in MCR 2.302(B)(1), which provides "information sought [must be] reasonably calculated to lead to the discovery of admissible evidence."

9.      It would appear that Defendant is trying to pursue unrelated and irrelevant matters in an effort to confuse the real issue, namely the breach of contract at issue in this lawsuit.

WHEREFORE Plaintiff respectfully requests this Honorable Court deny Defendant's Motion to Compel Discovery and for Sanctions. In addition, Plaintiff requests costs and attorney fees for having to defend this Motion.

Respectfully Submitted,
SHERMETA LAW GROUP, PLLC

Dated: _7/19/19_

TRICIA MCKINNON (P60448)
*Attorneys for Plaintiff*

NATIONAL COLLEGIATE STUDENT LOAN
TRUST 2005-3, a Delaware Statutory Trust,

        Plaintiff,

v                                  Case No. 2019034821-CK
                                  Hon. Thomas G. Power

**ALLISON L. MERRILL,**

        Defendant.

| | |
|---|---|
| Shermeta Law Group, PLLC | The Law Offices of Daniel O. Myers |
| Tricia N. McKinnon (P60448) | Daniel O. Myers (P49250) |
| Attorney for Plaintiff | Attorney for Defendant |
| P.O. Box 5016 | 4020 Copper View, Suite 225 |
| Rochester, MI 48308 | Traverse City, MI 49684 |
| (248) 519-1700 | (231) 943-1135 |

## BRIEF IN OPPOSITION

### FACTS

On or around April 18, 2019, Plaintiff received from Defendant a copy of Defendant's First Discovery Requests. On or around May 24, 2019, Plaintiff served on Defendant its Responses to the Discovery Requests. The Responses provided proper objections where necessary, but also provided relevant and available documentation over and above said objections in an attempt to fulfill Defendant's request for discovery. On or about June 28, 2019, in spite of Plaintiff's belief that its first Responses were proper, Plaintiff provided Amended Answers to Defendant's Discovery Requests. Those responses provided additional information and documentation while also maintaining proper objections to some of the Discovery Requests. Defendant has now filed this Motion requesting documentation that is outside the scope of Discovery and not relevant to this lawsuit.

Plaintiff has provided the following documents to Defendant:

1. Loan Agreement and Terms (Exhibit 1)

2. Pre Charge-Off Payment History (Exhibit 2)

3. Post Charge-Off Payment History (Exhibit 3)

4. Deferments (Exhibit 4)

5. Pool Supplement (Exhibit 5)

6. Schedule (Exhibit 6)

7. Deposit and Sale Agreement (Exhibit 7)

8. Repayment Schedule (Exhibit 8)

9. Memorandum (Exhibit 9)

10. Trust Certificate (Exhibit 10)

11. Plaintiff's Affidavit (Exhibit 11)

These documents demonstrate contract, breach and damages due. In addition, the documents outline the transfer of the loan from the original lender to Plaintiff. Any other documents requested by Defendant are irrelevant to the issues in this lawsuit.

## ARGUMENT

The purpose of discovery is to "simplify and clarify issues." *In re Pott*, 234 Mich App 369, 376; 593 NW2d 685, 688 (1999). Although Michigan law has a liberal discovery policy, the Court must also seek to protect the interests of the responding party from irrelevant discovery requests. *Reed Dairy Farm v Consumers Power Co*, 227 Mich App 614, 616; 576 NW2d 709 (1998); *Cabrera, et al v Ekema, et al*, 265 Mich App 402, 695 NW2d 78 (2005); *In re Hammond Estate*, 215 Mich App 379, 386; 547 NW2d 36 (1996). The Michigan Court Rules allow for a party responding to requests to produce that seek to discover information outside of the proper scope of discovery to object to said requests. MCR 2.310(C)(2).

Defendant's Requests for Production contained irrelevant, vague, and overbroad document requests. Many paragraphs requested "each and every document" which is neither limited in scope nor relevance. Plaintiff rightly objected on multiple bases; but, nevertheless provided relevant documentation which it will rely on during litigation and trial if necessary. Further, Defendant requested multiple items which are not relevant to this lawsuit.

In this case, Defendant has requested a copy of an un-redacted complaint in a wholly separate lawsuit involving Plaintiff, but not Defendant. In addition, Defendant has requested a copy of Plaintiff's retainer agreement with its attorney. Defendant has cited no basis to be entitled to those documents nor has she indicated how either one of those are relevant to the breach of her student loan that is at issue in this lawsuit. The information that Defendant is requesting is certainly only being requested to cause undue burden and annoyance upon the Plaintiff. In addition, it will not lead to the discovery of any admissible evidence. The scope of discovery is defined in MCR 2.302(B)(1), which provides "information sought [must be] reasonably calculated to lead to the discovery of admissible evidence." It would appear that Defendant is trying to pursue unrelated and irrelevant matters in an effort to confuse the real issue, namely the breach of contract. For these reasons, Defendant's Motion to Compel should be denied.

As stated above, Plaintiff objected to the discovery requests, but otherwise submitted all documentation in its possession to Defendant. Therefore, for the reasons stated in Plaintiff's Response and this Brief, Defendant's Motion should be denied. In addition, any costs or attorney's fees requested by Defendant should be denied because Plaintiff did not violate the Michigan Court Rules by objecting to Defendant's requests. As stated above, Plaintiff was within its right to object to the Discovery Requests. MCR 2.310(C)(1)-(2).

<u>CONCLUSION</u>

Plaintiff objected to the discovery requests, but otherwise submitted all documentation in its possession to Defendant as requested. Therefore, for the reasons stated in Plaintiffs Response and this Brief, Defendant's Motion should be denied, and any costs and attorney fees requested by Defendant should be denied, as Plaintiff did not violate the Michigan Court Rules, by objecting to Defendant's requests on numerous valid grounds. As stated above, Plaintiff was within its rights to object to said requests. MCR 2.310(C)(1) through (3).

WHEREFORE, Plaintiff requests that this Honorable Court deny Defendant's Motion to Compel and for Sanctions and grant Plaintiff costs and attorney fees for having to defend this Motion.

Respectfully Submitted,
SHERMETA LAW GROUP, PLLC

Dated: 7/19/19

TRICIA MCKINNON (P60448)
*Attorneys for Plaintiff*

File: 809747

# STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF GRAND TRAVERSE

NATIONAL COLLEGIATE STUDENT LOAN
TRUST 2005-3, a Delaware Statutory Trust,

      Plaintiff,

v

      Case No. 2019034821-CK
      Hon. Thomas G. Power

ALLISON L. MERRILL,

      Defendant.

| | |
|---|---|
| Shermeta Law Group, PLLC | The Law Offices of Daniel O. Myers |
| Tricia N. McKinnon (P60448) | Daniel O. Myers (P49250) |
| Attorney for Plaintiff | Attorney for Defendant |
| P.O. Box 5016 | 4020 Copper View, Suite 225 |
| Rochester, MI 48308 | Traverse City, MI 49684 |
| (248) 519-1700 | (231) 943-1135 |

## PROOF OF SERVICE

I, _Elizabeth Corneil_, hereby state that I am not a party to the above litigation, that I am employed by SHERMETA LAW GROUP, PLLC., and that on _July 30_, 2019, I mailed a copy of PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS, BRIEF IN OPPOSITION, EXHIBITS, and this PROOF OF SERVICE to:

Daniel O. Myers
The Law Offices of Daniel O. Myers
4020 Copper View, Suite 225
Traverse City, MI 49684

By placing same in a sealed envelope with first class postage fully prepaid and depositing same in a United States Mail Receptacle.

File: 809747

# NOTE DISCLOSURE STATEMENT

$ __17,127.07__

__03017765__

Loan No.

Borrower(s) __ALLISON L MERRILL__

Student: __ALLISON L MERRILL__
Date: __July 15, 2005__

ALLISON L MERRILL
12305 S LINCOLN HOLLOW CT
CEDAR , MI 49621

Lender Name and Address:
CHARTER ONE BANK, N.A.
833 BROADWAY
ALBANY, NY 12207-2415

This disclosure statement relates to your Loan Note disbursed on ___July 15, 2005___
Because your Loan is either being disbursed or entering repayment, or the repayment terms are being modified, the following information about your Loan is being given to you.

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments scheduled. |
|---|---|---|---|
| 8.965 % | $ 24,224.80 | $ 15,500.00 | $ 39,724.80 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are due |
|---|---|---|
| 240 | $ 165.52 | On the 30th day of each month beginning on 7/2007 |
|  |  |  |
|  |  |  |

**VARIABLE RATE:** The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of the loan if the index rate increases. The index is (check one):

☐ Prime Rate Index Adjusted Monthly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal on the last business day of each calendar month.

☐ Prime Rate Index Adjusted Quarterly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal on the last business day of each calendar quarter.

☒ LIBOR Index Adjusted Quarterly - The average of the one-month London Interbank Offered Rates published in the "Money Rates" section of The Wall Street Journal on the first business day of each of the three (3) calendar months immediately preceding the first day of each calendar quarter.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase the amount of any current and all future payments. Any increase in the index and the Annual Percentage Rate which occurs while principal and interest payments are deferred will increase the amount of all future payments. Any increase in the index and the Annual Percentage Rate which occurs after you have begun to make principal and interest payments on your loan will increase the amount of your future principal and interest payments beginning with your next annual payment adjustment date. For example, assume you obtain a loan in your junior year, in the amount of $10,000, at an interest rate of 11%, and you defer principal and interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12% on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by $ 91.01, and your monthly principal and interest payments would increase by $ 9.37.

**SECURITY:** You have given a security interest in all refunds or amounts owed to you at any time by the student's educational institution. Collateral securing other loans with the Lender may also secure this Loan.
**LATE CHARGES:** If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If you default, Lender (or any subsequent holder or any subsequent holder of your Loan Note) may increase the margin used to compute the Annual Percentage Rate by two percentage points (2%).
**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, any security interest and prepayment refunds and penalties.

**Estimates:** All numerical disclosures except the late payment disclosure are estimates.

Principal Amount of Note (Amount Financed plus Prepaid Finance Charge)       $ __17,127.07__

Itemization of Amount Financed
Amount paid to   ALLISON L MERRILL       $ __15,500.00__
Amount paid to       $ _____
Total Amount Financed       $ __15,500.00__

Itemization of Prepaid Finance Charge
Origination Fee       $ __1,627.07__
Total Prepaid Finance Charge(s)       $ __1,627.07__

EXHIBIT
1

## \* Creditworthy Student \*  Credit Agreement - Signature Page

**NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION**

### LOAN PROGRAM INFORMATION

CFS Private Education Undergraduate Loan

Academic Period: 08/2005-05/2006

Lender: Charter One Bank, N.A.

School: NORTHWESTERN MICHIGAN COLLEGE

Loan Amount: $15500.00

Repayment Option: Deferred Principal and Interest

Deferral Period Margin: 4.85

Repayment Period Margin: 4.85

Loan Origination Fee Percentage: 9.50

### STUDENT BORROWER INFORMATION (Must be at least 18 years of age)

Borrower Name:  Allison L Merrill
Home Address: 12305 S Lincoln Hollow Ct    Cedar, MI 49621
Social Security #: ███████0578
Date of Birth: ████1983
Home Telephone: ███████
Current Employer: TRAVERSE CITY STATE BANK
Employer Telephone: ███████
Current Position: Student  *Operations*    Years There:
Years at Previous Employment: 2 Years

Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.

Student Citizenship (check one box):  ☒ U.S. Citizen    ☐ Eligible Non-Citizen (Attach front & back copy of INS or student visa card)
Personal Reference Name: Lamar King    Reference Home Tel #: ███████    Work Tel #:
Reference  Street Address: 8735 Pheasant Run
Reference City/State/Zip:  Traverse City, MI 49621

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Credit Agreement AB.04-05,CRWO.10CFS.0104.  I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS – NOTICE TO CUSTOMER:**
(a) **DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.**
(b) **DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.**
(c) **YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.**
(d) **YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.**

PLEASE SIGN BELOW – RETURN This Page With Proof of Income and Other Information (if applicable) – FAX TO: 800-704-9408

Signature of Borrower  *Allison Merrill*    Date 6-28-05

2005 JUN 29 P 3: 011

In this Credit Agreement, the words "I", "me", "my", and "mine" mean the person who signed this Credit Agreement as Borrower. The words "you", "your", "yours", and "Lender" mean Charter One Bank, N.A., its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement.

**A. PROMISE TO PAY:** I promise to pay to you the principal sum of the Loan Amount shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) ("Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.7).

**B. IMPORTANT – READ THIS CAREFULLY:**
1. When you receive my signed Credit Agreement, you are not agreeing to lend me money until you confirm my income and the Student's enrollment in the School and review the other information requested on the Instructions page and returned with this Credit Agreement. When you have confirmed and reviewed this information, you will schedule a date or dates on which you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. If the income and/or the enrollment information does not match the information I provided to you when I requested this loan, or if the other information requested on the Instructions page and returned with this Credit Agreement is unsatisfactory, you have the right to not make a loan or to lend an amount less than the loan amount I requested. I agree to accept an amount less than the loan amount I requested and to repay that portion of the loan amount I requested that you actually lend to me. You may make the check co-payable to me and the Cosigner or to me and the School.
2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan which you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following:
(a) endorsing or depositing the check that disburses the loan proceeds; or (b) using or allowing the loan proceeds to be used on my behalf without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement. If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check which disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**
1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.
2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.
3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).
**(a)** _Undergraduate Alternative Loan Program:_ If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), interest payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program, and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date.
**(b)** _Graduate Professional Education Loan Program:_ 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will

end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.
4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.4) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**
1. Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.
2. Variable Rate – The "Variable Rate" is equal to the Current Index plus or minus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of Ohio. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar quarter) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of _The Wall Street Journal._ The Index for each calendar quarter (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the LIBOR rates published on the first business day of each of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth percent (0.01%). If _The Wall Street Journal_ is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.
3. Capitalization — If payment of principal and interest is deferred (Paragraph C.2) and I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period. You will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and at the end of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, if I am in default and the loan has been sold to TERI (see Section L.11), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will add all accrued and unpaid interest to the principal balance of my loan on the last day of the Deferment Period and at the end of any forbearance period.

**E. TERMS OF REPAYMENT:**
1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you will send me statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.
2. Repayment Period – During the Repayment Period, you will send me monthly statements that show the amounts of minimum monthly payments and the payment due dates. I will make consecutive monthly payments in amounts at least equal to such minimum monthly payments by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments.
3. Repayment Terms – My monthly payment will be established based on the rules in this Credit Agreement when my Repayment Period begins. My monthly payment amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the amount of my monthly payment would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my monthly payment will be recalculated. My new monthly payment amount will be disclosed to me by the servicer. The new monthly repayment amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly

installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. **Minimum Repayment** – Notwithstanding Paragraph E.3, I agree to pay at least $25 each month during the Repayment Period or the unpaid balance whichever is less. I understand that I may pay more than my monthly payment at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments.

5. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

6. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

7. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

F. **LOAN ORIGINATION FEE:** If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the sum of the Loan Origination Fee and the Loan Amount, to the extent advanced to me, times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than the entire principal amount (Loan Origination Fee plus Loan Amount). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and will be added to the principal amount of my loan. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

G. **RIGHT TO PREPAY:** I have the right to prepay all or any part of my loan at any time without penalty.

H. **FORBEARANCE:** If I am unable to repay my loan in accordance with the terms established under this Credit Agreement, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

I. **WHOLE LOAN DUE:** To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) Any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors, or (5) I make any false written statement in applying for this loan or any other student or education loan at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

J. **NOTICES:**
1. I will send written notice to you, or any subsequent holder of this Credit Agreement, within ten days after any change in my name, address, or enrollment status (for example, if I withdraw from the School or transfer to another school participating in this loan program).
2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me.

K. **INFORMATION:**
1. I must update the information I provided to you whenever you ask me to do so.
2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

L. **ADDITIONAL AGREEMENTS:**
1. I understand that you are located in Ohio and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES.
2. The proceeds of this loan will be used only for my educational expenses at the School.
3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that

a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and Instructions and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

10. If I fail to complete the education program paid for with this loan, I am not relieved of any obligation within or pursuant to this Credit Agreement.

11. I acknowledge that this loan is subject to the limitations on dischargeability in bankruptcy set forth in **Section 523 (a) (8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit institution.**

12. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

13. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to TERI, either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower provided in connection with this Credit Agreement.

14. Waiver by Lender. You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

15. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

16. If I elect to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and me: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe.

## M. DISCLOSURE NOTICES

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important information about procedures for opening a new account:*
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

*What this means for you:*
When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

IOWA, KANSAS, AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

MARYLAND RESIDENTS: You elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland only to the extent not inconsistent with 12 U.S.C. § 85 and related regulations and opinions, which you expressly reserve.

**MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital

agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school. The legal age for entering into contracts is 18 years of age in every State in the United States except the following: Alabama and Nebraska (19 years old), and Mississippi and Puerto Rico (21 years old). I certify that I meet these state age requirements.

BORROWER SSN: ***-**-0578   NAME: MERRILL, ALLISON L
1ST DISB: 07/15/05 LN SEQ: 0001   LN PGM: ALPLN      OWN: 122962QA-NCT
GUARANTOR: TERI                    CUST ACCT: LT07  ORIG BAL:  17,127.07
BOND ISSUE: NCT20053   PD AHEAD:     STATUS: ACTIVE      CURR BAL:      0.00

| | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 06/04/14 | 06/04/14 | 5003A | 10.00CR | 0.00 | 0.00 |
| 2 | | 06/02/14 | 06/02/14 | 1030A | 29,536.14CR | 54.46 | 0.00 |
| 3 | | 05/19/14 | | 2601A | 5.00 | 116.71 | 28,344.12 |
| 4 | | 04/19/14 | | 2601A | 5.00 | 19.45 | 28,344.12 |
| 5 | | 04/14/14 | 04/14/14 | 1010C | 100.86CR | 101.25 | 28,344.12 |
| 6 | | 03/19/14 | | 2601A | 5.00 | 109.15 | 28,344.12 |
| 7 | | 02/19/14 | | 2601A | 5.00 | 31.18 | 28,344.12 |
| 8 | | 02/11/14 | 02/11/14 | 1010C | 67.24CR | 89.66 | 28,344.12 |
| 9 | | 01/19/14 | | 2601A | 5.00 | 62.37 | 28,344.12 |
| 10 | | 01/03/14 | 01/06/14 | 1010C | 84.05CR | 58.67 | 28,344.12 |

SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN



EXHIBIT

BORROWER SSN: ***-**-0578  NAME: MERRILL, ALLISON L
1ST DISB: 07/15/05 LN SEQ: 0001  LN PGM: ALPLN   OWN: 122962QA-NCT
GUARANTOR: TERI                  CUST ACCT: LT07  ORIG BAL: 17,127.07
BOND ISSUE: NCT20053   PD AHEAD:    STATUS: ACTIVE     CURR BAL:      0.00

|   | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---------|----------------|-------------|-----------|-------------|------------------|-------------------|
| 1 |  | 12/19/13 |  | 2601A | 5.00 | 54.79 | 28,344.12 |
| 2 |  | 12/05/13 | 12/06/13 | 1010C | 176.18CR | 62.62 | 28,344.12 |
| 3 |  | 11/19/13 |  | 2601A | 5.00 | 113.50 | 28,344.12 |
| 4 |  | 10/21/13 | 10/21/13 | 1010C | 35.34CR | 7.82 | 28,344.12 |
| 5 |  | 10/19/13 |  | 2601A | 5.00 | 117.50 | 28,344.12 |
| 6 |  | 09/19/13 |  | 2601A | 5.00 | 121.56 | 28,344.12 |
| 7 |  | 08/19/13 |  | 2601A | 5.00 | 121.56 | 28,344.12 |
| 8 |  | 07/19/13 |  | 2601A | 4.94 | 196.07 | 28,344.12 |
| 9 |  | 05/30/13 | 05/30/13 | 1010C | 197.64CR | 43.13 | 28,344.12 |
| 10 |  | 05/19/13 |  | 2601A | 4.94 | 125.49 | 28,344.12 |

SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

BORROWER SSN: ***-**-0578  NAME: MERRILL, ALLISON L
1ST DISB: 07/15/05 LN SEQ: 0001  LN PGM: ALPLN      OWN: 122962QA-NCT
GUARANTOR: TERI                   CUST ACCT: LT07  ORIG BAL: 17,127.07
BOND ISSUE: NCT20053    PD AHEAD:      STATUS: ACTIVE.    CURR BAL:      0.00

|    | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|----|---------|----------------|-------------|-----------|-------------|------------------|-------------------|
| 1  |         | 04/17/13       | 04/18/13    | 1010C     | 98.82CR     | 105.96           | 28,344.12         |
| 2  |         | 03/21/13       | 03/21/13    | 1010C     | 98.82CR     | 7.85             | 28,344.12         |
| 3  |         | 03/19/13       |             | 2601A     | 4.94        | 102.16           | 28,344.12         |
| 4  |         | 02/21/13       | 02/21/13    | 1010C     | 98.82CR     | 7.85             | 28,344.12         |
| 5  |         | 02/19/13       |             | 2601A     | 4.94        | 180.75           | 28,344.12         |
| 6  |         | 01/04/13       | 01/04/13    | 1010C     | 98.82CR     | 177.34           | 28,344.12         |
| 7  |         | 11/20/12       | 11/20/12    | 1010C     | 98.82CR     | 3.94             | 28,344.12         |
| 8  |         | 11/19/12       | 11/19/12    | 1010C     | 98.82CR     | 193.15           | 28,344.67         |
| 9  |         | 10/01/12       | 10/01/12    | 1010C     | 98.82CR     | 55.27            | 28,344.67         |
| 10 |         | 09/17/12       | 09/17/12    | 1010C     | 98.82CR     | 63.24            | 28,388.22         |

SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

BORROWER SSN: ***-**-0578  NAME: MERRILL, ALLISON L
1ST DISB: 07/15/05 LN SEQ: 0001  LN PGM: ALPLN        OWN: 122962QA-NCT
GUARANTOR: TERI                        CUST ACCT:  LT07  ORIG BAL:  17,127.07
BOND ISSUE: NCT20053    PD AHEAD:      STATUS: ACTIVE        CURR BAL:        0.00

|    | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|----|---------|----------------|-------------|-----------|-------------|------------------|-------------------|
| 1  |         | 09/01/12       | 09/04/12    | 7001A     | 0.00        | 711.43           | 28,423.80         |
| 2  |         | 03/01/12       | 03/01/12    | 7001A     | 0.00        | 457.88           | 27,712.37         |
| 3  |         | 11/01/11       | 11/01/11    | 7001A     | 0.00        | 456.71           | 27,254.49         |
| 4  |         | 07/01/11       | 07/01/11    | 7001A     | 0.00        | 612.21           | 26,797.78         |
| 5  |         | 01/15/11       | 05/19/11    | 7001A     | 0.00        | 51.22            | 26,185.57         |
| 6  |         | 01/01/11       | 01/03/11    | 7001A     | 0.00        | 334.89           | 26,134.35         |
| 7  |         | 10/01/10       | 10/01/10    | 7001A     | 0.00        | 329.97           | 25,799.46         |
| 8  |         | 07/01/10       | 07/01/10    | 7001A     | 0.00        | 318.54           | 25,469.49         |
| 9  |         | 04/01/10       | 04/01/10    | 7001A     | 0.00        | 311.74           | 25,150.95         |
| 10 |         | 01/01/10       | 01/04/10    | 7001A     | 0.00        | 317.08           | 24,839.21         |

SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

BORROWER SSN: ***-**-0578   NAME: MERRILL, ALLISON L

1ST DISB: 07/15/05 LN SEQ: 0001   LN PGM: ALPLN        OWN: 122962QA-NCT

GUARANTOR: TERI                   CUST ACCT: LT07   ORIG BAL: 17,127.07

BOND ISSUE: NCT20053   PD AHEAD:      STATUS: ACTIVE        CURR BAL:         0.00

|    | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|----|---------|----------------|-------------|-----------|-------------|------------------|-------------------|
| 1  |         | 10/01/09       | 10/01/09    | 7001A     | 0.00        | 320.86           | 24,522.13         |
| 2  |         | 07/01/09       | 07/01/09    | 7001A     | 0.00        | 315.61           | 24,201.27         |
| 3  |         | 04/01/09       | 04/22/09    | 7001A     | 0.00        | 442.21           | 23,885.66         |
| 4  |         | 01/01/09       | 01/02/09    | 7001A     | 0.00        | 423.56           | 23,443.45         |
| 5  |         | 10/01/08       | 10/01/08    | 7001A     | 0.00        | 425.95           | 23,019.89         |
| 6  |         | 07/01/08       | 07/01/08    | 7001A     | 0.00        | 465.99           | 22,593.94         |
| 7  |         | 04/01/08       | 04/01/08    | 7001A     | 0.00        | 530.01           | 22,127.95         |
| 8  |         | 01/01/08       | 01/02/08    | 7001A     | 0.00        | 381.25           | 21,597.94         |
| 9  |         | 10/29/07       | 10/29/07    | 1010C     | 19.36CR     | 166.79           | 21,069.26         |
| 10 |         | 10/01/07       | 10/01/07    | 7001A     | 0.00        | 526.59           | 21,069.26         |

SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

BORROWER SSN: ***-**-0578  NAME: MERRILL, ALLISON L
1ST DISB: 07/15/05 LN SEQ: 0001  LN PGM: ALPLN   OWN: 122962QA-NCT
GUARANTOR: TERI                   CUST ACCT: LT07  ORIG BAL: 17,127.07
BOND ISSUE: NCT20053  PD AHEAD:   STATUS: ACTIVE    CURR BAL:      0.00

|    | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|----|---------|----------------|-------------|-----------|-------------|------------------|-------------------|
| 1  |         | 07/01/07       | 07/06/07    | 7001A     | 0.00        | 507.98           | 20,542.67         |
| 2  |         | 04/01/07       | 04/02/07    | 7001A     | 0.00        | 490.58           | 20,034.69         |
| 3  |         | 01/01/07       | 01/02/07    | 7001A     | 0.00        | 489.87           | 19,544.11         |
| 4  |         | 10/01/06       | 10/13/06    | 7001A     | 0.00        | 461.14           | 19,054.24         |
| 5  |         | 07/01/06       | 10/13/06    | 7001A     | 0.00        | 424.87           | 18,593.10         |
| 6  |         | 04/01/06       | 04/03/06    | 7001A     | 0.00        | 391.43           | 18,168.23         |
| 7  |         | 01/01/06       | 01/03/06    | 7001A     | 0.00        | 318.12           | 17,776.80         |
| 8  |         | 10/12/05       | 10/12/05    | 0390A     | 17,458.68   | 0.00             | 17,127.07         |
| 9  |         | 10/12/05       | 10/12/05    | 0395A     | 17,458.68CR | 331.61           | 0.00              |
| 10 |         | 07/15/05       | 07/15/05    | 0101A     | 17,127.07   | 0.00             | 17,127.07         |

SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

# Loan Payment History Report
## Date: 2019-01-09

| | | | |
|---|---|---|---|
| Account Number: | ███0578-001-PHEA | Product: | |
| Social Security Number: | ███0578 | | |
| Name: | MERRILL, ALLISON L | Officer Code: | 777053 |
| Birth Date: | 1983-██ | School: | NORTHWESTERN MICHIGAN COLL |
| Address 1: | 9504 E BINGHAM RD | Program Year: | 200405 |
| Address 2: | | | |
| City: | TRAVERSE CITY | Variable Rate Code: | FU QUARTERLY LIBOR |
| State: | MI | Interest Rate: | 7.15% |
| Zip Code: | 49684-9552 | | |
| | | Last Payment Date: | 2018-03-22 |
| | | Last Payment Amount: | $200.00 |
| | | Last Interest Date: | 2019-01-09 |
| Contract Date: | 2005-07-15 | Accrued Interest: | $7,585.75 |
| Vendor Placement Date: | 2019-01-07 | | |
| Charge Off Date: | 2014-06-02 | Recovered Interest: | $4,300.00 |
| Charge Off Amount: | $29,536.14 | Net Interest: | $3,285.75 |
| Recovered Principal: | $0.00 | Associated Costs: | $0.00 |
| Current Principal: | $29,536.14 | Recovered Costs: | $0.00 |
| Disbursement Date: | 2005-07-15 | Net Costs: | $0.00 |
| Disbursement Amount: | $17,127.07 | | |

## Transaction History

| User | Date | Time | Code | Description | Amount |
|---|---|---|---|---|---|
| System | 2014-07-03 | 00:01 | 82 | $29,536.14 @ 5.010 / 06/05/2014 - 07/03/2014 | $129.74 |
| System | 2014-07-31 | 00:01 | 82 | $29,536.14 @ 5.000 / 07/03/2014 - 07/31/2014 | $113.29 |
| System | 2014-08-01 | 00:01 | 82 | $29,536.14 @ 5.000 / 07/31/2014 - 08/01/2014 | $4.05 |
| System | 2014-08-31 | 00:01 | 82 | $29,536.14 @ 5.005 / 08/01/2014 - 08/31/2014 | $121.50 |
| System | 2014-09-02 | 00:01 | 82 | $29,536.14 @ 5.005 / 08/31/2014 - 09/02/2014 | $8.10 |
| System | 2014-09-04 | 00:01 | 82 | $29,536.14 @ 5.000 / 09/02/2014 - 09/04/2014 | $8.09 |
| System | 2014-09-30 | 00:01 | 82 | $29,536.14 @ 5.000 / 09/04/2014 - 09/30/2014 | $105.20 |
| System | 2014-10-31 | 00:01 | 82 | $29,536.14 @ 5.000 / 09/30/2014 - 10/31/2014 | $125.43 |
| System | 2014-11-04 | 00:01 | 82 | $29,536.14 @ 5.000 / 10/31/2014 - 11/04/2014 | $16.18 |
| System | 2014-11-30 | 00:01 | 82 | $29,536.14 @ 5.010 / 11/04/2014 - 11/30/2014 | $105.41 |
| System | 2014-12-31 | 00:01 | 82 | $29,536.14 @ 5.010 / 11/30/2014 - 12/31/2014 | $125.68 |
| System | 2015-01-31 | 00:01 | 82 | $29,536.14 @ 5.010 / 12/31/2014 - 01/31/2015 | $125.67 |
| System | 2015-02-28 | 00:01 | 82 | $29,536.14 @ 5.010 / 01/31/2015 - 02/28/2015 | $113.52 |
| System | 2015-03-31 | 00:01 | 82 | $29,536.14 @ 5.010 / 02/28/2015 - 03/31/2015 | $125.68 |
| System | 2015-04-02 | 00:01 | 82 | $29,536.14 @ 5.010 / 03/31/2015 - 04/02/2015 | $8.11 |
| System | 2015-04-06 | 00:01 | 82 | $29,536.14 @ 5.020 / 04/02/2015 - 04/06/2015 | $16.25 |
| System | 2015-04-09 | 00:01 | 82 | $29,536.14 @ 5.020 / 04/06/2015 - 04/09/2015 | $12.19 |

EXHIBIT

| | | | | | |
|---|---|---|---|---|---|
| System | 2015-04-30 | 00:01 | 82 | $29,536.14 @ 5.020 / 04/09/2015 - 04/30/2015 | $85.31 |
| System | 2015-05-31 | 00:01 | 82 | $29,536.14 @ 5.020 / 04/30/2015 - 05/31/2015 | $125.93 |
| System | 2015-06-30 | 00:01 | 82 | $29,536.14 @ 5.020 / 05/31/2015 - 06/30/2015 | $121.87 |
| System | 2015-07-01 | 00:01 | 82 | $29,536.14 @ 5.020 / 06/30/2015 - 07/01/2015 | $4.06 |
| System | 2015-07-31 | 00:01 | 82 | $29,536.14 @ 5.030 / 07/01/2015 - 07/31/2015 | $122.11 |
| System | 2015-08-31 | 00:01 | 82 | $29,536.14 @ 5.030 / 07/31/2015 - 08/31/2015 | $126.18 |
| System | 2015-09-30 | 00:01 | 82 | $29,536.14 @ 5.030 / 08/31/2015 - 09/30/2015 | $122.11 |
| System | 2015-10-01 | 00:01 | 82 | $29,536.14 @ 5.030 / 09/30/2015 - 10/01/2015 | $4.07 |
| System | 2015-11-04 | 00:01 | 82 | $29,536.14 @ 5.040 / 10/01/2015 - 11/04/2015 | $138.67 |
| System | 2015-12-31 | 00:01 | 82 | $29,536.14 @ 5.040 / 11/04/2015 - 12/31/2015 | $232.47 |
| System | 2016-01-01 | 00:01 | 82 | $29,536.14 @ 5.040 / 12/31/2015 - 01/01/2016 | $4.07 |
| System | 2016-01-31 | 00:01 | 82 | $29,536.14 @ 5.060 / 01/01/2016 - 01/31/2016 | $122.50 |
| System | 2016-02-29 | 00:01 | 82 | $29,536.14 @ 5.060 / 01/31/2016 - 02/29/2016 | $118.42 |
| System | 2016-03-31 | 00:01 | 82 | $29,536.14 @ 5.060 / 02/29/2016 - 03/31/2016 | $126.59 |
| System | 2016-04-01 | 00:01 | 82 | $29,536.14 @ 5.060 / 03/31/2016 - 04/01/2016 | $4.08 |
| System | 2016-04-30 | 00:01 | 82 | $29,536.14 @ 5.280 / 04/01/2016 - 04/30/2016 | $123.57 |
| System | 2016-05-31 | 00:01 | 82 | $29,536.14 @ 5.280 / 04/30/2016 - 05/31/2016 | $132.09 |
| System | 2016-06-21 | 00:00 | 12 | Interest Office Payment | $100.00 |
| System | 2016-06-21 | 00:00 | 40 | Forward Fee/Gross | $31.00 |
| System | 2016-06-21 | 00:01 | 82 | $29,536.14 @ 5.280 / 05/31/2016 - 06/21/2016 | $89.48 |
| System | 2016-06-30 | 00:01 | 82 | $29,536.14 @ 5.280 / 06/21/2016 - 06/30/2016 | $38.35 |
| System | 2016-07-01 | 00:01 | 82 | $29,536.14 @ 5.280 / 06/30/2016 - 07/01/2016 | $4.26 |
| System | 2016-07-12 | 00:00 | 12 | Interest Office Payment | $100.00 |
| System | 2016-07-12 | 00:00 | 40 | Forward Fee/Gross | $31.00 |
| System | 2016-07-12 | 00:01 | 82 | $29,536.14 @ 5.320 / 07/01/2016 - 07/12/2016 | $47.23 |
| System | 2016-07-22 | 00:00 | 12 | Interest Office Payment | $100.00 |
| System | 2016-07-22 | 00:00 | 40 | Forward Fee/Gross | $31.00 |
| System | 2016-07-22 | 00:01 | 82 | $29,536.14 @ 5.320 / 07/12/2016 - 07/22/2016 | $42.93 |
| System | 2016-08-01 | 00:01 | 82 | $29,536.14 @ 5.320 / 07/22/2016 - 08/01/2016 | $42.93 |
| System | 2016-08-11 | 00:00 | 12 | Interest Office Payment | $100.00 |
| System | 2016-08-11 | 00:00 | 40 | Forward Fee/Gross | $31.00 |
| System | 2016-08-11 | 00:01 | 82 | $29,536.14 @ 5.320 / 08/01/2016 - 08/11/2016 | $42.93 |
| System | 2016-08-23 | 00:00 | 12 | Interest Office Payment | $100.00 |
| System | 2016-08-23 | 00:00 | 40 | Forward Fee/Gross | $31.00 |
| System | 2016-08-23 | 00:01 | 82 | $29,536.14 @ 5.320 / 08/11/2016 - 08/23/2016 | $51.52 |
| System | 2016-08-31 | 00:01 | 82 | $29,536.14 @ 5.320 / 08/23/2016 - 08/31/2016 | $34.35 |
| System | 2016-09-13 | 00:00 | 12 | Interest Office Payment | $100.00 |
| System | 2016-09-13 | 00:00 | 40 | Forward Fee/Gross | $31.00 |
| System | 2016-09-13 | 00:01 | 82 | $29,536.14 @ 5.320 / 08/31/2016 - 09/13/2016 | $55.81 |
| System | 2016-09-21 | 00:00 | 12 | Interest Office Payment | $100.00 |
| System | 2016-09-21 | 00:00 | 40 | Forward Fee/Gross | $31.00 |
| System | 2016-09-21 | 00:01 | 82 | $29,536.14 @ 5.320 / 09/13/2016 - 09/21/2016 | $34.35 |
| System | 2016-09-30 | 00:01 | 82 | $29,536.14 @ 5.320 / 09/21/2016 - 09/30/2016 | $38.64 |
| System | 2016-10-01 | 00:01 | 82 | $29,536.14 @ 5.320 / 09/30/2016 - 10/01/2016 | $4.29 |
| System | 2016-10-05 | 00:00 | 44 | Interest Adjustment | $-24.31 |
| System | 2016-10-05 | 00:01 | 82 | $29,536.14 @ 5.350 / 10/01/2016 - 10/05/2016 | $17.27 |
| System | 2016-10-21 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2016-10-21 | 00:00 | 40 | Forward Fee/Gross | $62.00 |

| | | | | | |
|---|---|---|---|---|---|
| System | 2016-10-21 | 00:01 | 82 | $29,536.14 @ 5.350 / 10/05/2016 - 10/21/2016 | $69.08 |
| System | 2016-10-31 | 00:01 | 82 | $29,536.14 @ 5.350 / 10/21/2016 - 10/31/2016 | $43.17 |
| System | 2016-11-23 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2016-11-23 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2016-11-23 | 00:01 | 82 | $29,536.14 @ 5.350 / 10/31/2016 - 11/23/2016 | $99.30 |
| System | 2016-11-30 | 00:01 | 82 | $29,536.14 @ 5.350 / 11/23/2016 - 11/30/2016 | $30.22 |
| System | 2016-12-21 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2016-12-21 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2016-12-21 | 00:01 | 82 | $29,536.14 @ 5.350 / 11/30/2016 - 12/21/2016 | $90.67 |
| System | 2016-12-31 | 00:01 | 82 | $29,536.14 @ 5.350 / 12/21/2016 - 12/31/2016 | $43.17 |
| System | 2017-01-01 | 00:01 | 82 | $29,536.14 @ 5.350 / 12/31/2016 - 01/01/2017 | $4.33 |
| System | 2017-01-24 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-01-24 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-01-24 | 00:01 | 82 | $29,536.14 @ 5.410 / 01/01/2017 - 01/24/2017 | $100.69 |
| System | 2017-01-31 | 00:01 | 82 | $29,536.14 @ 5.410 / 01/24/2017 - 01/31/2017 | $30.64 |
| System | 2017-02-22 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-02-22 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-02-22 | 00:01 | 82 | $29,536.14 @ 5.410 / 01/31/2017 - 02/22/2017 | $96.31 |
| System | 2017-02-28 | 00:01 | 82 | $29,536.14 @ 5.410 / 02/22/2017 - 02/28/2017 | $26.27 |
| System | 2017-03-21 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-03-21 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-03-21 | 00:01 | 82 | $29,536.14 @ 5.410 / 02/28/2017 - 03/21/2017 | $91.93 |
| System | 2017-03-31 | 00:01 | 82 | $29,536.14 @ 5.410 / 03/21/2017 - 03/31/2017 | $43.78 |
| System | 2017-04-01 | 00:01 | 82 | $29,536.14 @ 5.410 / 03/31/2017 - 04/01/2017 | $4.38 |
| System | 2017-04-21 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-04-21 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-04-21 | 00:01 | 82 | $29,536.14 @ 5.630 / 04/01/2017 - 04/21/2017 | $91.12 |
| System | 2017-04-30 | 00:01 | 82 | $29,536.14 @ 5.630 / 04/21/2017 - 04/30/2017 | $41.00 |
| System | 2017-05-23 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-05-23 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-05-23 | 00:01 | 82 | $29,536.14 @ 5.630 / 04/30/2017 - 05/23/2017 | $104.78 |
| System | 2017-05-31 | 00:01 | 82 | $29,536.14 @ 5.630 / 05/23/2017 - 05/31/2017 | $36.45 |
| System | 2017-06-21 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-06-21 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-06-21 | 00:01 | 82 | $29,536.14 @ 5.630 / 05/31/2017 - 06/21/2017 | $95.67 |
| System | 2017-06-30 | 00:01 | 82 | $29,536.14 @ 5.630 / 06/21/2017 - 06/30/2017 | $41.00 |
| System | 2017-07-01 | 00:01 | 82 | $29,536.14 @ 5.630 / 06/30/2017 - 07/01/2017 | $4.56 |
| System | 2017-07-21 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-07-21 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-07-21 | 00:01 | 82 | $29,536.14 @ 5.860 / 07/01/2017 - 07/21/2017 | $94.84 |
| System | 2017-07-31 | 00:01 | 82 | $29,536.14 @ 5.860 / 07/21/2017 - 07/31/2017 | $47.42 |
| System | 2017-08-22 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-08-22 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-08-22 | 00:01 | 82 | $29,536.14 @ 5.860 / 07/31/2017 - 08/22/2017 | $104.32 |
| System | 2017-08-31 | 00:01 | 82 | $29,536.14 @ 5.860 / 08/22/2017 - 08/31/2017 | $42.68 |
| System | 2017-09-21 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-09-21 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-09-21 | 00:01 | 82 | $29,536.14 @ 5.860 / 08/31/2017 - 09/21/2017 | $99.58 |

| | | | | | |
|---|---|---|---|---|---|
| System | 2017-09-30 | 00:01 | 82 | $29,536.14 @ 5.860 / 09/21/2017 - 09/30/2017 | $42.68 |
| System | 2017-10-01 | 00:01 | 82 | $29,536.14 @ 5.860 / 09/30/2017 - 10/01/2017 | $4.74 |
| System | 2017-10-23 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-10-23 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-10-23 | 00:01 | 82 | $29,536.14 @ 6.080 / 10/01/2017 - 10/23/2017 | $108.24 |
| System | 2017-10-31 | 00:01 | 82 | $29,536.14 @ 6.080 / 10/23/2017 - 10/31/2017 | $39.36 |
| System | 2017-11-21 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-11-21 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-11-21 | 00:01 | 82 | $29,536.14 @ 6.080 / 10/31/2017 - 11/21/2017 | $103.32 |
| System | 2017-11-30 | 00:01 | 82 | $29,536.14 @ 6.080 / 11/21/2017 - 11/30/2017 | $44.28 |
| System | 2017-12-21 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-12-21 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-12-21 | 00:01 | 82 | $29,536.14 @ 6.080 / 11/30/2017 - 12/21/2017 | $103.32 |
| System | 2017-12-31 | 00:01 | 82 | $29,536.14 @ 6.080 / 12/21/2017 - 12/31/2017 | $49.20 |
| System | 2018-01-01 | 00:01 | 82 | $29,536.14 @ 6.080 / 12/31/2017 - 01/01/2018 | $4.92 |
| System | 2018-01-24 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2018-01-24 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2018-01-24 | 00:01 | 82 | $29,536.14 @ 6.130 / 01/01/2018 - 01/24/2018 | $114.09 |
| System | 2018-01-31 | 00:01 | 82 | $29,536.14 @ 6.130 / 01/24/2018 - 01/31/2018 | $34.72 |
| System | 2018-02-22 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2018-02-22 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2018-02-22 | 00:01 | 82 | $29,536.14 @ 6.130 / 01/31/2018 - 02/22/2018 | $109.13 |
| System | 2018-02-28 | 00:01 | 82 | $29,536.14 @ 6.130 / 02/22/2018 - 02/28/2018 | $29.76 |
| System | 2018-03-22 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2018-03-22 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2018-03-22 | 00:01 | 82 | $29,536.14 @ 6.130 / 02/28/2018 - 03/22/2018 | $109.13 |
| System | 2018-03-31 | 00:01 | 82 | $29,536.14 @ 6.130 / 03/22/2018 - 03/31/2018 | $44.64 |
| System | 2018-04-01 | 00:01 | 82 | $29,536.14 @ 6.130 / 03/31/2018 - 04/01/2018 | $4.96 |
| System | 2018-04-06 | 00:01 | 82 | $29,536.14 @ 6.450 / 04/01/2018 - 04/06/2018 | $26.10 |
| System | 2018-04-30 | 00:01 | 82 | $29,536.14 @ 6.450 / 04/06/2018 - 04/30/2018 | $125.27 |
| System | 2018-05-31 | 00:01 | 82 | $29,536.14 @ 6.450 / 04/30/2018 - 05/31/2018 | $161.80 |
| System | 2018-06-30 | 00:01 | 82 | $29,536.14 @ 6.450 / 05/31/2018 - 06/30/2018 | $156.58 |
| System | 2018-07-01 | 00:01 | 82 | $29,536.14 @ 6.450 / 06/30/2018 - 07/01/2018 | $5.22 |
| System | 2018-07-05 | 00:01 | 82 | $29,536.14 @ 6.780 / 07/01/2018 - 07/05/2018 | $21.95 |
| System | 2018-07-31 | 00:01 | 82 | $29,536.14 @ 6.780 / 07/05/2018 - 07/31/2018 | $142.65 |
| System | 2018-08-31 | 00:01 | 82 | $29,536.14 @ 6.780 / 07/31/2018 - 08/31/2018 | $170.08 |
| System | 2018-09-30 | 00:01 | 82 | $29,536.14 @ 6.780 / 08/31/2018 - 09/30/2018 | $164.59 |
| System | 2018-10-01 | 00:01 | 82 | $29,536.14 @ 6.780 / 09/30/2018 - 10/01/2018 | $5.49 |
| System | 2018-10-31 | 00:01 | 82 | $29,536.14 @ 6.950 / 10/01/2018 - 10/31/2018 | $168.72 |
| System | 2018-11-30 | 00:01 | 82 | $29,536.14 @ 6.950 / 10/31/2018 - 11/30/2018 | $168.72 |
| System | 2018-12-31 | 00:01 | 82 | $29,536.14 @ 6.950 / 11/30/2018 - 12/31/2018 | $174.34 |
| System | 2019-01-01 | 00:01 | 82 | $29,536.14 @ 6.950 / 12/31/2018 - 01/01/2019 | $5.62 |
| System | 2019-01-07 | 00:01 | 82 | $29,536.14 @ 7.150 / 01/01/2019 - 01/07/2019 | $34.72 |
| System | 2019-01-09 | 00:01 | 82 | $29,536.14 @ 7.150 / 01/07/2019 - 01/09/2019 | $11.57 |

BORROWER SSN: ***-**-0578 NAME: ALLISON L MERRILL
1ST DISB DATE: 07/15/05    OWNER: NCT                    LOAN PGM: ALPLN
LOAN SEQ: 001            GUARANTOR: TERI

| DEFER/FORB TYP | BEGIN DATE | END DATE | GRACE END DATE | CAP IND | DAYS USED | DAYS LEFT | TOTL MOS USED | CERT DATE |
|---|---|---|---|---|---|---|---|---|
| _ F - ADMINISTRV | 04 01 12 | 08 31 12 | | Y | 153 | UNL | 5.0 | 07 23 12 |
| _ F - GEN/TEMP | 12 01 11 | 02 29 12 | | Y | 91 | 92 | 9.0 | 02 01 12 |
| _ F - GEN/TEMP | 08 01 11 | 10 31 11 | | Y | 92 | 92 | 9.0 | 09 14 11 |
| _ F - GEN/TEMP | 04 01 11 | 06 30 11 | | Y | 91 | 92 | 9.0 | 06 08 11 |
| _ | — — — — — — | | | — | | | | |
| _ | — — — — — — | | | — | | | | |
| _ | — — — — — — | | | — | | | | |

F1=HELP  F3=EXIT  F5=RFR  F6=ELG  F7=BKWD  F8=FWD  F9=PRT  F10=HIST  F12=CAN

EXHIBIT
4

EXHIBIT 10.16

## POOL SUPPLEMENT
### CHARTER ONE BANK, N.A.

This Pool Supplement (the "Supplement") is entered into pursuant to and forms a part of each of the Note Purchase Agreements (the "Agreements") set forth on Schedule 1 attached hereto, each as amended or supplemented from the date of execution of the Agreement through the date of this Supplement, by and between The First Marblehead Corporation ("FMC") and Charter One Bank, N.A. (the "Program Lender"). This Supplement is dated as of October 12, 2005. Capitalized terms used in this Supplement without definitions have the meanings set forth in the Agreements.

Article 1: Purchase and Sale.

In consideration of the Minimum Purchase Price, the Program Lender hereby transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the "Depositor"), upon the terms and conditions set forth in the Agreements (which are incorporated herein by reference with the same force and effect as if set forth in full herein), each student loan set forth on attached Schedule 2 (the "Transferred Loans") along with all of the Program Lender's rights under the Guaranty Agreements relating to the Transferred Loans. The Depositor in turn will sell the Transferred Loans to The National Collegiate Student Loan Trust 2005-3 (the "Trust"). The Program Lender hereby transfers and delivers to the Depositor each Note evidencing such Transferred Loan and all Origination Records relating thereto, in accordance with the terms of the Agreements. The Depositor hereby purchases said Notes on said terms and conditions.

Article 2: Price.

The amount paid pursuant to this Supplement is the Minimum Purchase Price, as that term is defined in Section 2.04 of the Agreement.

Article 3: Representations and Warranties.

3.01.    By Program Lender.

The Program Lender repeats the representations and warranties contained in Section 5.02 of the Agreements for the benefit of each of the Depositor and the Trust and confirms the same are true and correct as of the date hereof with respect to the Agreements and to this Supplement.

3.02.    By Depositor.

The Depositor hereby represents and warrants to the Program Lender that at the date of execution and delivery of this Supplement by the Depositor:

(a)        The Depositor is duly organized and validly existing as a limited liability company under the laws of the State of Delaware with the due power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted, and had at all relevant times, and has, the power, authority and legal right to acquire and own the Transferred Loans.

EXHIBIT

5

(b)     The Depositor is duly qualified to do business and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c)     The Depositor has the power and authority to execute and deliver this Supplement and to carry out its respective terms; the Depositor has the power and authority to purchase the Transferred Loans and rights relating thereto as provided herein from the Program Lender, and the Depositor has duly authorized such purchase from the Program Lender by all necessary action; and the execution, delivery and performance of this Supplement has been duly authorized by the Depositor by all necessary action on the part of the Depositor.

(d)     This Supplement, together with the Agreements of which this Supplement forms a part, constitutes a legal, valid and binding obligation of the Depositor, enforceable in accordance with its terms.

(e)     The consummation of the transactions contemplated by the Agreements and this Supplement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the governing instruments of the Depositor or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; or result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; or violate any law or any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(f)     There are no proceedings or investigations pending, or threatened, before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties: (i) asserting the invalidity of the Agreements or this Supplement, (ii) seeking to prevent the consummation of any of the transactions contemplated by the Agreements or this Supplement, or (iii) seeking any determination or ruling that is likely to materially or adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of the Agreements or this Supplement.

<u>Article 4: Cross Receipt.</u>

The Program Lender hereby acknowledges receipt of the Minimum Purchase Price. The Depositor hereby acknowledges receipt of the Transferred Loans included in the Pool.

<u>Article 5: Assignment of Origination, Guaranty and Servicing Rights.</u>

The Program Lender hereby assigns and sets over to the Depositor any claims it may now or hereafter have under the Guaranty Agreements, the Origination Agreements and the Servicing Agreements to the extent the same relate to the Transferred Loans described in <u>Schedule 2</u>, other than any right to obtain servicing after the date hereof. It is the intent of this provision to vest in the Depositor any claim of the Program Lender relating to defects in origination, guaranty or servicing of the loans purchased hereunder in order to permit the Depositor to assert such claims directly and obviate any need to make the same claims against the Program Lender under this Supplement.

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION


By:  /s/ John A. Hupalo
      Name: John A. Hupalo
      Title: Executive Vice President


CHARTER ONE BANK, N.A.


By:  /s/  Michael McFarlane
      Name: Michael McFarlane
      Title: Senior Vice President


THE NATIONAL COLLEGIATE FUNDING LLC

By:     GATE Holdings, Inc., Member


     By:  /s/ Donald R. Peck
         Name: Donald R. Peck
         Title: Treasurer and Secretary

**SCHEDULE 1**

Note Purchase Agreements

- Note Purchase Agreement dated as of October 31, 2003 by and between FMC and the Program Lender for AES.

- Note Purchase Agreement dated as of May 15, 2002 by and between FMC and the Program Lender for AMS.

- Note Purchase Agreement dated as of July 15, 2003 by and between FMC and the Program Lender for Brazos.

- Note Purchase Agreement dated as of May 15, 2002 by and between FMC and the Program Lender for CFS.

- Note Purchase Agreement dated as of June 30, 2003 by and between FMC and the Program Lender for Citibank.

- Note Purchase Agreement dated as of July 1, 2002 by and between FMC and the Program Lender for CLC.

- Note Purchase Agreement dated as of December 4, 2002 by and between FMC and the Program Lender for Comerica.

- Note Purchase Agreement dated as of May 15, 2002 by and between FMC and the Program Lender for EAS.

- Note Purchase Agreement dated as of May 15, 2003 by and between FMC and the Program Lender for ESF.

- Note Purchase Agreement dated as of September 20, 2003 by and between FMC and the Program Lender for M & I Bank.

- Note Purchase Agreement dated as of November 17, 2003 by and between FMC and the Program Lender for National Education.

- Note Purchase Agreement dated as of May 15, 2003 by and between FMC and the Program Lender for Navy Federal.

- Note Purchase Agreement dated as of May 15, 2002 by and between FMC and the Program Lender for Nextstudent.

- Note Purchase Agreement dated as of September 15, 2003 by and between FMC and the Program Lender for North Texas Higher Education.

- Note Purchase Agreement dated as of March 17, 2003 by and between FMC and the Program Lender for PNC.

- Note Purchase Agreement dated as of May 1, 2003 by and between FMC and the Program Lender for SAF.

- Note Purchase Agreement dated as of September 20, 2002 by and between FMC and the Program Lender for Southwest.

- Note Purchase Agreement dated as of May 15, 2003 by and between FMC and the Program Lender for Washington Mutual (WAMU).

- Note Purchase Agreement dated as of December 29, 2003 by and between FMC and the Program Lender for AAA Southern New England Bank.

- Note Purchase Agreement dated as of December 1, 2003 by and between FMC and the Program Lender for the Custom Educredit Loan Program.

- Note Purchase Agreement dated as of March 25 2004 by and between FMC and the Program Lender for the START Education Loan Program.

- Note Purchase Agreement dated as of May 10, 2004 by and between FMC and the Program Lender for the Edfinancial Loan Program.

- Note Purchase Agreement dated as of March 26, 2004 by and between FMC and the Program Lender for the Nextstudent Private Consolidation Loan Program.

- Note Purchase Agreement dated as of February 15, 2005 by and between FMC and the Program Lender for the Charter One Referral Loan Program.

| LENDER NAME | MARKETER | LOAN DESC | BSSN | SEQ |
|---|---|---|---|---|
| CHARTER ONE BANK | CFS | DTC - Undergraduate | ██████0578 | 0001 |

| ACTUAL MARGIN | RECON PRIN | RECON INT |
|---|---|---|
| 0.0485 | $17,127.07 | $331.61 |

EXHIBIT
6
tabbies



## DEPOSIT AND SALE AGREEMENT
## THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3

This Deposit and Sale Agreement (the "Sale Agreement"), dated as of October 12, 2005, between The National Collegiate Funding LLC, in its capacity as seller (in such capacity, the "Seller"), and The National Collegiate Student Loan Trust 2005-3, as purchaser (the "Purchaser"), shall be effective upon execution by the parties hereto.

WHEREAS, the Seller is the owner of certain student loans; and

WHEREAS, the Seller desires to sell its interest in such student loans and the Purchaser desires to purchase such loans from the Seller.

NOW, THEREFORE, in connection with the mutual promises contained herein, the parties hereto agree as follows:

### ARTICLE I
### TERMS

This Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto (the "Transferred Student Loans").

### ARTICLE II
### DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the definitions set forth in Appendix A of the Indenture dated as of October 1, 2005 between U.S. Bank National Association (the "Indenture Trustee") and the Purchaser.

### ARTICLE III
### SALE AND PURCHASE

Section 3.01.  Sale of Loans.  The Seller hereby sells and the Purchaser hereby purchases the Transferred Student Loans.

Section 3.02.  Assignment of Rights.  The Seller hereby assigns to the Purchaser and the Purchaser hereby accepts all of the Seller's rights and interests under each of the Pool Supplements listed on Schedule A attached hereto and the related Student Loan Purchase Agreements listed on Schedule B attached hereto.

Section 3.03.  Settlement of the Payment.  The Purchaser shall pay the Seller the purchase price set forth in Schedule 1 of each of the Pool Supplements by wire transfer in immediately available funds to the account specified by the Seller.  In addition, the Purchaser will also issue the Class A-5 Notes to the Seller pursuant to the Indenture.



EXHIBIT

Section 3.04. <u>Assistance by Seller</u>. Following the execution of this Sale Agreement, the Seller shall provide any reasonable assistance requested by the Purchaser in determining that all required documentation on the Transferred Student Loans is present and correct.

## ARTICLE IV
## REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER

Section 4.01. <u>General</u>. The Seller represents and warrants to the Purchaser that as of the date of this Sale Agreement:

(a)     The Seller is duly organized and existing under the laws of the State of Delaware; and

(b)     The Seller has all requisite power and authority to enter into and to perform the terms of this Sale Agreement.

Section 4.02. <u>Loan Representations</u>. The Seller represents and warrants to the Purchaser that with respect to each Transferred Student Loan purchased by the Purchaser pursuant to this Sale Agreement, the Seller is making the same representations and warranties made by the respective program lender with respect to each Transferred Student Loan pursuant to the respective Student Loan Purchase Agreement listed on <u>Schedule B</u> attached hereto.

Section 4.03. <u>Covenants</u>. The Seller, in its capacity as purchaser of the Transferred Student Loans pursuant to the Pool Supplements, hereby covenants that it will enforce the covenants and agreements of each program lender in the respective Student Loan Purchase Agreement and related Pool Supplement. The Seller further covenants that it will not waive, amend, modify, supplement or terminate any Student Loan Purchase Agreement or Pool Supplement or any provision thereof without the consent of the Purchaser, which consent the Purchaser hereby agrees not to provide without the prior written consent of the Indenture Trustee and the Interested Noteholders in accordance with the Purchaser's covenant in Section 3.07(c) of the Indenture.

## ARTICLE V
## PURCHASE OF LOANS; REIMBURSEMENT

Each party to this Sale Agreement shall give notice to the other such parties and to the Servicers, First Marblehead Data Services, Inc. and Delaware Trust Company, National Association (the "<u>Owner Trustee</u>") promptly, in writing, upon the discovery of any breach of the Seller's representations and warranties made pursuant to this Sale Agreement which has a materially adverse effect on the interest of the Purchaser in any Transferred Student Loan. In the event of such a material breach, the Seller shall cure or repurchase the Transferred Student Loan in accordance with the remedies set forth in the respective Student Loan Purchase Agreement.

## ARTICLE VI
## LIABILITY OF SELLER; INDEMNITIES

The Seller shall be liable in accordance herewith only to the extent of the obligations specifically undertaken by the Seller under this Sale Agreement.

2

(a)     The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any taxes that may at any time be asserted against any such Person with respect to the transactions contemplated herein and in the other Basic Documents (except any such income taxes arising out of fees paid to the Owner Trustee), including any sales, gross receipts, general corporation, tangible and intangible personal property, privilege or license taxes and costs and expenses in defending against the same.

(b)     The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any and all costs, expenses, losses, claims, damages and liabilities arising out of, or imposed upon such Person through, the Seller's willful misfeasance, bad faith or gross negligence in the performance of its duties under this Sale Agreement, or by reason of reckless disregard of its obligations and duties under this Sale Agreement.

Indemnification under this Section shall survive the termination of this Sale Agreement and shall include reasonable fees and expenses of counsel and expenses of litigation. If the Seller shall have made any indemnity payments pursuant to this Section and the Person to or for the benefit of whom such payments are made thereafter shall collect any of such amounts from others, such Person shall promptly repay such amounts to the Seller, without interest.

**ARTICLE VII**
**MERGER OR CONSOLIDATION OF, OR ASSUMPTION**
**OF THE OBLIGATIONS OF, SELLER**

Any Person (a) into which the Seller may be merged or consolidated, (b) which may result from any merger or consolidation to which the Seller shall be a party or (c) which may succeed to the properties and assets of the Seller substantially as a whole, shall be the successor to the Seller without the execution or filing of any document or any further act by any of the parties to this Sale Agreement; provided, however, that the Seller hereby covenants that it will not consummate any of the foregoing transactions except upon satisfaction of the following: (i) the surviving Person, if other than the Seller, executes an agreement of assumption to perform every obligation of the Seller under this Sale Agreement, (ii) immediately after giving effect to such transaction, no representation or warranty made pursuant to this Sale Agreement shall have been breached, (iii) the surviving Person, if other than the Seller, shall have delivered an Officers' Certificate and an opinion of counsel each stating that such consolidation, merger or succession and such agreement of assumption comply with this Section and that all conditions precedent, if any, provided for in this Sale Agreement relating to such transaction have been complied with, and that the Rating Agency Condition shall have been satisfied with respect to such transaction, (iv) if the Seller is not the surviving entity, such transaction will not result in a material adverse federal or state tax consequence to the Purchaser or the Noteholders and holders of the grantor trust certificates (the "Certificates") (the "Certificateholders" and together with the Noteholders, the "Securityholders") and (v) if the Seller is not the surviving entity, the Seller shall have delivered an opinion of counsel either (A) stating that, in the opinion of such counsel, all financing statements and continuation statements and amendments thereto have been executed and filed that are necessary fully to preserve and protect the interest of the Purchaser in

3

the Transferred Student Loans and reciting the details of such filings, or (B) stating that, in the opinion of such counsel, no such action shall be necessary to preserve and protect such interests.

## ARTICLE VIII
## LIMITATION ON LIABILITY OF SELLER AND OTHERS

The Seller and any director or officer or employee or agent thereof may rely in good faith on the advice of counsel or on any document of any kind, prima facie properly executed and submitted by any Person respecting any matters arising hereunder (provided that such reliance shall not limit in any way the Seller's obligations under this Sale Agreement). The Seller shall not be under any obligation to appear in, prosecute or defend any legal action that shall not be incidental to its obligations under this Sale Agreement or the Student Loan Purchase Agreements, and that in its opinion may involve it in any expense or liability.

## ARTICLE IX
## SURVIVAL OF COVENANTS

All covenants, agreements, representations and warranties made herein shall survive the consummation of the purchase of the Transferred Student Loans; provided, however, that to the extent any of the same relate to a corresponding covenant, agreement, representation or warranty contained in a Student Loan Purchase Agreement, the same shall survive to the extent that such corresponding covenant, agreement, representation or warranty survives the applicable Student Loan Purchase Agreement. All covenants, agreements, representations and warranties made or furnished pursuant hereto by or for the benefit of the Seller shall bind and inure to the benefit of any successors or assigns of the Purchaser, including the Indenture Trustee and the Grantor Trustee. This Sale Agreement may be changed, modified or discharged, and any rights or obligations hereunder may be waived, only by a written instrument signed by a duly authorized officer of the party against whom enforcement of any such waiver, change, modification or discharge is sought. The waiver by the Indenture Trustee, at the direction of the Noteholders (pursuant to the Indenture), and the Grantor Trustee, at the direction of the Certificateholders (pursuant to the Grantor Trust Agreement), of any covenant, agreement, representation or warranty required to be made or furnished by the Seller or the waiver by the Indenture Trustee, at the direction of the Noteholders (pursuant to the Indenture), and the Grantor Trustee, at the direction of the Certificateholders (pursuant to the Grantor Trust Agreement), of any provision herein contained shall not be deemed to be a waiver of any breach of any other covenant, agreement, representation, warranty or provision herein contained, nor shall any waiver or any custom or practice which may evolve between the parties in the administration of the terms hereof, be construed to lessen the right of the Indenture Trustee, at the direction of the Noteholders (pursuant to the Indenture), and the Grantor Trustee, at the direction of the Certificateholders (pursuant to the Grantor Trust Agreement), to insist upon the performance by the Seller in strict accordance with said terms.

## ARTICLE X
## COMMUNICATION AND NOTICE REQUIREMENTS

All communications, notices and approvals provided for hereunder shall be in writing and mailed or delivered to the Seller or the Purchaser, as the case may be. Notice given in any such

communication, mailed to the Seller or the Purchaser by appropriately addressed registered mail, shall be deemed to have been given on the day following the date of such mailing and shall be addressed as follows:

If to the Purchaser, to:

> The National Collegiate Student Loan Trust 2005-3
> c/o Delaware Trust Company, National Association, as Owner Trustee
> 300 Delaware Avenue, 9th Floor
> Wilmington, Delaware 19801
> Attention: Mr. Sterling C. Correia

If to the Seller, to:

> The National Collegiate Funding LLC
> c/o First Marblehead Data Services, Inc.
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Ms. Rosalyn Bonaventure

> with a copy to:

> First Marblehead Corporation
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Mr. Richard P. Zermani

or to such other address as either party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, or hand delivered to the address of such party as provided above.

## ARTICLE XI
## AMENDMENT

This Sale Agreement may be amended by the parties hereto without the consent of the related Securityholders for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of the Sale Agreement or of modifying in any manner the rights of such Securityholders; provided that such action will not, in the opinion of counsel satisfactory to the Indenture Trustee and the Grantor Trustee, materially affect the interest of any such Securityholder.

In addition, this Sale Agreement may also be amended from time to time by the Seller and the Purchaser, with the consent of the Noteholders of the Notes evidencing a majority of the Outstanding Amount of the Notes and the consent of the Certificateholders of the Certificates evidencing a majority of the outstanding principal amount of the Certificates, for the purpose of

adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of the Noteholders or the Certificateholders, respectively; provided, however, that no such amendment shall (a) increase or reduce in any manner the amount of, or accelerate or delay the time of, collections of payments with respect to Transferred Student Loans or distributions that shall be required to be made for the benefit of the Securityholders, or (b) reduce the aforesaid percentage of the Outstanding Amount of the Notes or the Certificates, the Noteholders or the Certificateholders of which are required to consent to any such amendment, without the consent of all outstanding Noteholders or Certificateholders, respectively.

Promptly after the execution of any such amendment or consent (or, in the case of the Rating Agencies, five Business Days prior thereto), the Purchaser shall furnish written notification of the substance of such amendment or consent to the Indenture Trustee, the Grantor Trustee and each of the Rating Agencies.

It shall not be necessary for the consent of Securityholders pursuant to this Section to approve the particular form of any proposed amendment or consent, but it shall be sufficient if such consent shall approve the substance thereof.

Prior to the execution of any amendment to this Sale Agreement, the Owner Trustee shall be entitled to receive and rely upon an opinion of counsel stating that execution of such amendment is authorized or permitted by this Sale Agreement. The Owner Trustee may, but shall not be obligated to, enter into any such amendment which affects the Owner Trustee's own rights, duties or immunities under this Sale Agreement or otherwise.

## ARTICLE XII
## ASSIGNMENT

The Seller hereby assigns its entire right, title and interest as purchaser under this Sale Agreement and the Student Loan Purchase Agreement thereunder to the Purchaser as of the date hereof and acknowledges that the Purchaser will assign the same, together with the right, title and interest of the Purchaser hereunder, to the Indenture Trustee under the Indenture.

## ARTICLE XIII
## GOVERNING LAW

THIS SALE AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, INCLUDING SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, BUT OTHERWISE WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

## ARTICLE XIV
## LIMITATION OF LIABILITY OF OWNER TRUSTEE

Notwithstanding anything contained herein to the contrary, this instrument has been executed by Delaware Trust Company, National Association, not in its individual capacity but

6

solely in its capacity as Owner Trustee of the Purchaser, and in no event shall Delaware Trust Company, National Association in its individual capacity or any beneficial owner of the Purchaser have any liability for the representations, warranties, covenants, agreements or other obligations of the Purchaser hereunder, as to all of which recourse shall be had solely to the assets of the Purchaser. For all purposes of this Sale Agreement, in the performance of any duties or obligations of the Purchaser hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the Trust Agreement.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

THE NATIONAL COLLEGIATE FUNDING LLC, as Seller

By: GATE Holdings, Inc., Member

By: _____

Name: Donald R. Peck
Title: Treasurer and Secretary

THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3, as Purchaser

By: Delaware Trust Company, National Association, not in its individual capacity but solely as Owner Trustee

By: _____
Name:
Title:

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

THE NATIONAL COLLEGIATE FUNDING LLC, as Seller

By: GATE Holdings, Inc., Member

By:_____

    Name:

    Title:

THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3, as Purchaser

By:    Delaware Trust Company, National Association, not in its individual capacity but solely as Owner Trustee

By:_____

    Name: STERLING C. CORREIA

    Title:    VICE PRESIDENT

# SCHEDULE A
## *Pool Supplements*

Each of the following Pool Supplements was entered into by and among The First Marblehead Corporation, The National Collegiate Funding LLC and:

- Bank of America, N.A., dated October 12, 2005, for loans that were originated under Bank of America's BAGEL Loan Program, CEDU Loan Program, Direct to Consumer Loan Program and ISLP Loan Program.

- Bank One, N.A., dated October 12, 2005, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program and M&T REFERRAL Loan Program.

- Charter One Bank, N.A., dated October 12, 2005, for loans that were originated under the following Charter One programs: AAA Southern New England Bank, AES EducationGAIN Loan Program, (AMS) TuitionPay Diploma Loan Program, Brazos Alternative Loan Program, CFS Direct to Consumer Loan Program, Citibank Flexible Education Loan Program, College Loan Corporation Loan Program, Comerica Alternative Loan Program, Custom Educredit Loan Program, Edfinancial Loan Program, Education Assistance Services Loan Program, ESF Alternative Loan Program, Extra Credit II Loan Program (North Texas Higher Education), M&I Alternative Loan Program, National Education Loan Program, Navy Federal Alternative Loan Program, NextStudent Alternative Loan Program, NextStudent Private Consolidation Loan Program, PNC Bank Resource Loan Program, SAF Alternative Loan Program, START Education Loan Program, Southwest Loan Program, WAMU Alternative Student Loan Program, Charter One Referral Loan Program and Axiom Alternative Loan Program.

- Chase Manhattan Bank USA, N.A., dated June 9 2005, for loans that were originated under Chase's Chase Extra Loan Program.

- Citizens Bank of Rhode Island, dated October 12, 2005, for loans that were originated under Citizens Bank of Rhode Island's Compass Bank Loan Program, DTC Loan Program, Navy Federal Referral Loan Program and Xanthus Loan Program.

- GMAC Bank, dated October 12, 2005, for loans that were originated under GMAC Bank's GMAC Alternative Loan Program.

- HSBC Bank USA, National Association, dated October 12, 2005, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated October 12, 2005, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.

- Manufacturers and Traders Trust Company, dated October 12, 2005, for loans that were originated under Manufacturers and Traders Trust Company's M&T Alternative Loan Program.

- PNC Bank, N.A., dated October 12, 2005, for loans that were originated under PNC Bank's PNC Bank Alternative Loan Program.

- Sovereign Bank, dated October 12, 2005, for loans that were originated under Sovereign Bank's Alternative Loan Program.

- SunTrust Bank, dated October 12, 2005, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

## SCHEDULE B
*Student Loan Purchase Agreements*

Each of the following Note Purchase Agreements, as amended or supplemented, was entered into by and between The First Marblehead Corporation and:

- Bank of America, N.A., dated April 30, 2001, for loans that were originated under Bank of America's BAGEL Loan Program, CEDU Loan Program and ISLP Loan Program.
- Bank of America, N.A., dated June 30, 2003, for loans that were originated under Bank of America's Direct to Consumer Loan Program.
- Bank One, N.A., dated May 1, 2002, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program and EDUCATION ONE Loan Program.
- Bank One, N.A., dated July 26, 2002, for loans that were originated under Bank One's M&T REFERRAL Loan Program
- Charter One Bank, N.A., dated as of December 29, 2003 for loans that were originated under Charter One's AAA Southern New England Bank Loan Program.
- Charter One Bank, N.A., dated October 31, 2003, for loans that were originated under Charter One's AES EducationGAIN Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's (AMS) TuitionPay Diploma Loan Program.
- Charter One Bank, N.A., dated July 15, 2003, for loans that were originated under Charter One's Brazos Alternative Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's CFS Direct to Consumer Loan Program.
- Charter One Bank, N.A., dated June 30, 2003, for loans that were originated under Charter One's Citibank Flexible Education Loan Program.
- Charter One Bank, N.A., dated July 1, 2002, for loans that were originated under Charter One's College Loan Corporation Loan Program.
- Charter One Bank, N.A., dated December 4, 2002, for loans that were originated under Charter One's Comerica Alternative Loan Program.
- Charter One Bank, N.A., dated December 1, 2003, for loans that were originated under Charter One's Custom Educredit Loan Program.
- Charter One Bank, N.A., dated May 10, 2004, for loans that were originated under Charter One's Edfinancial Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's Education Assistance Services Loan Program.
- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's ESF Alternative Loan Program.
- Charter One Bank, N.A., dated September 15, 2003, for loans that were originated under Charter One's Extra Credit II Loan Program (North Texas Higher Education).
- Charter One Bank, N.A., dated September 20, 2003, for loans that were originated under Charter One's M&I Alternative Loan Program.
- Charter One Bank, N.A., dated November 17, 2003, for loans that were originated under Charter One's National Education Loan Program.

- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's Navy Federal Alternative Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's NextStudent Alternative Loan Program.
- Charter One Bank, N.A., dated March 26, 2004, for loans that were originated under Charter One's NextStudent Private Consolidation Loan Program.
- Charter One Bank, N.A., dated March 17, 2003, for loans that were originated under Charter One's PNC Bank Resource Loan Program.
- Charter One Bank, N.A., dated May 1, 2003, for loans that were originated under Charter One's SAF Alternative Loan Program.
- Charter One Bank, N.A., dated September 20, 2002, for loans that were originated under Charter One's Southwest Loan Program.
- Charter One Bank, N.A., dated March 25, 2004, for loans that were originated under Charter One's START Education Loan Program.
- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's WAMU Alternative Student Loan Program.
- Charter One Bank, N.A., dated February 15, 2005, for loans that were originated under Charter One's Referral Loan Program and Axiom Alternative Loan Program.
- Chase Manhattan Bank USA, N.A., dated September 30, 2003, as amended on March 1, 2004, September 8, 2004 and February 25, 2005, for loans that were originated under Chase's Chase Extra Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Compass Bank Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's DTC Alternative Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Navy Federal Referral Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Xanthus Loan Program.
- GMAC Bank, dated May 30, 2003, as amended on March 1, 2005, for loans that were originated under GMAC Bank's GMAC Alternative Loan Program.
- HSBC Bank USA, National Association, dated April 17, 2002, as amended on June 2, 2003 and August 1, 2003, for loans that were originated under the HSBC Loan Program.
- The Huntington National Bank, dated May 20, 2003, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.
- Manufacturers and Traders Trust Company, dated April 29, 2004, for loans that were originated under Manufacturers and Traders Trust Company's Alternative Loan Program.
- National City Bank, dated November 13, 2002, for loans that were originated under National City Bank's National City Loan Program.
- PNC Bank, N.A., dated April 22, 2004, for loans that were originated under PNC Bank's Alternative Conforming Loan Program.
- Sovereign Bank, dated April 30, 2004, for loans that were originated under Sovereign Bank's Alternative Loan Program.
- SunTrust Bank, dated March 1, 2002, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

BORROWER SSN ***-**-0578    NAME ALLISON L MERRILL

```
        SCHED   INSTALL  REPAY  REPAY  1ST DUE 1ST DISB   LOAN
SEL STA TYPE    AMOUNT   LVLS   TERM    DATE    DATE      PGM      OWNER
 1  I   TG      121.56     4     210   08/03/13 07/15/05 ALPLN     NCT
 2  ***********************************************************************
 3  ***********************************************************************
 4  ***********************************************************************
 5  I   TG       98.82     4     221   09/03/12 07/15/05 ALPLN     NCT
 6  ***********************************************************************
 7  ***********************************************************************
 8  ***********************************************************************
 9  I   L       191.10     2     226   04/03/12 07/15/05 ALPLN     NCT
10  ***********************************************************************
11  ***********************************************************************
12  ***********************************************************************
```

SELECTION  __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

EXHIBIT

8

tabbies®

BORROWER SSN ***-**-0578    NAME ALLISON L MERRILL

| SEL | STA | SCHED TYPE | INSTALL AMOUNT | REPAY LVLS | REPAY TERM | 1ST DUE DATE | 1ST DISB DATE | LOAN PGM | OWNER |
|-----|-----|------------|----------------|------------|------------|--------------|---------------|----------|-------|
| 1 | I | L | 186.50 | 2 | 229 | 01/03/12 | 07/15/05 | ALPLN | NCT |
| 2 | I | L | 185.43 | 2 | 230 | 12/11/11 | 07/15/05 | ALPLN | NCT |
| 3 | ************************************************************ |
| 4 | ************************************************************ |
| 5 | ************************************************************ |
| 6 | I | L | 180.65 | 2 | 234 | 08/11/11 | 07/15/05 | ALPLN | NCT |
| 7 | I | L | 176.98 | 2 | 238 | 04/02/11 | 07/15/05 | ALPLN | NCT |
| 8 | I | L | 184.05 | 2 | 239 | 12/11/06 | 07/15/05 | ALPLN | NCT |
| 0 | ************************************************************ |
| 0 | ************************************************************ |
| 0 | ************************************************************ |
| 0 | ************************************************************ |

SELECTION  __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

*National Collegiate Trust*

Date: 11/3/14

RE:

| | |
|---|---|
| National Collegiate Master Student Loan Trust-I | National Collegiate Student Loan Trust-2003-1 |
| National Collegiate Student Loan Trust-2004-1 | National Collegiate Student Loan Trust-2004-2 |
| National Collegiate Student Loan Trust-2005-1 | National Collegiate Student Loan Trust-2005-2 |
| National Collegiate Student Loan Trust-2005-3 | National Collegiate Student Loan Trust-2006-1 |
| National Collegiate Student Loan Trust-2006-2 | National Collegiate Student Loan Trust-2006-3 |
| National Collegiate Student Loan Trust-2006-4 | National Collegiate Student Loan Trust-2007-1 |
| National Collegiate Student Loan Trust-2007-2 | National Collegiate Student Loan Trust-2007-3 |
| National Collegiate Student Loan Trust-2007-4 | |

To whom it may concern:

U.S. Bank, as Special Servicer for the above referenced Trust(s), confirms that Transworld Systems Inc. is its Subservicer, authorized to file Proofs of Claim (POC) on behalf of the above Trust(s) with respect of student loans owned by the Trust(s). Transworld Systems Inc. is also the dedicated record custodian with respect to all student loan accounts owned by the Trust(s) and is fully authorized to execute affidavits regarding account documents, verify responses to discovery and provide testimony on behalf of the Trust(s).

Any questions regarding the above referenced processes should be directed to Transworld Systems Inc. at 1-800-209-9161

Sincerely,

U.S. Bank National Association
As Special Servicer to the National Collegiate Student Loan Trust(s)

By: _____
    Brian C Tri
    Vice President
Title

Acknowledged,
By: GSS Data Services, Inc.
Not in its individual capacity and solely as
administrator for and on behalf of the Trust(s)

By: Kenneth L. Ruggiero.

President and CEO
Title

EXHIBIT
9
tabbies



# Delaware

*The First State*

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT COPIES OF ALL DOCUMENTS ON FILE OF "THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3" AS RECEIVED AND FILED IN THIS OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

CERTIFICATE OF STATUTORY TRUST REGISTRATION, FILED THE SECOND DAY OF SEPTEMBER, A.D. 2005, AT 3:32 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE AFORESAID STATUTORY TRUST.

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

4025333   8100H

050829214

AUTHENTICATION: 4216904

DATE: 10-11-05

**EXHIBIT**
10

3.     TSI has been contracted to perform the duties of the Subservicer for Plaintiff by U.S. Bank, National Association, the Special Servicer of Plaintiff. As the current Subservicer for the Plaintiff, TSI is the designated custodian of defaulted loan records, including the educational loan. Additionally, TSI maintains the dedicated system of record for defaulted loans on behalf of Plaintiff of all electronic transactions pertaining to the educational loan, including, but not limited to, payments, credits, interest accrual and any other transactions that could impact the loan. Attached hereto as Exhibit "A" is a true and correct copy of a notification from U.S. Bank National Association acknowledging TSI's capacity as Subservicer.

4.     I have access to and training on the system of record utilized by TSI on behalf of Plaintiff to enter and maintain loan records and documentation relating to the educational loan.

5.     American Education Services ("AES") was the prior servicer of the educational loan. AES began servicing the loan upon the first disbursement of the loan until it was charged-off.

6.     I have access to and training on the system of record utilized by AES to enter and maintain loan records and documentation relating to the educational loan.

7.     I am familiar with the process by which TSI and AES, on behalf of Plaintiff, each receives loan records from the prior servicer or loan originator, including loan origination documents and data recording the electronic transactions pertaining to the loans, including, but not limited to, payments, credits, interest accrual and any other transactions that could impact the loans. It is TSI's regularly-conducted business practice to incorporate these loan records into the system of record it maintains on Plaintiff's behalf.

8.     Educational loan records that are part of TSI's records are created, compiled, recorded, and kept as part of regularly conducted business activity at or near the time of the event

NATIONAL COLLEGIATE STUDENT LOAN )
TRUST 2005-3, A Delaware Statutory Trust )
Plaintiff )
)
)
v. )     Docket #: 1934821CK
)
ALLISON L MERRILL )
)
)
)
Defendant(s) )
)
)

## AFFIDAVIT AND VERIFICATION OF ACCOUNT

STATE OF GEORGIA )
)
COUNTY OF GWINNETT )

BEFORE ME, the undersigned authority, personally appeared Affiant ___Jennifer A. Audet___,

who being first duly sworn, deposes and states:

     1.    I am employed by Transworld Systems Inc. (hereinafter "TSI"), the Subservicer

for Plaintiff regarding account number xxxxx0578-001-PHEA, the educational loan that is the

subject matter of this action (the "educational loan"). I am over the age of 18 and am competent

and authorized to testify regarding this educational loan through my review of the business

records maintained by TSI as custodian of records. These records include electronic data

provided to TSI related to the educational loan, and the business records attached to this

Affidavit.

     2.    The statements made herein are based on my review of the loan records in the

system of record maintained by TSI on behalf of Plaintiff.


EXHIBIT

## CERTIFICATE OF TRUST
### OF
## THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3

This Certificate of Trust of The National Collegiate Student Loan Trust 2005-3 (the "Trust"), is being duly executed and filed on behalf of the Trust by the undersigned, as trustee, to form a statutory trust under the Delaware Statutory Trust Act (12 Del. C. § 3801 et seq.) (the "Act").

1.    Name. The name of the statutory trust formed hereby is The National Collegiate Student Loan Trust 2005-3.

2.    Delaware Trustee. The name and business address of the resident trustee of the Trust which has its principal place of business in the State of Delaware is Delaware Trust Company, National Association, 300 Delaware Avenue, 9th Floor, Wilmington, Delaware 19801, Attention: Corporate Trust Administration.

3.    The Trust reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Trust in the manner now or hereafter prescribed by law.

4.    Effective Date. This Certificate of Trust shall be effective upon filing.

5.    IN WITNESS WHEREOF, the undersigned has duly executed this Certificate of Trust in accordance with § 3811(a)(1) of the Act.

DELAWARE TRUST COMPANY, NATIONAL ASSOCIATION, as trustee

By: _____
Name:    STERLING C. CORREIA
Title:    VICE PRESIDENT

State of Delaware
Secretary of State
Division of Corporations
Delivered 03:32 PM 09/02/2005
FILED 03:32 PM 09/02/2005
SRV 050726243 - 4025333 FILE

and from information transmitted by a person with personal knowledge of said event and a business duty to report it, or from information transmitted by a person with personal knowledge of the accounts or events described within the business record. Such records are created, kept, maintained, and relied upon in the course of ordinary and regularly conducted business activity.

9.     This lawsuit concerns an unpaid loan owed by ALLISON L MERRILL (" Defendant") to Plaintiff. Specifically, Defendant entered into an educational loan agreement at Defendant's special instance and request. A loan was extended for Defendant to use pursuant to the terms of the loan agreement and funds were disbursed on 7/15/2005. Attached hereto and incorporated as Exhibit "B" is a true copy of the underlying Credit Agreement/Promissory Note and Note Disclosure Statement. In the event the Defendant faxed the executed Credit Agreement/Promissory Note, per its terms the Defendant agreed their facsimile/electronic signature is deemed to be an original.

10.     As stated herein, the Defendant obtained an educational loan with Lender and funds were disbursed on 7/15/2005. *See also, Exhibit "E", transaction 0101A.* The Defendant's educational loan was transferred, sold and assigned to National Collegiate Funding, LLC, on 10/12/2005 for valuable consideration, along with other educational loans ("Loan Pool"), in the course of the securitization process. See Exhibit "E", transaction 0395A. Defendant's educational loan was in good standing and not in default on 10/12/2005. Attached hereto and incorporated as Exhibit "C" is a true and correct copy of the Pool Supplement and a redacted excerpt of the Schedule of the Loan Pool described within the Pool Supplement showing that Defendant's loan was part of the Loan Pool.

11.     On 10/12/2005, National Collegiate Funding, LLC transferred, sold and assigned the Loan Pool, including Defendant's educational loan, along with other pools of loans, to

NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3 for valuable consideration, in
the course of the securitization process. See Exhibit "E", transaction 0390A. Defendant's
educational loan was in good standing and not in default on 10/12/2005. Attached hereto and
incorporated as Exhibit "D" is a true and correct copy of the Deposit and Sale Agreement with
Schedule A listing each pool, including the Loan Pool.

12. Plaintiff last received payment on 03/22/2018 in the amount of $200.00. After all
payments, credits and offsets have been applied, Defendant ALLISON L MERRILL owes the
principal sum of $29,536.14, together with accrued interest in the amount of $3,279.96, totaling
the sum of $32,816.10 as of 5/23/2019.

(a) Attached hereto and incorporated as Exhibit "E" is a true and correct copy
of the Loan Financial Activity maintained by AES on behalf of Plaintiff establishing the loan
balance from 7/15/2005 (the first Disbursement) to 6/2/2014 (the "Charge Off Date").

(b) Attached hereto and incorporated as Exhibit "F" is a true and correct copy
of the Deferment/Forbearance Summary maintained by AES on behalf of Plaintiff showing any
deferments or forbearances applied to the Defendant's educational loan once the Repayment
Period (as defined in Exhibit "B") began (see ¶ C.4 in Exhibit "B").

(c) Attached hereto and incorporated as Exhibit "G" is a true and correct copy
of the Repayment Schedule maintained by AES on behalf of Plaintiff demonstrating any
repayment schedules associated with the loan.

(d) Attached hereto and incorporated as Exhibit "H" is a true and correct
reproduction of the Loan Payment History Report maintained by TSI on behalf of Plaintiff,
which evidences the Defendant's educational loan balance from the Charge Off Date. As Exhibit
"H" shows, interest (as authorized by the Disclosure Statement in Exhibit "B") has accrued on

the Defendant's educational loan from 6/2/2014, and continues to accrue, at a variable rate based on the London Interbank Offered Rate ("LIBOR") adjusted periodically. *See Exhibit "H" and Exhibit "B" (the Disclosure Statement, which authorizes Plaintiff to charge interest).*

13. Based on custodial records, Defendant is not a minor or incompetent. A reasonable inquiry has been made to determine if Defendant is in the military service of the United States of America, and to the best of my knowledge, Defendant is not in such military service and therefore not entitled to the rights and privileges provided under the Soldiers and Sailors Civil Relief Act of 1940, as amended.

I declare under the penalty of perjury under the laws of the forum state that the foregoing is true and correct.

**FURTHER AFFIANT SAYETH NAUGHT.**

AFFIANT
Print Name: __Jennifer A. Audet__
Title: __Legal Account Specialist__

SWORN AND SUBSCRIBED to before me this ___31___ day of __May__, 2018

NOTARY PUBLIC
My Commission Expires on:



**Exhibit A**

*National Collegiate Trust*

Date: 11/3/14

RE:

National Collegiate Master Student Loan Trust-I
National Collegiate Student Loan Trust-2004-1
National Collegiate Student Loan Trust-2005-1
National Collegiate Student Loan Trust-2005-3
National Collegiate Student Loan Trust-2006-2
National Collegiate Student Loan Trust-2006-4
National Collegiate Student Loan Trust-2007-2
National Collegiate Student Loan Trust-2007-4

National Collegiate Student Loan Trust-2003-1
National Collegiate Student Loan Trust-2004-2
National Collegiate Student Loan Trust-2005-2
National Collegiate Student Loan Trust-2006-1
National Collegiate Student Loan Trust-2006-3
National Collegiate Student Loan Trust-2007-1
National Collegiate Student Loan Trust-2007-3

To whom it may concern:

U.S. Bank, as Special Servicer for the above referenced Trust(s), confirms that Transworld Systems Inc. is its Subservicer, authorized to file Proofs of Claim (POC) on behalf of the above Trust(s) with respect of student loans owned by the Trust(s).  Transworld Systems Inc. is also the dedicated record custodian with respect to all student loan accounts owned by the Trust(s) and is fully authorized to execute affidavits regarding account documents, verify responses to discovery and provide testimony on behalf of the Trust(s).

Any questions regarding the above referenced processes should be directed to Transworld Systems Inc. at 1-800-209-9161

Sincerely,

U.S. Bank National Association
As Special Servicer to the National Collegiate Student Loan Trust(s)

By: _____
      Brian C Tri
      Vice President
Title

Acknowledged:
By: GSS Data Services, Inc.
Not in its individual capacity and solely as
administrator for and on behalf of the Trust(s)

By: Kenneth L. Ruggiero

President and CEO
Title

**Exhibit B**

## *Creditworthy Student* Credit Agreement - Signature Page

**NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION**

### LOAN PROGRAM INFORMATION

CFS Private Education Undergraduate Loan

Academic Period: 08/2005-05/2006

Lender: Charter One Bank, N.A.

School: NORTHWESTERN MICHIGAN COLLEGE

Loan Amount: $15500.00

Repayment Option: Deferred Principal and Interest

Deferral Period Margin: 4.85

Repayment Period Margin: 4.85

Loan Origination Fee Percentage: 9.50

### STUDENT BORROWER INFORMATION (Must be at least 18 years of age).

Borrower Name: Allison L Merrill
Home Address: 12305 S Lincoln Hollow Ct    Cedar, MI 49621
Social Security #: ▒▒▒-0578
Date of Birth: ▒▒▒1983
Home Telephone: ▒▒▒9680
Current Employer: TRAVERSE CITY STATE BANK
Current Position: Student Operations    Years There:
Years at Previous Employment: 2 Years
Employer Telephone: ▒▒▒

Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.

Student Citizenship (check one box):  ☒ U.S. Citizen                   ☐ Eligible Non-Citizen (Attach front & back copy of INS or student visa card)
Personal Reference Name: Lamar King                                    Reference Home Tel #: ▒▒▒        Work Tel #:
Reference Street Address
Reference City/State/Zip:

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Credit Agreement AB.04-05.CRWO.10CFS.0104. I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I consent: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:**
(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

PLEASE SIGN BELOW – RETURN This Page With Proof of Income and Other Information (if applicable) - FAX TO: 800-704-9406

Signature of Borrower _Allison Merrill_          Date 6-28-05

2005 JUN 29  P 3:01

In this Credit Agreement, the words "I", "me", "my", and "mine" mean the person who signed this Credit Agreement as Borrower. The words "you", "your", "yours", and "Lender" mean Charter One Bank, N.A., its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement.

**A. PROMISE TO PAY:** I promise to pay to you the principal sum of the Loan Amount shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, plus any Loan Origination Fee added to my loan (see Paragraph F) ("Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.7).

**B. IMPORTANT – READ THIS CAREFULLY:**
1. When you receive my signed Credit Agreement, you are not agreeing to lend me money until you confirm my income and the Student's enrollment in the School and review the other information requested on the Instructions page and returned with this Credit Agreement. When you have confirmed and reviewed this information, you will schedule a date or dates on which you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. If the income and/or the enrollment information does not match the information I provided to you when I requested this loan, or if the other information requested on the Instructions page and returned with this Credit Agreement is unsatisfactory, you have the right to not make a loan or to lend me a loan amount less than the loan amount I requested. I agree to accept an amount less than the loan amount I requested and to repay that portion of the loan amount I requested that you actually lend to me. You have the right to disburse my loan through an agent. At your option, you may also make the check co-payable to me and the Cosigner or to me and the School.
2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan which you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburses the loan proceeds; or (b) using or allowing the loan proceeds to be used on my behalf without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement. If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check which disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**
1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.
2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.
3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).

    (a) *Undergraduate Alternative Loan Program:*-If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program, and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date.

    (b) *Graduate Professional Education Loan Program:* 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will

end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.
4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.4) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**
1. Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in a calendar year.
2. Variable Rate – The "Variable Rate" is equal to the Current Index plus or minus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of Ohio. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar quarter) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal*. The index for each calendar quarter (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth percent (0.01%). If *The Wall Street Journal* is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.

3. Capitalization — If payment of principal and interest is deferred (Paragraph C.2) and I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period. You will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and at the end of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, if I am in default and the loan has been sold to TERI (see Section L.11), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will add all accrued and unpaid interest to the principal balance of my loan on the last day of the Deferment Period and at the end of any forbearance period.

**E. TERMS OF REPAYMENT:**
1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you will send me statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.
2. Repayment Period – During the Repayment Period, you will send me monthly statements that show the amounts of minimum monthly payments and the payment due dates. I will make consecutive monthly payments in amounts at least equal to such minimum monthly payments by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments.
3. Repayment Terms – My monthly payment will be established based on the rules in this Credit Agreement when my Repayment Period begins. My monthly payment amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a)-once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the amount of my monthly payment would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my monthly payment will be recalculated. My new monthly payment amount will be disclosed to me by the servicer. The new monthly repayment amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly

installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. **Minimum Repayment** – Notwithstanding Paragraph E.3, I agree to pay at least $25 each month during the Repayment Period or the unpaid balance whichever is less. I understand that I may pay more than my monthly payment at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments.

5. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

6. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

7. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

F. **LOAN ORIGINATION FEE:** If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the sum of the Loan Origination Fee and the Loan Amount, to the extent advanced to me, times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than the entire principal amount (Loan Origination Fee plus Loan Amount). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and will be added to the principal amount of my loan. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

G. **RIGHT TO PREPAY:** I have the right to prepay all or any part of my loan at any time without penalty.

H. **FORBEARANCE:** If I am unable to repay my loan in accordance with the terms established under this Credit Agreement, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

I. **WHOLE LOAN DUE:** To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) Any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors, or (5) I make any false written statement in applying for this loan or any other student or education loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

J. **NOTICES:**

1. I will send written notice to you, or any subsequent holder of this Credit Agreement, within ten days after any change in my name, address, or enrollment status (for example, if I withdraw from the School or transfer to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me.

K. **INFORMATION:**

1. I must update the information I provided to you whenever you ask me to do so.

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

L. **ADDITIONAL AGREEMENTS:**

1. I understand that you are located in Ohio and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that

a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and Instructions and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

10. If I fail to complete the education program paid for with this loan, I am not relieved of any obligation within or pursuant to this Credit Agreement.

11. **I acknowledge that this loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit institution.**

12. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

13. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to TERI, either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower provided in connection with this Credit Agreement.

14. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

15. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

16. If I elect to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and me: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe.

## M. DISCLOSURE NOTICES

> **ALL APPLICANTS:**
> **IMPORTANT FEDERAL LAW NOTICE—**
>
> *Important information about procedures for opening a new account:*
> **To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.**
>
> *What this means for you:*
> **When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

IOWA, KANSAS, AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

MARYLAND RESIDENTS: You elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland only to the extent not inconsistent with 12 U.S.C. § 85 and related regulations and opinions, which you expressly reserve.

**MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital

agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school. The legal age for entering into contracts is 18 years of age in every State in the United States except the following: Alabama and Nebraska (19 years old), and Mississippi and Puerto Rico (21 years old). I certify that I meet these state age requirements.

# NOTE DISCLOSURE STATEMENT

$ 17,127.07
03017765
Loan No.

Borrower(s)     ALLISON L MERRILL

Student:        ALLISON L MERRILL
Date:           July 15, 2005

ALLISON L MERRILL
12305 S LINCOLN HOLLOW CT
CEDAR , MI  49621

Lender Name and Address:
CHARTER ONE BANK, N.A.
833 BROADWAY
ALBANY, NY 12207-2415

This disclosure statement relates to your Loan Note disbursed on     July 15, 2005
Because your Loan is either being disbursed or entering repayment, or the repayment terms are being modified, the following information about your Loan is being given to you.

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments scheduled. |
|---|---|---|---|
| 8.965 % | $ 24,224.80 | $ 15,500.00 | $ 39,724.80 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are due |
|---|---|---|
| 240 | $ 165.52 | On the 30th day of each month beginning on  7/2007 |
|  |  |  |
|  |  |  |

**VARIABLE RATE:** The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of the loan if the index rate increases. The index is (check one):

[ ] **Prime Rate Index Adjusted Monthly** - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal on the last business day of each calendar month.

[ ] **Prime Rate Index Adjusted Quarterly** - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal on the last business day of each calendar quarter.

[X] **LIBOR Index Adjusted Quarterly** - The average of the one-month London Interbank Offered Rates published in the "Money Rates" section of The Wall Street Journal on the first business day of each of the three (3) calendar months immediately preceding the first day of each calendar quarter.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase the amount of any current and all future payments. Any increase in the index and the Annual Percentage Rate which occurs while principal and interest payments are deferred will increase the amount of all future payments. Any increase in the index and the Annual Percentage Rate which occurs after you have begun to make principal and interest payments on your loan will increase the amount of your future principal and interest payments beginning with your next annual payment adjustment date. For example, assume you obtain a loan in your junior year, in the amount of $10,000, at an interest rate of 11%, and you defer principal and interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12% on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by $ 91.01, and your monthly principal and interest payments would increase by $ 9.37.

**SECURITY:** You have given a security interest in all refunds or amounts owed to you at any time by the student's educational institution. Collateral securing other loans with the Lender may also secure this Loan.
**LATE CHARGES:** If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If you default, Lender (or any subsequent holder or any subsequent holder of your Loan Note) may increase the margin used to compute the Annual Percentage Rate by two percentage points (2%).
**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, any security interest and prepayment refunds and penalties.

**Estimates:** All numerical disclosures except the late payment disclosure are estimates.

Principal Amount of Note (Amount Financed plus Prepaid Finance Charge)     $     17,127.07

Itemization of Amount Financed
Amount paid to  ALLISON L MERRILL                $     15,500.00
Amount paid to                                   $
Total Amount Financed                                 $     15,500.00

Itemization of Prepaid Finance Charge
Origination Fee                                  $     1,627.07
Total Prepaid Finance Charge(s)                       $     1,627.07

**Exhibit C**

EXHIBIT 10.16

## POOL SUPPLEMENT
### CHARTER ONE BANK, N.A.

This Pool Supplement (the "Supplement") is entered into pursuant to and forms a part of each of the Note Purchase Agreements (the "Agreements") set forth on Schedule 1 attached hereto, each as amended or supplemented from the date of execution of the Agreement through the date of this Supplement, by and between The First Marblehead Corporation ("FMC") and Charter One Bank, N.A. (the "Program Lender"). This Supplement is dated as of October 12, 2005. Capitalized terms used in this Supplement without definitions have the meanings set forth in the Agreements.

### Article 1: Purchase and Sale.

In consideration of the Minimum Purchase Price, the Program Lender hereby transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the "Depositor"), upon the terms and conditions set forth in the Agreements (which are incorporated herein by reference with the same force and effect as if set forth in full herein), each student loan set forth on attached Schedule 2 (the "Transferred Loans") along with all of the Program Lender's rights under the Guaranty Agreements relating to the Transferred Loans. The Depositor in turn will sell the Transferred Loans to The National Collegiate Student Loan Trust 2005-3 (the "Trust"). The Program Lender hereby transfers and delivers to the Depositor each Note evidencing such Transferred Loan and all Origination Records relating thereto, in accordance with the terms of the Agreements. The Depositor hereby purchases said Notes on said terms and conditions.

### Article 2: Price.

The amount paid pursuant to this Supplement is the Minimum Purchase Price, as that term is defined in Section 2.04 of the Agreement.

### Article 3: Representations and Warranties.

3.01.  **By Program Lender.**

The Program Lender repeats the representations and warranties contained in Section 5.02 of the Agreements for the benefit of each of the Depositor and the Trust and confirms the same are true and correct as of the date hereof with respect to the Agreements and to this Supplement.

3.02.  **By Depositor.**

The Depositor hereby represents and warrants to the Program Lender that at the date of execution and delivery of this Supplement by the Depositor:

(a)     The Depositor is duly organized and validly existing as a limited liability company under the laws of the State of Delaware with the due power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted, and had at all relevant times, and has, the power, authority and legal right to acquire and own the Transferred Loans.

(b)     The Depositor is duly qualified to do business and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c)     The Depositor has the power and authority to execute and deliver this Supplement and to carry out its respective terms; the Depositor has the power and authority to purchase the Transferred Loans and rights relating thereto as provided herein from the Program Lender, and the Depositor has duly authorized such purchase from the Program Lender by all necessary action; and the execution, delivery and performance of this Supplement has been duly authorized by the Depositor by all necessary action on the part of the Depositor.

(d)     This Supplement, together with the Agreements of which this Supplement forms a part, constitutes a legal, valid and binding obligation of the Depositor, enforceable in accordance with its terms.

(e)     The consummation of the transactions contemplated by the Agreements and this Supplement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the governing instruments of the Depositor or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; or result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; or violate any law or any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(f)     There are no proceedings or investigations pending, or threatened, before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties: (i) asserting the invalidity of the Agreements or this Supplement, (ii) seeking to prevent the consummation of any of the transactions contemplated by the Agreements or this Supplement, or (iii) seeking any determination or ruling that is likely to materially or adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of the Agreements or this Supplement.

Article 4: Cross Receipt.

The Program Lender hereby acknowledges receipt of the Minimum Purchase Price. The Depositor hereby acknowledges receipt of the Transferred Loans included in the Pool.

Article 5: Assignment of Origination, Guaranty and Servicing Rights.

The Program Lender hereby assigns and sets over to the Depositor any claims it may now or hereafter have under the Guaranty Agreements, the Origination Agreements and the Servicing Agreements to the extent the same relate to the Transferred Loans described in Schedule 2, other than any right to obtain servicing after the date hereof. It is the intent of this provision to vest in the Depositor any claim of the Program Lender relating to defects in origination, guaranty or servicing of the loans purchased hereunder in order to permit the Depositor to assert such claims directly and obviate any need to make the same claims against the Program Lender under this Supplement.

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION


By: /s/ John A. Hupalo
    Name: John A. Hupalo
    Title: Executive Vice President


CHARTER ONE BANK, N.A.


By: /s/ Michael McFarlane
    Name: Michael McFarlane
    Title: Senior Vice President


THE NATIONAL COLLEGIATE FUNDING LLC

By:     GATE Holdings, Inc., Member


By: /s/ Donald R. Peck
    Name: Donald R. Peck
    Title: Treasurer and Secretary

Note Purchase Agreements

- Note Purchase Agreement dated as of October 31, 2003 by and between FMC and the Program Lender for AES.

- Note Purchase Agreement dated as of May 15, 2002 by and between FMC and the Program Lender for AMS.

- Note Purchase Agreement dated as of July 15, 2003 by and between FMC and the Program Lender for Brazos.

- Note Purchase Agreement dated as of May 15, 2002 by and between FMC and the Program Lender for CFS.

- Note Purchase Agreement dated as of June 30, 2003 by and between FMC and the Program Lender for Citibank.

- Note Purchase Agreement dated as of July 1, 2002 by and between FMC and the Program Lender for CLC.

- Note Purchase Agreement dated as of December 4, 2002 by and between FMC and the Program Lender for Comerica.

- Note Purchase Agreement dated as of May 15, 2002 by and between FMC and the Program Lender for EAS.

- Note Purchase Agreement dated as of May 15, 2003 by and between FMC and the Program Lender for ESF.

- Note Purchase Agreement dated as of September 20, 2003 by and between FMC and the Program Lender for M & I Bank.

- Note Purchase Agreement dated as of November 17, 2003 by and between FMC and the Program Lender for National Education.

- Note Purchase Agreement dated as of May 15, 2003 by and between FMC and the Program Lender for Navy Federal.

- Note Purchase Agreement dated as of May 15, 2002 by and between FMC and the Program Lender for Nextstudent.

- Note Purchase Agreement dated as of September 15, 2003 by and between FMC and the Program Lender for North Texas Higher Education.

| LENDER NAME | MARKETER | LOAN DESC | BSSN | SEQ |
|---|---|---|---|---|
| CHARTER ONE BANK | CFS | DTC - Undergraduate | ████0578 | 0001 |

| ACTUAL MARGIN | RECON PRIN | RECON INT |
|---|---|---|
| 0.0485 | $17,127.07 | $331.61 |

- Note Purchase Agreement dated as of March 17, 2003 by and between FMC and the Program Lender for PNC.

- Note Purchase Agreement dated as of May 1, 2003 by and between FMC and the Program Lender for SAF.

- Note Purchase Agreement dated as of September 20, 2002 by and between FMC and the Program Lender for Southwest.

- Note Purchase Agreement dated as of May 15, 2003 by and between FMC and the Program Lender for Washington Mutual (WAMU).

- Note Purchase Agreement dated as of December 29, 2003 by and between FMC and the Program Lender for AAA Southern New England Bank.

- Note Purchase Agreement dated as of December 1, 2003 by and between FMC and the Program Lender for the Custom Educredit Loan Program.

- Note Purchase Agreement dated as of March 25 2004 by and between FMC and the Program Lender for the START Education Loan Program.

- Note Purchase Agreement dated as of May 10, 2004 by and between FMC and the Program Lender for the Edfinancial Loan Program.

- Note Purchase Agreement dated as of March 26, 2004 by and between FMC and the Program Lender for the Nextstudent Private Consolidation Loan Program.

- Note Purchase Agreement dated as of February 15, 2005 by and between FMC and the Program Lender for the Charter One Referral Loan Program.

**Exhibit D**

## DEPOSIT AND SALE AGREEMENT
## THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3

This Deposit and Sale Agreement (the "Sale Agreement"), dated as of October 12, 2005, between The National Collegiate Funding LLC, in its capacity as seller (in such capacity, the "Seller"), and The National Collegiate Student Loan Trust 2005-3, as purchaser (the "Purchaser"), shall be effective upon execution by the parties hereto.

WHEREAS, the Seller is the owner of certain student loans; and

WHEREAS, the Seller desires to sell its interest in such student loans and the Purchaser desires to purchase such loans from the Seller.

NOW, THEREFORE, in connection with the mutual promises contained herein, the parties hereto agree as follows:

## ARTICLE I
## TERMS

This Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto (the "Transferred Student Loans").

## ARTICLE II
## DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the definitions set forth in Appendix A of the Indenture dated as of October 1, 2005 between U.S. Bank National Association (the "Indenture Trustee") and the Purchaser.

## ARTICLE III
## SALE AND PURCHASE

Section 3.01. Sale of Loans. The Seller hereby sells and the Purchaser hereby purchases the Transferred Student Loans.

Section 3.02. Assignment of Rights. The Seller hereby assigns to the Purchaser and the Purchaser hereby accepts all of the Seller's rights and interests under each of the Pool Supplements listed on Schedule A attached hereto and the related Student Loan Purchase Agreements listed on Schedule B attached hereto.

Section 3.03. Settlement of the Payment. The Purchaser shall pay the Seller the purchase price set forth in Schedule 1 of each of the Pool Supplements by wire transfer in immediately available funds to the account specified by the Seller. In addition, the Purchaser will also issue the Class A-5 Notes to the Seller pursuant to the Indenture.

Section 3.04.  Assistance by Seller.  Following the execution of this Sale Agreement, the Seller shall provide any reasonable assistance requested by the Purchaser in determining that all required documentation on the Transferred Student Loans is present and correct.

## ARTICLE IV
## REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER

Section 4.01.  General.  The Seller represents and warrants to the Purchaser that as of the date of this Sale Agreement:

(a)     The Seller is duly organized and existing under the laws of the State of Delaware; and

(b)     The Seller has all requisite power and authority to enter into and to perform the terms of this Sale Agreement.

Section 4.02.  Loan Representations.  The Seller represents and warrants to the Purchaser that with respect to each Transferred Student Loan purchased by the Purchaser pursuant to this Sale Agreement, the Seller is making the same representations and warranties made by the respective program lender with respect to each Transferred Student Loan pursuant to the respective Student Loan Purchase Agreement listed on Schedule B attached hereto.

Section 4.03.  Covenants.  The Seller, in its capacity as purchaser of the Transferred Student Loans pursuant to the Pool Supplements, hereby covenants that it will enforce the covenants and agreements of each program lender in the respective Student Loan Purchase Agreement and related Pool Supplement.  The Seller further covenants that it will not waive, amend, modify, supplement or terminate any Student Loan Purchase Agreement or Pool Supplement or any provision thereof without the consent of the Purchaser, which consent the Purchaser hereby agrees not to provide without the prior written consent of the Indenture Trustee and the Interested Noteholders in accordance with the Purchaser's covenant in Section 3.07(c) of the Indenture.

## ARTICLE V
## PURCHASE OF LOANS; REIMBURSEMENT

Each party to this Sale Agreement shall give notice to the other such parties and to the Servicers, First Marblehead Data Services, Inc. and Delaware Trust Company, National Association (the "Owner Trustee") promptly, in writing, upon the discovery of any breach of the Seller's representations and warranties made pursuant to this Sale Agreement which has a materially adverse effect on the interest of the Purchaser in any Transferred Student Loan.  In the event of such a material breach, the Seller shall cure or repurchase the Transferred Student Loan in accordance with the remedies set forth in the respective Student Loan Purchase Agreement.

## ARTICLE VI
## LIABILITY OF SELLER; INDEMNITIES

The Seller shall be liable in accordance herewith only to the extent of the obligations specifically undertaken by the Seller under this Sale Agreement.

2

(a)     The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any taxes that may at any time be asserted against any such Person with respect to the transactions contemplated herein and in the other Basic Documents (except any such income taxes arising out of fees paid to the Owner Trustee), including any sales, gross receipts, general corporation, tangible and intangible personal property, privilege or license taxes and costs and expenses in defending against the same.

(b)     The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any and all costs, expenses, losses, claims, damages and liabilities arising out of, or imposed upon such Person through, the Seller's willful misfeasance, bad faith or gross negligence in the performance of its duties under this Sale Agreement, or by reason of reckless disregard of its obligations and duties under this Sale Agreement.

Indemnification under this Section shall survive the termination of this Sale Agreement and shall include reasonable fees and expenses of counsel and expenses of litigation. If the Seller shall have made any indemnity payments pursuant to this Section and the Person to or for the benefit of whom such payments are made thereafter shall collect any of such amounts from others, such Person shall promptly repay such amounts to the Seller, without interest.

## ARTICLE VII
## MERGER OR CONSOLIDATION OF, OR ASSUMPTION
## OF THE OBLIGATIONS OF, SELLER

Any Person (a) into which the Seller may be merged or consolidated, (b) which may result from any merger or consolidation to which the Seller shall be a party or (c) which may succeed to the properties and assets of the Seller substantially as a whole, shall be the successor to the Seller without the execution or filing of any document or any further act by any of the parties to this Sale Agreement; provided, however, that the Seller hereby covenants that it will not consummate any of the foregoing transactions except upon satisfaction of the following: (i) the surviving Person, if other than the Seller, executes an agreement of assumption to perform every obligation of the Seller under this Sale Agreement, (ii) immediately after giving effect to such transaction, no representation or warranty made pursuant to this Sale Agreement shall have been breached, (iii) the surviving Person, if other than the Seller, shall have delivered an Officers' Certificate and an opinion of counsel each stating that such consolidation, merger or succession and such agreement of assumption comply with this Section and that all conditions precedent, if any, provided for in this Sale Agreement relating to such transaction have been complied with, and that the Rating Agency Condition shall have been satisfied with respect to such transaction, (iv) if the Seller is not the surviving entity, such transaction will not result in a material adverse federal or state tax consequence to the Purchaser or the Noteholders and holders of the grantor trust certificates (the "Certificates") (the "Certificateholders" and together with the Noteholders, the "Securityholders") and (v) if the Seller is not the surviving entity, the Seller shall have delivered an opinion of counsel either (A) stating that, in the opinion of such counsel, all financing statements and continuation statements and amendments thereto have been executed and filed that are necessary fully to preserve and protect the interest of the Purchaser in

the Transferred Student Loans and reciting the details of such filings, or (B) stating that, in the opinion of such counsel, no such action shall be necessary to preserve and protect such interests.

## ARTICLE VIII
## LIMITATION ON LIABILITY OF SELLER AND OTHERS

The Seller and any director or officer or employee or agent thereof may rely in good faith on the advice of counsel or on any document of any kind, prima facie properly executed and submitted by any Person respecting any matters arising hereunder (provided that such reliance shall not limit in any way the Seller's obligations under this Sale Agreement). The Seller shall not be under any obligation to appear in, prosecute or defend any legal action that shall not be incidental to its obligations under this Sale Agreement or the Student Loan Purchase Agreements, and that in its opinion may involve it in any expense or liability.

## ARTICLE IX
## SURVIVAL OF COVENANTS

All covenants, agreements, representations and warranties made herein shall survive the consummation of the purchase of the Transferred Student Loans; provided, however, that to the extent any of the same relate to a corresponding covenant, agreement, representation or warranty contained in a Student Loan Purchase Agreement, the same shall survive to the extent that such corresponding covenant, agreement, representation or warranty survives the applicable Student Loan Purchase Agreement. All covenants, agreements, representations and warranties made or furnished pursuant hereto by or for the benefit of the Seller shall bind and inure to the benefit of any successors or assigns of the Purchaser, including the Indenture Trustee and the Grantor Trustee. This Sale Agreement may be changed, modified or discharged, and any rights or obligations hereunder may be waived, only by a written instrument signed by a duly authorized officer of the party against whom enforcement of any such waiver, change, modification or discharge is sought. The waiver by the Indenture Trustee, at the direction of the Noteholders (pursuant to the Indenture), and the Grantor Trustee, at the direction of the Certificateholders (pursuant to the Grantor Trust Agreement), of any covenant, agreement, representation or warranty required to be made or furnished by the Seller or the waiver by the Indenture Trustee, at the direction of the Noteholders (pursuant to the Indenture), and the Grantor Trustee, at the direction of the Certificateholders (pursuant to the Grantor Trust Agreement), of any provision herein contained shall not be deemed to be a waiver of any breach of any other covenant, agreement, representation, warranty or provision herein contained, nor shall any waiver or any custom or practice which may evolve between the parties in the administration of the terms hereof, be construed to lessen the right of the Indenture Trustee, at the direction of the Noteholders (pursuant to the Indenture), and the Grantor Trustee, at the direction of the Certificateholders (pursuant to the Grantor Trust Agreement), to insist upon the performance by the Seller in strict accordance with said terms.

## ARTICLE X
## COMMUNICATION AND NOTICE REQUIREMENTS

All communications, notices and approvals provided for hereunder shall be in writing and mailed or delivered to the Seller or the Purchaser, as the case may be. Notice given in any such

communication, mailed to the Seller or the Purchaser by appropriately addressed registered mail, shall be deemed to have been given on the day following the date of such mailing and shall be addressed as follows:

If to the Purchaser, to:

The National Collegiate Student Loan Trust 2005-3
c/o Delaware Trust Company, National Association, as Owner Trustee
300 Delaware Avenue, 9th Floor
Wilmington, Delaware 19801
Attention: Mr. Sterling C. Correia

If to the Seller, to:

The National Collegiate Funding LLC
c/o First Marblehead Data Services, Inc.
The Prudential Tower
800 Boylston Street - 34th Floor
Boston, MA 02199-8157
Attention: Ms. Rosalyn Bonaventure

with a copy to:

First Marblehead Corporation
The Prudential Tower
800 Boylston Street - 34th Floor
Boston, MA 02199-8157
Attention: Mr. Richard P. Zermani

or to such other address as either party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, or hand delivered to the address of such party as provided above.

## ARTICLE XI
## AMENDMENT

This Sale Agreement may be amended by the parties hereto without the consent of the related Securityholders for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of the Sale Agreement or of modifying in any manner the rights of such Securityholders; provided that such action will not, in the opinion of counsel satisfactory to the Indenture Trustee and the Grantor Trustee, materially affect the interest of any such Securityholder.

In addition, this Sale Agreement may also be amended from time to time by the Seller and the Purchaser, with the consent of the Noteholders of the Notes evidencing a majority of the Outstanding Amount of the Notes and the consent of the Certificateholders of the Certificates evidencing a majority of the outstanding principal amount of the Certificates, for the purpose of

adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of the Noteholders or the Certificateholders, respectively; provided, however, that no such amendment shall (a) increase or reduce in any manner the amount of, or accelerate or delay the time of, collections of payments with respect to Transferred Student Loans or distributions that shall be required to be made for the benefit of the Securityholders, or (b) reduce the aforesaid percentage of the Outstanding Amount of the Notes or the Certificates, the Noteholders or the Certificateholders of which are required to consent to any such amendment, without the consent of all outstanding Noteholders or Certificateholders, respectively.

Promptly after the execution of any such amendment or consent (or, in the case of the Rating Agencies, five Business Days prior thereto), the Purchaser shall furnish written notification of the substance of such amendment or consent to the Indenture Trustee, the Grantor Trustee and each of the Rating Agencies.

It shall not be necessary for the consent of Securityholders pursuant to this Section to approve the particular form of any proposed amendment or consent, but it shall be sufficient if such consent shall approve the substance thereof.

Prior to the execution of any amendment to this Sale Agreement, the Owner Trustee shall be entitled to receive and rely upon an opinion of counsel stating that execution of such amendment is authorized or permitted by this Sale Agreement. The Owner Trustee may, but shall not be obligated to, enter into any such amendment which affects the Owner Trustee's own rights, duties or immunities under this Sale Agreement or otherwise.

## ARTICLE XII
## ASSIGNMENT

The Seller hereby assigns its entire right, title and interest as purchaser under this Sale Agreement and the Student Loan Purchase Agreement thereunder to the Purchaser as of the date hereof and acknowledges that the Purchaser will assign the same, together with the right, title and interest of the Purchaser hereunder, to the Indenture Trustee under the Indenture.

## ARTICLE XIII
## GOVERNING LAW

THIS SALE AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, INCLUDING SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, BUT OTHERWISE WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

## ARTICLE XIV
## LIMITATION OF LIABILITY OF OWNER TRUSTEE

Notwithstanding anything contained herein to the contrary, this instrument has been executed by Delaware Trust Company, National Association, not in its individual capacity but

solely in its capacity as Owner Trustee of the Purchaser, and in no event shall Delaware Trust Company, National Association in its individual capacity or any beneficial owner of the Purchaser have any liability for the representations, warranties, covenants, agreements or other obligations of the Purchaser hereunder, as to all of which recourse shall be had solely to the assets of the Purchaser. For all purposes of this Sale Agreement, in the performance of any duties or obligations of the Purchaser hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the Trust Agreement.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

THE NATIONAL COLLEGIATE FUNDING LLC, as Seller

By: GATE Holdings, Inc., Member

By: _____

Name: Donald R. Peck

Title: Treasurer and Secretary

THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3, as Purchaser

By:  Delaware Trust Company, National Association, not in its individual capacity but solely as Owner Trustee

By: _____

Name:

Title:

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

THE NATIONAL COLLEGIATE FUNDING LLC, as Seller

By: GATE Holdings, Inc., Member

By:_____
    Name:
    Title:

THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3, as Purchaser

By:    Delaware Trust Company, National Association, not in its individual capacity but solely as Owner Trustee

By:_____
    Name: STERLING C. CORREIA
    Title:    VICE PRESIDENT

## SCHEDULE A
*Pool Supplements*

Each of the following Pool Supplements was entered into by and among The First Marblehead Corporation, The National Collegiate Funding LLC and:

- Bank of America, N.A., dated October 12, 2005, for loans that were originated under Bank of America's BAGEL Loan Program, CEDU Loan Program, Direct to Consumer Loan Program and ISLP Loan Program.
- Bank One, N.A., dated October 12, 2005, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program and M&T REFERRAL Loan Program.
- Charter One Bank, N.A., dated October 12, 2005, for loans that were originated under the following Charter One programs: AAA Southern New England Bank, AES EducationGAIN Loan Program, (AMS) TuitionPay Diploma Loan Program, Brazos Alternative Loan Program, CFS Direct to Consumer Loan Program, Citibank Flexible Education Loan Program, College Loan Corporation Loan Program, Comerica Alternative Loan Program, Custom Educredit Loan Program, Edfinancial Loan Program, Education Assistance Services Loan Program, ESF Alternative Loan Program, Extra Credit II Loan Program (North Texas Higher Education), M&I Alternative Loan Program, National Education Loan Program, Navy Federal Alternative Loan Program, NextStudent Alternative Loan Program, NextStudent Private Consolidation Loan Program, PNC Bank Resource Loan Program, SAF Alternative Loan Program, START Education Loan Program, Southwest Loan Program, WAMU Alternative Student Loan Program, Charter One Referral Loan Program and Axiom Alternative Loan Program.
- Chase Manhattan Bank USA, N.A., dated June 9 2005, for loans that were originated under Chase's Chase Extra Loan Program.
- Citizens Bank of Rhode Island, dated October 12, 2005, for loans that were originated under Citizens Bank of Rhode Island's Compass Bank Loan Program, DTC Loan Program, Navy Federal Referral Loan Program and Xanthus Loan Program.
- GMAC Bank, dated October 12, 2005, for loans that were originated under GMAC Bank's GMAC Alternative Loan Program.
- HSBC Bank USA, National Association, dated October 12, 2005, for loans that were originated under the HSBC Loan Program.
- The Huntington National Bank, dated October 12, 2005, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.
- Manufacturers and Traders Trust Company, dated October 12, 2005, for loans that were originated under Manufacturers and Traders Trust Company's M&T Alternative Loan Program.
- PNC Bank, N.A., dated October 12, 2005, for loans that were originated under PNC Bank's PNC Bank Alternative Loan Program.
- Sovereign Bank, dated October 12, 2005, for loans that were originated under Sovereign Bank's Alternative Loan Program.
- SunTrust Bank, dated October 12, 2005, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

## SCHEDULE B
### *Student Loan Purchase Agreements*

Each of the following Note Purchase Agreements, as amended or supplemented, was entered into by and between The First Marblehead Corporation and:

- Bank of America, N.A., dated April 30, 2001, for loans that were originated under Bank of America's BAGEL Loan Program, CEDU Loan Program and ISLP Loan Program.
- Bank of America, N.A., dated June 30, 2003, for loans that were originated under Bank of America's Direct to Consumer Loan Program.
- Bank One, N.A., dated May 1, 2002, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program and EDUCATION ONE Loan Program.
- Bank One, N.A., dated July 26, 2002, for loans that were originated under Bank One's M&T REFERRAL Loan Program
- Charter One Bank, N.A., dated as of December 29, 2003 for loans that were originated under Charter One's AAA Southern New England Bank Loan Program.
- Charter One Bank, N.A., dated October 31, 2003, for loans that were originated under Charter One's AES EducationGAIN Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's (AMS) TuitionPay Diploma Loan Program.
- Charter One Bank, N.A., dated July 15, 2003, for loans that were originated under Charter One's Brazos Alternative Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's CFS Direct to Consumer Loan Program.
- Charter One Bank, N.A., dated June 30, 2003, for loans that were originated under Charter One's Citibank Flexible Education Loan Program.
- Charter One Bank, N.A., dated July 1, 2002, for loans that were originated under Charter One's College Loan Corporation Loan Program.
- Charter One Bank, N.A., dated December 4, 2002, for loans that were originated under Charter One's Comerica Alternative Loan Program.
- Charter One Bank, N.A., dated December 1, 2003, for loans that were originated under Charter One's Custom Educredit Loan Program.
- Charter One Bank, N.A., dated May 10, 2004, for loans that were originated under Charter One's Edfinancial Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's Education Assistance Services Loan Program.
- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's ESF Alternative Loan Program.
- Charter One Bank, N.A., dated September 15, 2003, for loans that were originated under Charter One's Extra Credit II Loan Program (North Texas Higher Education).
- Charter One Bank, N.A., dated September 20, 2003, for loans that were originated under Charter One's M&T Alternative Loan Program.
- Charter One Bank, N.A., dated November 17, 2003, for loans that were originated under Charter One's National Education Loan Program.

- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's Navy Federal Alternative Loan Program.
- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's NextStudent Alternative Loan Program.
- Charter One Bank, N.A., dated March 26, 2004, for loans that were originated under Charter One's NextStudent Private Consolidation Loan Program.
- Charter One Bank, N.A., dated March 17, 2003, for loans that were originated under Charter One's PNC Bank Resource Loan Program.
- Charter One Bank, N.A., dated May 1, 2003, for loans that were originated under Charter One's SAF Alternative Loan Program.
- Charter One Bank, N.A., dated September 20, 2002, for loans that were originated under Charter One's Southwest Loan Program.
- Charter One Bank, N.A., dated March 25, 2004, for loans that were originated under Charter One's START Education Loan Program.
- Charter One Bank, N.A., dated May 15, 2003, for loans that were originated under Charter One's WAMU Alternative Student Loan Program.
- Charter One Bank, N.A., dated February 15, 2005, for loans that were originated under Charter One's Referral Loan Program and Axiom Alternative Loan Program.
- Chase Manhattan Bank USA, N.A., dated September 30, 2003, as amended on March 1, 2004, September 8, 2004 and February 25, 2005, for loans that were originated under Chase's Chase Extra Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Compass Bank Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's DTC Alternative Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Navy Federal Referral Loan Program.
- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Xanthus Loan Program.
- GMAC Bank, dated May 30, 2003, as amended on March 1, 2005, for loans that were originated under GMAC Bank's GMAC Alternative Loan Program.
- HSBC Bank USA, National Association, dated April 17, 2002, as amended on June 2, 2003 and August 1, 2003, for loans that were originated under the HSBC Loan Program.
- The Huntington National Bank, dated May 20, 2003, for loans that were originated under The Huntington National Bank's Huntington Bank Education Loan Program.
- Manufacturers and Traders Trust Company, dated April 29, 2004, for loans that were originated under Manufacturers and Traders Trust Company's Alternative Loan Program.
- National City Bank, dated November 13, 2002, for loans that were originated under National City Bank's National City Loan Program.
- PNC Bank, N.A., dated April 22, 2004, for loans that were originated under PNC Bank's Alternative Conforming Loan Program.
- Sovereign Bank, dated April 30, 2004, for loans that were originated under Sovereign Bank's Alternative Loan Program.
- SunTrust Bank, dated March 1, 2002, for loans that were originated under SunTrust Bank's SunTrust Alternative Loan Program.

**Exhibit E**

BORROWER SSN: ***-**-0578  NAME: MERRILL, ALLISON L
1ST DISB: 07/15/05 LN SEQ: 0001  LN PGM: ALPLN      OWN: 122962QA-NCT
GUARANTOR: TERI                  CUST ACCT: LT07  ORIG BAL: 17,127.07
BOND ISSUE: NCT20053   PD AHEAD:      STATUS: ACTIVE   CURR BAL:      0.00

| | REV | EFFECTIVE | POSTED | TRAN | TRAN | INTEREST | PRINCIPAL |
| | REA | DATE | DATE | TYPE | AMOUNT | ACCRUED | BALANCE |
| 1 | | 06/04/14 | 06/04/14 | 5003A | 10.00CR | 0.00 | 0.00 |
| 2 | | 06/02/14 | 06/02/14 | 1030A | 29,536.14CR | 54.46 | 0.00 |
| 3 | | 05/19/14 | | 2601A | 5.00 | 116.71 | 28,344.12 |
| 4 | | 04/19/14 | | 2601A | 5.00 | 19.45 | 28,344.12 |
| 5 | | 04/14/14 | 04/14/14 | 1010C | 100.86CR | 101.25 | 28,344.12 |
| 6 | | 03/19/14 | | 2601A | 5.00 | 109.15 | 28,344.12 |
| 7 | | 02/19/14 | | 2601A | 5.00 | 31.18 | 28,344.12 |
| 8 | | 02/11/14 | 02/11/14 | 1010C | 67.24CR | 89.66 | 28,344.12 |
| 9 | | 01/19/14 | | 2601A | 5.00 | 62.37 | 28,344.12 |
| 10 | | 01/03/14 | 01/06/14 | 1010C | 84.05CR | 58.67 | 28,344.12 |

SELECTION ___

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

```
BORROWER SSN: ***-**-0578  NAME: MERRILL, ALLISON L
1ST DISB: 07/15/05 LN SEQ: 0001  LN PGM: ALPLN      OWN: 122962QA-NCT
GUARANTOR: TERI                   CUST ACCT: LT07  ORIG BAL: 17,127.07
BOND ISSUE: NCT20053    PD AHEAD:      STATUS: ACTIVE    CURR BAL:      0.00
```

| | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 12/19/13 | | 2601A | 5.00 | 54.79 | 28,344.12 |
| 2 | | 12/05/13 | 12/06/13 | 1010C | 176.18CR | 62.62 | 28,344.12 |
| 3 | | 11/19/13 | | 2601A | 5.00 | 113.50 | 28,344.12 |
| 4 | | 10/21/13 | 10/21/13 | 1010C | 35.34CR | 7.82 | 28,344.12 |
| 5 | | 10/19/13 | | 2601A | 5.00 | 117.50 | 28,344.12 |
| 6 | | 09/19/13 | | 2601A | 5.00 | 121.56 | 28,344.12 |
| 7 | | 08/19/13 | | 2601A | 5.00 | 121.56 | 28,344.12 |
| 8 | | 07/19/13 | | 2601A | 4.94 | 196.07 | 28,344.12 |
| 9 | | 05/30/13 | 05/30/13 | 1010C | 197.64CR | 43.13 | 28,344.12 |
| 10 | | 05/19/13 | | 2601A | 4.94 | 125.49 | 28,344.12 |

```
     SELECTION ___


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

BORROWER SSN: ***-**-0578  NAME: MERRILL, ALLISON L

1ST DISB: 07/15/05 LN SEQ: 0001  LN PGM: ALPLN      OWN: 122962QA-NCT

GUARANTOR: TERI              CUST ACCT: LT07  ORIG BAL: 17,127.07

BOND ISSUE: NCT20053   PD AHEAD:    STATUS: ACTIVE    CURR BAL:      0.00

|   | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---------|----------------|-------------|-----------|-------------|------------------|-------------------|
| 1 |  | 04/17/13 | 04/18/13 | 1010C | 98.82CR | 105.96 | 28,344.12 |
| 2 |  | 03/21/13 | 03/21/13 | 1010C | 98.82CR | 7.85 | 28,344.12 |
| 3 |  | 03/19/13 |  | 2601A | 4.94 | 102.16 | 28,344.12 |
| 4 |  | 02/21/13 | 02/21/13 | 1010C | 98.82CR | 7.85 | 28,344.12 |
| 5 |  | 02/19/13 |  | 2601A | 4.94 | 180.75 | 28,344.12 |
| 6 |  | 01/04/13 | 01/04/13 | 1010C | 98.82CR | 177.34 | 28,344.12 |
| 7 |  | 11/20/12 | 11/20/12 | 1010C | 98.82CR | 3.94 | 28,344.12 |
| 8 |  | 11/19/12 | 11/19/12 | 1010C | 98.82CR | 193.15 | 28,344.67 |
| 9 |  | 10/01/12 | 10/01/12 | 1010C | 98.82CR | 55.27 | 28,344.67 |
| 10 |  | 09/17/12 | 09/17/12 | 1010C | 98.82CR | 63.24 | 28,388.22 |

SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

BORROWER SSN: ***-**-0578   NAME: MERRILL, ALLISON L      OWN: 122962QA-NCT
1ST DISB: 07/15/05 LN SEQ: 0001  LN PGM: ALPLN
                                    CUST ACCT:  LT07  ORIG BAL:  17,127.07
GUARANTOR: TERI
BOND ISSUE: NCT20053   PD AHEAD:     STATUS: ACTIVE     CURR BAL:      0.00

| | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 09/01/12 | 09/04/12 | 7001A | 0.00 | 711.43 | 28,423.80 |
| 2 | | 03/01/12 | 03/01/12 | 7001A | 0.00 | 457.88 | 27,712.37 |
| 3 | | 11/01/11 | 11/01/11 | 7001A | 0.00 | 456.71 | 27,254.49 |
| 4 | | 07/01/11 | 07/01/11 | 7001A | 0.00 | 612.21 | 26,797.78 |
| 5 | | 01/15/11 | 05/19/11 | 7001A | 0.00 | 51.22 | 26,185.57 |
| 6 | | 01/01/11 | 01/03/11 | 7001A | 0.00 | 334.89 | 26,134.35 |
| 7 | | 10/01/10 | 10/01/10 | 7001A | 0.00 | 329.97 | 25,799.46 |
| 8 | | 07/01/10 | 07/01/10 | 7001A | 0.00 | 318.54 | 25,469.49 |
| 9 | | 04/01/10 | 04/01/10 | 7001A | 0.00 | 311.74 | 25,150.95 |
| 10 | | 01/01/10 | 01/04/10 | 7001A | 0.00 | 317.08 | 24,839.21 |

        SELECTION __

  F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

BORROWER SSN: ***-**-0578  NAME: MERRILL, ALLISON L
1ST DISB: 07/15/05 LN SEQ: 0001  LN PGM: ALPLN      OWN: 122962QA-NCT
GUARANTOR: TERI                CUST ACCT:   LT07  ORIG BAL:  17,127.07
BOND ISSUE: NCT20053   PD AHEAD:    STATUS: ACTIVE      CURR BAL:      0.00

| | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1 | | 10/01/09 | 10/01/09 | 7001A | 0.00 | 320.86 | 24,522.13 |
| 2 | | 07/01/09 | 07/01/09 | 7001A | 0.00 | 315.61 | 24,201.27 |
| 3 | | 04/01/09 | 04/22/09 | 7001A | 0.00 | 442.21 | 23,885.66 |
| 4 | | 01/01/09 | 01/02/09 | 7001A | 0.00 | 423.56 | 23,443.45 |
| 5 | | 10/01/08 | 10/01/08 | 7001A | 0.00 | 425.95 | 23,019.89 |
| 6 | | 07/01/08 | 07/01/08 | 7001A | 0.00 | 465.99 | 22,593.94 |
| 7 | | 04/01/08 | 04/01/08 | 7001A | 0.00 | 530.01 | 22,127.95 |
| 8 | | 01/01/08 | 01/02/08 | 7001A | 0.00 | 381.25 | 21,597.94 |
| 9 | | 10/29/07 | 10/29/07 | 1010C | 19.36CR | 166.79 | 21,069.26 |
| 10 | | 10/01/07 | 10/01/07 | 7001A | 0.00 | 526.59 | 21,069.26 |

SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

BORROWER SSN: ***-**-0578  NAME: MERRILL, ALLISON L
1ST DISB: 07/15/05 LN SEQ: 0001 LN PGM: ALPLN      OWN: 122962QA-NCT
GUARANTOR: TERI                  CUST ACCT: LT07  ORIG BAL: 17,127.07
BOND ISSUE: NCT20053    PD AHEAD:      STATUS: ACTIVE     CURR BAL:       0.00

| REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|
| 1 | 07/01/07 | 07/06/07 | 7001A | 0.00 | 507.98 | 20,542.67 |
| 2 | 04/01/07 | 04/02/07 | 7001A | 0.00 | 490.58 | 20,034.69 |
| 3 | 01/01/07 | 01/02/07 | 7001A | 0.00 | 489.87 | 19,544.11 |
| 4 | 10/01/06 | 10/13/06 | 7001A | 0.00 | 461.14 | 19,054.24 |
| 5 | 07/01/06 | 10/13/06 | 7001A | 0.00 | 424.87 | 18,593.10 |
| 6 | 04/01/06 | 04/03/06 | 7001A | 0.00 | 391.43 | 18,168.23 |
| 7 | 01/01/06 | 01/03/06 | 7001A | 0.00 | 318.12 | 17,776.80 |
| 8 | 10/12/05 | 10/12/05 | 0390A | 17,458.68 | 0.00 | 17,127.07 |
| 9 | 10/12/05 | 10/12/05 | 0395A | 17,458.68CR | 331.61 | 0.00 |
| 10 | 07/15/05 | 07/15/05 | 0101A | 17,127.07 | 0.00 | 17,127.07 |

SELECTION __

F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

**Exhibit F**

BORROWER SSN: ***-**-0578 NAME: ALLISON L MERRILL
1ST DISB DATE: 07/15/05   OWNER: NCT                    LOAN PGM: ALPLN
LOAN SEQ: 001        GUARANTOR: TERI

| DEFER/FORB TYP | BEGIN DATE | END DATE | GRACE END DATE | CAP IND | DAYS USED | DAYS LEFT | TOTL MOS USED | CERT DATE |
|---|---|---|---|---|---|---|---|---|
| _ F - ADMINISTRV | 04 01 12 | 08 31 12 | | Y | 153 | UNL | 5.0 | 07 23 12 |
| _ F - GEN/TEMP | 12 01 11 | 02 29 12 | | Y | 91 | 92 | 9.0 | 02 01 12 |
| _ F - GEN/TEMP | 08 01 11 | 10 31 11 | | Y | 92 | 92 | 9.0 | 09 14 11 |
| _ F - GEN/TEMP | 04 01 11 | 06 30 11 | | Y | 91 | 92 | 9.0 | 06 08 11 |
| _ | | | | _ | | | | |
| _ | — — — — — | | | _ | | | | |
| _ | — — — — — | | | _ | | | | |
| _ | — — — — — | | | _ | | | | |

F1=HELP  F3=EXIT  F5=RFR  F6=ELG  F7=BKWD  F8=FWD  F9=PRT  F10=HIST  F12=CAN

**Exhibit G**

BORROWER SSN ***-**-0578    NAME ALLISON L MERRILL

```
          SCHED    INSTALL   REPAY   REPAY   1ST DUE 1ST DISB   LOAN
SEL STA TYPE      AMOUNT    LVLS    TERM    DATE    DATE       PGM        OWNER
 1   I   TG       121.56      4      210   08/03/13 07/15/05 ALPLN       NCT
 2  ***********************************************************************
 3  ***********************************************************************
 4  ***********************************************************************
 5   I   TG        98.82      4      221   09/03/12 07/15/05 ALPLN       NCT
 6  ***********************************************************************
 7  ***********************************************************************
 8  ***********************************************************************
 9   I   L        191.10      2      226   04/03/12 07/15/05 ALPLN       NCT
10  ***********************************************************************
11  ***********************************************************************
12  ***********************************************************************
```

SELECTION  __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

BORROWER SSN ***-**-0578   NAME ALLISON L MERRILL

|     |     | SCHED | INSTALL | REPAY | REPAY | 1ST DUE | 1ST DISB | LOAN |       |
| SEL | STA | TYPE | AMOUNT | LVLS | TERM | DATE | DATE | PGM | OWNER |
| 1 | I | L | 186.50 | 2 | 229 | 01/03/12 | 07/15/05 | ALPLN | NCT |
| 2 | I | L | 185.43 | 2 | 230 | 12/11/11 | 07/15/05 | ALPLN | NCT |
| 3 | ********************************************************** | | | | | | | | |
| 4 | ********************************************************** | | | | | | | | |
| 5 | ********************************************************** | | | | | | | | |
| 6 | I | L | 180.65 | 2 | 234 | 08/11/11 | 07/15/05 | ALPLN | NCT |
| 7 | I | L | 176.98 | 2 | 238 | 04/02/11 | 07/15/05 | ALPLN | NCT |
| 8 | I | L | 184.05 | 2 | 239 | 12/11/06 | 07/15/05 | ALPLN | NCT |
| 0 | ********************************************************** | | | | | | | | |
| 0 | ********************************************************** | | | | | | | | |
| 0 | ********************************************************** | | | | | | | | |
| 0 | ********************************************************** | | | | | | | | |

SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN

# Exhibit H

# Loan Payment History Report
## Date: 2019-05-21

| | | | |
|---|---|---|---|
| Account Number: | ███ 0578-001-PHEA | Product: | |
| Social Security Number: | ███ 0578 | Officer Code: | 777053 |
| Name: | MERRILL, ALLISON L | School: | NORTHWESTERN MICHIGAN COLL |
| Birth Date: | 1983-███ | | |
| Address 1: | 9504 E BINGHAM RD | Program Year: | 200405 |
| Address 2: | | | |
| City: | TRAVERSE CITY | Variable Rate Code: | FU QUARTERLY LIBOR |
| State: | MI | Interest Rate: | 7.36% |
| Zip Code: | 49684-9552 | | |
| | | Last Payment Date: | 2018-03-22 |
| | | Last Payment Amount: | $200.00 |
| | | Last Interest Date: | 2019-05-21 |
| Contract Date: | 2005-07-15 | Accrued Interest: | $8,357.98 |
| Vendor Placement Date: | 2019-01-07 | | |
| Charge Off Date: | 2014-06-02 | Recovered Interest: | $4,300.00 |
| Charge Off Amount: | $29,536.14 | Net Interest: | $4,057.98 |
| Recovered Principal: | $0.00 | Associated Costs: | $0.00 |
| Current Principal: | $29,536.14 | Recovered Costs: | $0.00 |
| Disbursement Date: | 2005-07-15 | Net Costs: | $0.00 |
| Disbursement Amount: | $17,127.07 | | |

## Transaction History

| User | Date | Time | Code | Description | Amount |
|------|------|------|------|-------------|--------|
| System | 2014-07-03 | 00:01 | 82 | $29,536.14 @ 5.010 / 06/05/2014 - 07/03/2014 | $129.74 |
| System | 2014-07-31 | 00:01 | 82 | $29,536.14 @ 5.000 / 07/03/2014 - 07/31/2014 | $113.29 |
| System | 2014-08-01 | 00:01 | 82 | $29,536.14 @ 5.000 / 07/31/2014 - 08/01/2014 | $4.05 |
| System | 2014-08-31 | 00:01 | 82 | $29,536.14 @ 5.005 / 08/01/2014 - 08/31/2014 | $121.50 |
| System | 2014-09-02 | 00:01 | 82 | $29,536.14 @ 5.005 / 08/31/2014 - 09/02/2014 | $8.10 |
| System | 2014-09-04 | 00:01 | 82 | $29,536.14 @ 5.000 / 09/02/2014 - 09/04/2014 | $8.09 |
| System | 2014-09-30 | 00:01 | 82 | $29,536.14 @ 5.000 / 09/04/2014 - 09/30/2014 | $105.20 |
| System | 2014-10-31 | 00:01 | 82 | $29,536.14 @ 5.000 / 09/30/2014 - 10/31/2014 | $125.43 |
| System | 2014-11-04 | 00:01 | 82 | $29,536.14 @ 5.000 / 10/31/2014 - 11/04/2014 | $16.18 |
| System | 2014-11-30 | 00:01 | 82 | $29,536.14 @ 5.010 / 11/04/2014 - 11/30/2014 | $105.41 |
| System | 2014-12-31 | 00:01 | 82 | $29,536.14 @ 5.010 / 11/30/2014 - 12/31/2014 | $125.68 |
| System | 2015-01-31 | 00:01 | 82 | $29,536.14 @ 5.010 / 12/31/2014 - 01/31/2015 | $125.67 |
| System | 2015-02-28 | 00:01 | 82 | $29,536.14 @ 5.010 / 01/31/2015 - 02/28/2015 | $113.52 |
| System | 2015-03-31 | 00:01 | 82 | $29,536.14 @ 5.010 / 02/28/2015 - 03/31/2015 | $125.68 |
| System | 2015-04-02 | 00:01 | 82 | $29,536.14 @ 5.010 / 03/31/2015 - 04/02/2015 | $8.11 |
| System | 2015-04-06 | 00:01 | 82 | $29,536.14 @ 5.020 / 04/02/2015 - 04/06/2015 | $16.25 |
| System | 2015-04-09 | 00:01 | 82 | $29,536.14 @ 5.020 / 04/06/2015 - 04/09/2015 | $12.19 |

| | | | | | |
|---|---|---|---|---|---|
| System | 2015-04-30 | 00:01 | 82 | $29,536.14 @ 5.020 / 04/09/2015 - 04/30/2015 | $85.31 |
| System | 2015-05-31 | 00:01 | 82 | $29,536.14 @ 5.020 / 04/30/2015 - 05/31/2015 | $125.93 |
| System | 2015-06-30 | 00:01 | 82 | $29,536.14 @ 5.020 / 05/31/2015 - 06/30/2015 | $121.87 |
| System | 2015-07-01 | 00:01 | 82 | $29,536.14 @ 5.020 / 06/30/2015 - 07/01/2015 | $4.06 |
| System | 2015-07-31 | 00:01 | 82 | $29,536.14 @ 5.030 / 07/01/2015 - 07/31/2015 | $122.11 |
| System | 2015-08-31 | 00:01 | 82 | $29,536.14 @ 5.030 / 07/31/2015 - 08/31/2015 | $126.18 |
| System | 2015-09-30 | 00:01 | 82 | $29,536.14 @ 5.030 / 08/31/2015 - 09/30/2015 | $122.11 |
| System | 2015-10-01 | 00:01 | 82 | $29,536.14 @ 5.030 / 09/30/2015 - 10/01/2015 | $4.07 |
| System | 2015-11-04 | 00:01 | 82 | $29,536.14 @ 5.040 / 10/01/2015 - 11/04/2015 | $138.67 |
| System | 2015-12-31 | 00:01 | 82 | $29,536.14 @ 5.040 / 11/04/2015 - 12/31/2015 | $232.47 |
| System | 2016-01-01 | 00:01 | 82 | $29,536.14 @ 5.040 / 12/31/2015 - 01/01/2016 | $4.07 |
| System | 2016-01-31 | 00:01 | 82 | $29,536.14 @ 5.060 / 01/01/2016 - 01/31/2016 | $122.50 |
| System | 2016-02-29 | 00:01 | 82 | $29,536.14 @ 5.060 / 01/31/2016 - 02/29/2016 | $118.42 |
| System | 2016-03-31 | 00:01 | 82 | $29,536.14 @ 5.060 / 02/29/2016 - 03/31/2016 | $126.59 |
| System | 2016-04-01 | 00:01 | 82 | $29,536.14 @ 5.060 / 03/31/2016 - 04/01/2016 | $4.08 |
| System | 2016-04-30 | 00:01 | 82 | $29,536.14 @ 5.280 / 04/01/2016 - 04/30/2016 | $123.57 |
| System | 2016-05-31 | 00:01 | 82 | $29,536.14 @ 5.280 / 04/30/2016 - 05/31/2016 | $132.09 |
| System | 2016-06-21 | 00:00 | 12 | Interest Office Payment | $100.00 |
| System | 2016-06-21 | 00:00 | 40 | Forward Fee/Gross | $31.00 |
| System | 2016-06-21 | 00:01 | 82 | $29,536.14 @ 5.280 / 05/31/2016 - 06/21/2016 | $89.48 |
| System | 2016-06-30 | 00:01 | 82 | $29,536.14 @ 5.280 / 06/21/2016 - 06/30/2016 | $38.35 |
| System | 2016-07-01 | 00:01 | 82 | $29,536.14 @ 5.280 / 06/30/2016 - 07/01/2016 | $4.26 |
| System | 2016-07-12 | 00:00 | 12 | Interest Office Payment | $100.00 |
| System | 2016-07-12 | 00:00 | 40 | Forward Fee/Gross | $31.00 |
| System | 2016-07-12 | 00:01 | 82 | $29,536.14 @ 5.320 / 07/01/2016 - 07/12/2016 | $47.23 |
| System | 2016-07-22 | 00:00 | 12 | Interest Office Payment | $100.00 |
| System | 2016-07-22 | 00:00 | 40 | Forward Fee/Gross | $31.00 |
| System | 2016-07-22 | 00:01 | 82 | $29,536.14 @ 5.320 / 07/12/2016 - 07/22/2016 | $42.93 |
| System | 2016-08-01 | 00:01 | 82 | $29,536.14 @ 5.320 / 07/22/2016 - 08/01/2016 | $42.93 |
| System | 2016-08-11 | 00:00 | 12 | Interest Office Payment | $100.00 |
| System | 2016-08-11 | 00:00 | 40 | Forward Fee/Gross | $31.00 |
| System | 2016-08-11 | 00:01 | 82 | $29,536.14 @ 5.320 / 08/01/2016 - 08/11/2016 | $42.93 |
| System | 2016-08-23 | 00:00 | 12 | Interest Office Payment | $100.00 |
| System | 2016-08-23 | 00:00 | 40 | Forward Fee/Gross | $31.00 |
| System | 2016-08-23 | 00:01 | 82 | $29,536.14 @ 5.320 / 08/11/2016 - 08/23/2016 | $51.52 |
| System | 2016-08-31 | 00:01 | 82 | $29,536.14 @ 5.320 / 08/23/2016 - 08/31/2016 | $34.35 |
| System | 2016-09-13 | 00:00 | 12 | Interest Office Payment | $100.00 |
| System | 2016-09-13 | 00:00 | 40 | Forward Fee/Gross | $31.00 |
| System | 2016-09-13 | 00:01 | 82 | $29,536.14 @ 5.320 / 08/31/2016 - 09/13/2016 | $55.81 |
| System | 2016-09-21 | 00:00 | 12 | Interest Office Payment | $100.00 |
| System | 2016-09-21 | 00:00 | 40 | Forward Fee/Gross | $31.00 |
| System | 2016-09-21 | 00:01 | 82 | $29,536.14 @ 5.320 / 09/13/2016 - 09/21/2016 | $34.35 |
| System | 2016-09-30 | 00:01 | 82 | $29,536.14 @ 5.320 / 09/21/2016 - 09/30/2016 | $38.64 |
| System | 2016-10-01 | 00:01 | 82 | $29,536.14 @ 5.320 / 09/30/2016 - 10/01/2016 | $4.29 |
| System | 2016-10-05 | 00:00 | 44 | Interest Adjustment | $-24.31 |
| System | 2016-10-05 | 00:01 | 82 | $29,536.14 @ 5.350 / 10/01/2016 - 10/05/2016 | $17.27 |
| System | 2016-10-21 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2016-10-21 | 00:00 | 40 | Forward Fee/Gross | $62.00 |

| | | | | | |
|---|---|---|---|---|---|
| System | 2016-10-21 | 00:01 | 82 | $29,536.14 @ 5.350 / 10/05/2016 - 10/21/2016 | $69.08 |
| System | 2016-10-31 | 00:01 | 82 | $29,536.14 @ 5.350 / 10/21/2016 - 10/31/2016 | $43.17 |
| System | 2016-11-23 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2016-11-23 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2016-11-23 | 00:01 | 82 | $29,536.14 @ 5.350 / 10/31/2016 - 11/23/2016 | $99.30 |
| System | 2016-11-30 | 00:01 | 82 | $29,536.14 @ 5.350 / 11/23/2016 - 11/30/2016 | $30.22 |
| System | 2016-12-21 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2016-12-21 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2016-12-21 | 00:01 | 82 | $29,536.14 @ 5.350 / 11/30/2016 - 12/21/2016 | $90.67 |
| System | 2016-12-31 | 00:01 | 82 | $29,536.14 @ 5.350 / 12/21/2016 - 12/31/2016 | $43.17 |
| System | 2017-01-01 | 00:01 | 82 | $29,536.14 @ 5.350 / 12/31/2016 - 01/01/2017 | $4.33 |
| System | 2017-01-24 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-01-24 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-01-24 | 00:01 | 82 | $29,536.14 @ 5.410 / 01/01/2017 - 01/24/2017 | $100.69 |
| System | 2017-01-31 | 00:01 | 82 | $29,536.14 @ 5.410 / 01/24/2017 - 01/31/2017 | $30.64 |
| System | 2017-02-22 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-02-22 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-02-22 | 00:01 | 82 | $29,536.14 @ 5.410 / 01/31/2017 - 02/22/2017 | $96.31 |
| System | 2017-02-28 | 00:01 | 82 | $29,536.14 @ 5.410 / 02/22/2017 - 02/28/2017 | $26.27 |
| System | 2017-03-21 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-03-21 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-03-21 | 00:01 | 82 | $29,536.14 @ 5.410 / 02/28/2017 - 03/21/2017 | $91.93 |
| System | 2017-03-31 | 00:01 | 82 | $29,536.14 @ 5.410 / 03/21/2017 - 03/31/2017 | $43.78 |
| System | 2017-04-01 | 00:01 | 82 | $29,536.14 @ 5.410 / 03/31/2017 - 04/01/2017 | $4.38 |
| System | 2017-04-21 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-04-21 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-04-21 | 00:01 | 82 | $29,536.14 @ 5.630 / 04/01/2017 - 04/21/2017 | $91.12 |
| System | 2017-04-30 | 00:01 | 82 | $29,536.14 @ 5.630 / 04/21/2017 - 04/30/2017 | $41.00 |
| System | 2017-05-23 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-05-23 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-05-23 | 00:01 | 82 | $29,536.14 @ 5.630 / 04/30/2017 - 05/23/2017 | $104.78 |
| System | 2017-05-31 | 00:01 | 82 | $29,536.14 @ 5.630 / 05/23/2017 - 05/31/2017 | $36.45 |
| System | 2017-06-21 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-06-21 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-06-21 | 00:01 | 82 | $29,536.14 @ 5.630 / 05/31/2017 - 06/21/2017 | $95.67 |
| System | 2017-06-30 | 00:01 | 82 | $29,536.14 @ 5.630 / 06/21/2017 - 06/30/2017 | $41.00 |
| System | 2017-07-01 | 00:01 | 82 | $29,536.14 @ 5.630 / 06/30/2017 - 07/01/2017 | $4.56 |
| System | 2017-07-21 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-07-21 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-07-21 | 00:01 | 82 | $29,536.14 @ 5.860 / 07/01/2017 - 07/21/2017 | $94.84 |
| System | 2017-07-31 | 00:01 | 82 | $29,536.14 @ 5.860 / 07/21/2017 - 07/31/2017 | $47.42 |
| System | 2017-08-22 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-08-22 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-08-22 | 00:01 | 82 | $29,536.14 @ 5.860 / 07/31/2017 - 08/22/2017 | $104.32 |
| System | 2017-08-31 | 00:01 | 82 | $29,536.14 @ 5.860 / 08/22/2017 - 08/31/2017 | $42.68 |
| System | 2017-09-21 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-09-21 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-09-21 | 00:01 | 82 | $29,536.14 @ 5.860 / 08/31/2017 - 09/21/2017 | $99.58 |

| | | | | | |
|---|---|---|---|---|---|
| System | 2017-09-30 | 00:01 | 82 | $29,536.14 @ 5.860 / 09/21/2017 - 09/30/2017 | $42.68 |
| System | 2017-10-01 | 00:01 | 82 | $29,536.14 @ 5.860 / 09/30/2017 - 10/01/2017 | $4.74 |
| System | 2017-10-23 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-10-23 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-10-23 | 00:01 | 82 | $29,536.14 @ 6.080 / 10/01/2017 - 10/23/2017 | $108.24 |
| System | 2017-10-31 | 00:01 | 82 | $29,536.14 @ 6.080 / 10/23/2017 - 10/31/2017 | $39.36 |
| System | 2017-11-21 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-11-21 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-11-21 | 00:01 | 82 | $29,536.14 @ 6.080 / 10/31/2017 - 11/21/2017 | $103.32 |
| System | 2017-11-30 | 00:01 | 82 | $29,536.14 @ 6.080 / 11/21/2017 - 11/30/2017 | $44.28 |
| System | 2017-12-21 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2017-12-21 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2017-12-21 | 00:01 | 82 | $29,536.14 @ 6.080 / 11/30/2017 - 12/21/2017 | $103.32 |
| System | 2017-12-31 | 00:01 | 82 | $29,536.14 @ 6.080 / 12/21/2017 - 12/31/2017 | $49.20 |
| System | 2018-01-01 | 00:01 | 82 | $29,536.14 @ 6.080 / 12/31/2017 - 01/01/2018 | $4.92 |
| System | 2018-01-24 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2018-01-24 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2018-01-24 | 00:01 | 82 | $29,536.14 @ 6.130 / 01/01/2018 - 01/24/2018 | $114.09 |
| System | 2018-01-31 | 00:01 | 82 | $29,536.14 @ 6.130 / 01/24/2018 - 01/31/2018 | $34.72 |
| System | 2018-02-22 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2018-02-22 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2018-02-22 | 00:01 | 82 | $29,536.14 @ 6.130 / 01/31/2018 - 02/22/2018 | $109.13 |
| System | 2018-02-28 | 00:01 | 82 | $29,536.14 @ 6.130 / 02/22/2018 - 02/28/2018 | $29.76 |
| System | 2018-03-22 | 00:00 | 12 | Interest Office Payment | $200.00 |
| System | 2018-03-22 | 00:00 | 40 | Forward Fee/Gross | $62.00 |
| System | 2018-03-22 | 00:01 | 82 | $29,536.14 @ 6.130 / 02/28/2018 - 03/22/2018 | $109.13 |
| System | 2018-03-31 | 00:01 | 82 | $29,536.14 @ 6.130 / 03/22/2018 - 03/31/2018 | $44.64 |
| System | 2018-04-01 | 00:01 | 82 | $29,536.14 @ 6.130 / 03/31/2018 - 04/01/2018 | $4.96 |
| System | 2018-04-06 | 00:01 | 82 | $29,536.14 @ 6.450 / 04/01/2018 - 04/06/2018 | $26.10 |
| System | 2018-04-30 | 00:01 | 82 | $29,536.14 @ 6.450 / 04/06/2018 - 04/30/2018 | $125.27 |
| System | 2018-05-31 | 00:01 | 82 | $29,536.14 @ 6.450 / 04/30/2018 - 05/31/2018 | $161.80 |
| System | 2018-06-30 | 00:01 | 82 | $29,536.14 @ 6.450 / 05/31/2018 - 06/30/2018 | $156.58 |
| System | 2018-07-01 | 00:01 | 82 | $29,536.14 @ 6.450 / 06/30/2018 - 07/01/2018 | $5.22 |
| System | 2018-07-05 | 00:01 | 82 | $29,536.14 @ 6.780 / 07/01/2018 - 07/05/2018 | $21.95 |
| System | 2018-07-31 | 00:01 | 82 | $29,536.14 @ 6.780 / 07/05/2018 - 07/31/2018 | $142.65 |
| System | 2018-08-31 | 00:01 | 82 | $29,536.14 @ 6.780 / 07/31/2018 - 08/31/2018 | $170.08 |
| System | 2018-09-30 | 00:01 | 82 | $29,536.14 @ 6.780 / 08/31/2018 - 09/30/2018 | $164.59 |
| System | 2018-10-01 | 00:01 | 82 | $29,536.14 @ 6.780 / 09/30/2018 - 10/01/2018 | $5.49 |
| System | 2018-10-31 | 00:01 | 82 | $29,536.14 @ 6.950 / 10/01/2018 - 10/31/2018 | $168.72 |
| System | 2018-11-30 | 00:01 | 82 | $29,536.14 @ 6.950 / 10/31/2018 - 11/30/2018 | $168.72 |
| System | 2018-12-31 | 00:01 | 82 | $29,536.14 @ 6.950 / 11/30/2018 - 12/31/2018 | $174.34 |
| System | 2019-01-01 | 00:01 | 82 | $29,536.14 @ 6.950 / 12/31/2018 - 01/01/2019 | $5.62 |
| System | 2019-01-07 | 00:01 | 82 | $29,536.14 @ 7.150 / 01/01/2019 - 01/07/2019 | $34.72 |
| System | 2019-01-31 | 00:01 | 82 | $29,536.14 @ 7.150 / 01/07/2019 - 01/31/2019 | $138.86 |
| System | 2019-02-28 | 00:01 | 82 | $29,536.14 @ 7.150 / 01/31/2019 - 02/28/2019 | $162.00 |
| System | 2019-03-14 | 00:00 | 33 | FILE SUMMONS&COM | $175.00 |
| System | 2019-03-14 | 00:01 | 82 | $29,536.14 @ 7.150 / 02/28/2019 - 03/14/2019 | $81.00 |
| System | 2019-03-31 | 00:01 | 82 | $29,536.14 @ 7.150 / 03/14/2019 - 03/31/2019 | $98.36 |

| System | 2019-04-01 | 00:01 | 82 | $29,536.14 @ 7.150 / 03/31/2019 - 04/01/2019 | $5.79 |
|--------|------------|-------|----|----------------------------------------------|-------|
| System | 2019-04-25 | 00:00 | 33 | SVS OF PROCESS | $47.75 |
| System | 2019-04-25 | 00:01 | 82 | $29,536.14 @ 7.360 / 04/01/2019 - 04/25/2019 | $142.94 |
| System | 2019-04-30 | 00:01 | 82 | $29,536.14 @ 7.360 / 04/25/2019 - 04/30/2019 | $29.78 |
| System | 2019-05-21 | 00:01 | 82 | $29,536.14 @ 7.360 / 04/30/2019 - 05/21/2019 | $125.07 |

Department of Defense Manpower Data Center



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:            XXX-XX-0578

Birth Date:

Last Name:      MERRILL

First Name:     ALLISON

Middle Name:    L

Status As Of:   May-23-2019

Certificate ID: JT2DWMKTDDD0GPF

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. ? 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q33) via this URL: https://scra.dmdc.osd.mil/faq.xhtml#Q33. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. ? 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC ? 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC ? 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC ? 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

# EXHIBIT 2

**FILED**
Bonnie Scheele
Grand Traverse 13th Circuit Court
07/30/2019

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF GRAND TRAVERSE

**NATIONAL COLLEGIATE STUDENT LOAN
TRUST 2005-3, a Delaware Statutory Trust,**

        Plaintiff,

v                                     Case No. 2019034821-CK
                                          Hon. Thomas G. Power

**ALLISON L. MERRILL,**

        Defendant.

_____/

| | |
|---|---|
| Shermeta Law Group, PLLC | The Law Offices of Daniel O. Myers |
| Tricia N. McKinnon (P60448) | Daniel O. Myers (P49250) |
| Attorney for Plaintiff | Attorney for Defendant |
| P.O. Box 5016 | 4020 Copper View, Suite 225 |
| Rochester, MI 48308 | Traverse City, MI 49684 |
| (248) 519-1700 | (231) 943-1135 |

_____/

### PROOF OF SERVICE

I, Elizabeth Corneli, hereby state that I am not a party to the above litigation, that I am employed by SHERMETA LAW GROUP, PLLC., and that on July 30, 2019, I mailed a copy of PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS, BRIEF IN OPPOSITION, EXHIBITS, and this PROOF OF SERVICE to:

Daniel O. Myers
The Law Offices of Daniel O. Myers
4020 Copper View, Suite 225
Traverse City, MI 49684

By placing same in a sealed envelope with first class postage fully prepaid and depositing same in a United States Mail Receptacle.