UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLISON L. MERRILL and
BRITTANY WILK,

                Plaintiffs,                                Hon. Paul L. Maloney

v.                                                    Case No. 1:20-cv-183

TRANSWORLD SYSTEMS, INC., and
U.S. BANK NATIONAL ASSOCIATION,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiffs Allison Merrill and Brittany Wilk filed a putative Class Action Complaint against Defendants Transworld Systems, Inc. (TSI) and U.S. Bank National Association (U.S. Bank), alleging a claim under the Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*., and state-law claims for violation of the Michigan Collection Practices Act (MCPA), Mich. Comp. Laws § 445.251, *et seq*.; the Michigan Occupational Code (MOC), Mich. Comp. Laws § 339.101 *et seq.* (only as to TSI); violation of Mich. Comp. Laws § 600.2907; and for unjust enrichment. TSI and U.S. Bank have filed motions to dismiss the Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **GRANT IN PART AND DENY IN PART** TSI's motion and **GRANT** U.S. Bank's motion.

## I.      BACKGROUND

After defaulting on their private student loans, Plaintiffs Merrill and Wilk were sued in Michigan courts by the National Collegiate Student Loan Trusts (NCSLT) to which their loans

had been transferred, sold, or assigned for securitization. Plaintiffs allege that U.S. Bank and TSI

or its predecessor, which retained the collection attorneys who filed the lawsuits in the names of

the NCSLT Trusts, violated the FDCPA, the MCPA, and the MOC by: (1) falsely representing that

the NCSLT Trusts authorized the filing of the lawsuits and/or collection of the debts, when in fact

no such authorization existed or was rescinded; (2) falsely representing, either expressly or by

implication, that they could prove that the Trusts owned the loans in question, when in fact no

valid and enforceable assignment existed; and (3) in one of the Merrill collection cases, falsely

representing that documents that were filed and served were true and accurate copies of the original

instruments or could be authenticated by TSI. (ECF No. 1 at PageID.14–15, 22–25.) Plaintiffs base

these claims, at least in part, upon the following: (1) a 2015 directive from the NCSLT Trust

Owners to the Trust Administrator to stop providing TSI with defaulted loan files without

additional authorization from the Trusts; (2) a 2018 lawsuit filed by the NCSLT Trusts against

TSI, U.S. Bank, and others in the Chancery Court of Delaware, captioned *National Collegiate

Master Student Loan Trust I*, *et al. v. U.S. Bank, National Association, et al.*, Case No. 2018-0167-

JRS;[1] and (3) a September 15, 2017 Consent Order in Consumer Financial Protection Bureau

---

[1] As U.S. Bank notes in its opening brief, Case No. 2018-0167-JRS was consolidated with *National Collegiate Student Loan Master Trust I v. Pennsylvania Higher Education Assistance Agency*, No. CV 12111-VCS (Del. Ch. Ct.). In his August 27, 2020 Opinion, Vice Chancellor Slights explained the nature of the consolidated cases as a dispute between two factions—the Owners, or holders of the Trusts' residual beneficial interests in the Trusts' assets, i.e., the student loans, on the one hand, and the Indenture Trustee, the Noteholders and a reinsurer for certain of the notes, on the other. *In re Nat'l Collegiate Student Loan Trusts Litig.*, No. CV 12111-VCS, 2020 WL 5049402, at *2 (Del. Ch. Aug. 27, 2020). The court explained:

> The parties' vastly different interpretations of the Trusts' governing documents, and of the resulting transactional structure they created, have left the Trusts in a state of near paralysis. Third parties interacting with the Trusts cannot determine who actually speaks for the Trusts and who has authority to bind the Trusts. The full extent of the Trusts' dysfunction was perhaps most vividly exposed when, on May 31, 2020, the United States District Court for the District of Delaware held

(CFPB) administrative proceeding 2017-CFPB-0018 against TSI imposing a $2.5 million penalty arising out of certain lawsuits on behalf of the Trusts, in which complete documentation required to prove that the Trusts owned the loans did not exist.[2] (*Id.* at PageID.9, 13–14.)

### A.    The Trusts and Servicing of the Student Loans

A rudimentary background of the Trusts, their structure, and functioning is helpful to the analysis of the instant motions. The Trusts are fifteen statutory trusts created pursuant to the Delaware Statutory Trust Act (DSTA), 12 Del. Code § 3801-26, for the limited purposes of (1) acquiring a pool of student loans through the issuance of notes; (2) executing an Indenture; and (3) entering into agreements for the administration of the Trust, including servicing of the student loans. NCSLT 2005-3 Trust Agreement § 2.03.[3] Once the student loans are acquired, the Trusts convey beneficial title to them (and related assets) to the Indenture Trustee for the purpose of securing repayment of the notes. Indenture (Granting Clause).[4]  In addition to the notes, the Trusts

---

that the Trusts' purported act of resolving claims brought against the Trusts by the Consumer Financial Protection Bureau (the "CFPB") for alleged unfair loan collection practices was ineffective. Specifically, the court determined that the proposed consent judgment effecting the settlement was executed on behalf of the Trusts by a party who lacked authority to bind the Trusts.

*Id.* at *3.

[2]  *See*  https://files.consumerfinance.gov/f/documents/201709_cfpb_transworld-systems_consent-order.pdf.

[3] *Available at* https://www.sec.gov/Archives/edgar/data/1338373/000088237705003116/ncslt_ex10-9.htm. The Trust Agreement and related contracts for the NCSLT 2005-3 Trust, one of the trusts relevant to Plaintiffs' allegations, are representative of the other Trust Agreements and related contracts for the other trusts.

[4] *Available at* https://www.sec.gov/Archives/edgar/data/1338373/000088237705003116/ncslt_ex4-1.htm.

created certificates evidencing the residual equity interests of the Trust owners (Residual Owners). NCLST 2005-3 Trust Agreement § 1.01 (defining "Trust Certificate").

The Trusts have no officers or employees, but instead act through an Owner Trustee appointed by the Trust Agreement, in which "all the rights, powers and duties" set forth in the Trust Agreement and the DSTA are vested. Trust Agreement § 2.04. The Trusts also appointed an Administrator that agrees to perform its own duties as well as certain duties of the Trust and the Owner Trustee under the Trust Related Agreements. Administration Agreement § 1(a)–(d);[5] Trust Agreement § 7.11, 8.01, 8.03. Under the Trust Agreement, the Residual Owners have limited rights to direct the Owner Trustee to take certain actions but cannot act directly on behalf of the Trust. Trust Agreement §§ 2.03(b), 4.02(a). The Owner Trustee is not obligated to act on that direction if it is contrary to the terms of the Trust Agreement or related documents. Trust Agreement § 4.02(b); *see also In re Nat'l Collegiate Student Loan Trusts Litig.*, No. 12111-VCS, 2020 WL 5049402, at *10 (Del. Ch. Aug. 27, 2020) ("Indeed, under the Trust Agreement, Owner instructions are improper (and can be ignored by the Owner Trustee) if they contradict the overlapping Trust Related Agreements or undermine the Trusts' narrow purpose.").

The Trusts' operating structure is embodied in certain agreements. For servicing obligations, the various parties entered into Primary Servicer, Special Servicer, and Subservicer agreements. The Administrator entered into certain Servicing Agreements with Pennsylvania Higher Education Assistance Agency (PHEAA) to act as the pre-default servicer in collecting proceeds from the student loans on behalf of the Trust. *Id.* at *5. For special servicing (delinquent and default loan servicing), the Owner Trustee, acting on behalf of the Trusts, First Marblehead

---

[5] *Available at*
*https://www.sec.gov/Archives/edgar/data/1338373/000088237705003116/ncslt_ex10-10.htm*.

Education Resources (FMER), and U.S. Bank entered into a Special Servicing Agreement (SSA) for collection of delinquent or defaulted loans and U.S. Bank to act as Back-Up Special Servicer. (ECF No. 11-3.) Pursuant to a September 26, 2008 agreement, when loans reach a certain level of delinquency, PHEAA is required to transfer those loans to the Special Servicer. The SSA designated FMER as Special Servicer and U.S. Bank (which also served as the Indenture Trustee) as the Back-Up Special Servicer to become the Successor Special Servicer automatically in the event FMER resigned or was removed as the Special Servicer. (SSA § 8, ECF No. 11-3 at PageID.142.) In addition, FMER entered into a Default Prevention and Collection Services Agreement (TSI Agreement) with TSI's predecessor, NCO Financial Systems, Inc. (NCO), pursuant to which NCO agreed to serve as a Special Sub-Servicer in the event that U.S. Bank became the Successor Special Subservicer. The TSI Agreement is incorporated into the SSA by reference and attached to the SSA as an exhibit. (SSA § 8.G & Ex. II, ECF No. 11-3 at PageID.145, 169.)

U.S. Bank became the Successor Special Servicer on June 21, 2012, when FMER resigned. (ECF No. 1 at PageID.8.) Thus, pursuant to the TSI Agreement, NCO became the Special Subservicer. As Successor Special Servicer, U.S. Bank was neither required nor permitted "to undertake direct collection or enforcement activities . . . with respect to consumer borrowers or other consumer obligors." (SSA § 8A, ECF No. 11-3 at PageID.142.) Instead, NCO was responsible for all collection activities, including administering all collection litigation, selecting, supervising, and paying collection attorneys, and providing evidentiary support for collection attorneys. (TSI Agreement § 2.4(a)–(c), ECF No. 11-4 at PageID.175.) TSI succeeded NCO as the Special Subservicer in 2014.

**B.     The Collection Lawsuits against Merrill and Wilk**

In March 2019, the Shermeta Law Group, acting on behalf of TSI, filed a lawsuit in the

Grand Traverse County Circuit Court in the name of NCLST 2005-3 against Merrill, seeking to

collect $36,816.10 on a Note that had allegedly been assigned to NCSLT Trust 2005-3. (ECF No.

1-1.) During the action, TSI employees created and submitted an affidavit executed by TSI

employee Jennifer A. Audet, who attested that the document attached as an exhibit to the affidavit

was a "true copy" of the underlying Note for the loan on which the action was based, when in fact,

the exhibit was constructed from pages of two separate documents and was created by TSI's

"affidavit production team." (ECF No. 1 at PageID.14–15.) Plaintiffs allege that Ms. Audet had

no knowledge as to whether the terms attached to the signature page were the actual terms and

conditions of the note the Merrill signed. They further allege that Ms. Audet lacked knowledge of

how the documents were created by the original lender or how they were maintained prior to

transmittal to TSI. TSI ultimately dismissed the action with prejudice. (*Id.* at PageID.15.)

The Shermeta Law Group filed another collection action against Merrill on March 13, 2019

in the Leelanau County Circuit Court on behalf of TSI but in the name of NCSLT 2006-4. The

complaint alleged that Merrill owed $42,033.92 on a Note that had been assigned to NCSLT 2006-

4. TSI ultimately dismissed this lawsuit with prejudice. (*Id.*)

In 2014, TSI or NCO obtained judgments against Wilk in two cases in the Washtenaw

County Circuit Court, captioned *National Collegiate Student Loan Trust 2006-3 v. Brittany Wilk*,

Case No. 131036-CK, and *National Collegiate Student Loan Trust 2004-2 v. Brittany Wilk*, Case

No. 14477-CK. On or about November 4, 2019, TSI served a writ of garnishment in Case No.

131036 on the Michigan Department of Treasury seeking to attach Wilk's Michigan income tax

refund. On September 10, 2019, TSI served a writ of periodic garnishment on Wilk's employer,

seeking to garnish her paycheck. As a result of the garnishment, Wilk has had her personal funds seized by TSI. (*Id.* at PageID.16–17.)

## II.    MOTION STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court has held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."   If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided they are referenced in the complaint and central to its claims. *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008).

## III.    DISCUSSION

### A.    Plaintiff Wilk—Collateral Estoppel

TSI contends that Plaintiff Wilk is collaterally estopped from arguing that TSI (or its predecessor) obtained the judgments against her without authorization from the Trusts and that the chain of title to the loans was defective. "Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Abbott v. Michigan.*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738). Because the state-court proceedings occurred in Michigan, the Court applies Michigan law. In Michigan, collateral estoppel has three elements: (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment; (2) the parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel. *See Storey v. Meijer, Inc.*, 431 Mich. 368, 373 n.3 (1988). An issue is "actually litigated" if the party opposing estoppel "had a full and fair opportunity to litigate the issue." *People v. Gates*, 434 Mich. 146, 156–57 (1990). The Michigan Supreme Court has stated that "'a default judgment is just as conclusive an adjudication and as binding upon the parties of whatever is essential to support the judgment as one which has been rendered following answer and contest.'" *Barnes v. Jeudevine*, 475 Mich. 696, 705 (2006) (quoting *Perry & Derrick Co. v. King*, 24 Mich. App. 616, 620 (1970) (bracket omitted); *see also Eager v. Credit Bureau Collection Servs., Inc.*, Nos. 1:13-cv-30, 1:13-cv-84, 1:13-cv-159, 1:13-cv-173,

8

1:13-cv-261, 1:13-cv-267, 1:13-cv-341, 2013 WL 5719224, at *3 and n.6 (W.D. Mich. Oct. 18, 2013); *Fifth Third Bank v. U.S. Dep't of Agriculture–Rural Dev.*, No. 1:12-cv-1123, 2013 WL 529858, at *3 (W.D. Mich. Feb. 11, 2013).

All of the elements of collateral estoppel are present in this case. First, the issues Plaintiff Wilk asserts in this case—TSI's or its predecessor's authority to initiate the collection lawsuits on behalf of the Trusts and proof that the Trusts owned Wilk's student loans—were factual questions essential to entry of the judgments against Wilk. Second, Wilk had a full and fair opportunity to litigate these issues. "A default judgment is treated the same as a litigated judgment for purposes of res judicata and is considered a decision on the merits." *Richards v. Tibaldi*, 272 Mich. App. 522, 531 (2006). Finally, mutuality of estoppel is present because TSI would be bound by judgments against it (or its predecessor) in the Wilk cases had they been entered in favor of Wilk. *See Braton v. Litchalk*, 55 Mich. App. 708, 720 (1974) (stating that mutuality of estoppel "exists if a person attempting to take advantage of the earlier judgment would have been bound by it if it had gone against him") (citing *Howell v. Vito's Trucking & Excavating Co.*, 386 Mich. 37, 43 (1971)).

Plaintiffs argue that collateral estoppel is inapplicable because Wilk's claims are not based on the default judgments entered in 2014, but instead on the garnishments that TSI filed in 2019. Plaintiffs allege that, in filing the garnishments, TSI represented, explicitly and/or implicitly, that the Trusts had authorized the garnishments when, in fact, TSI filed them in the name of the Trusts without their authorization or consent.[6] (ECF No. 21 at PageID.359–60.) Plaintiff Wilk cites *Todd*

---

[6] Plaintiffs also argue that they alleged that, in connection with the issuance of the Wilk garnishments, TSI represented that it had reviewed the file, but its employees did not actually do so and instead acted as a "robo-signer." However, these allegations pertain to TSI's activity during collection lawsuits generally rather than to its activity in filing the Wilk garnishments. (ECF No.

*v. Weltman, Weinberg & Reis Co.*, 434 F.3d 432 (6th Cir. 2006), and *Vanderkodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397 (6th Cir. 2020), to support her argument that she is attacking the garnishment, not the judgment. But *Todd* and *Vanderkodde* both dealt with the *Rooker-Feldman* doctrine, not preclusion doctrines. TSI does not argue that Plaintiffs claim injury from the state-court judgments and thus does not ask the Court to apply *Rooker-Feldman*. *See Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (holding that *Rooker-Feldman* "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"). The Sixth Circuit recognized in both cases that state-law preclusion doctrines may still apply even where the *Rooker-Feldman* doctrine does not. *Vanderkodde*, 951 F.3d at 404; *Todd*, 434 F.3d at 437.

In contrast to *Vanderkodde* and *Todd*, Wilk's claims in this case are not based on new violations that occurred in connection with the garnishment, but upon Plaintiff's allegation that TSI filed the garnishments without the Trusts' authorization or consent. However, this issue was necessarily and conclusively determined when the state courts entered the default judgments against Wilk in the state-court actions.[7] Thus, Wilk's claims are barred by collateral estoppel.[8]

---

1 at PageID.11–12.) Plaintiffs do not allege that TSI submitted an affidavit in support of the Wilk garnishments.

[7] To the extent Wilk argues that, subsequent to entry of the judgments, the Trusts withdrew their authorization for TSI to pursue collection of the judgments, this allegation fails for the reasons set forth below in Section B.1.b.

[8] Because Wilk's claims are barred by collateral estoppel, the Court need not address U.S. Bank's argument that Wilk's FDCPA claim is barred by the FDCPA one-year statute of limitations and her MCPA is partially barred because the 2013 Washtenaw County collection case was filed outside of the six-year limitations period set forth in Mich. Comp. Laws Section 600.5813.

### B.    FDCPA Claim

#### 1.    TSI

TSI argues that Plaintiffs fail to state a FDCPA claim against it because Plaintiffs do not allege that TSI itself did anything to violate the Act. In fact, TSI notes, the Merrill state-court complaints that Plaintiffs attached to their complaint in this case plainly show that the Shermeta Law Group—not TSI—filed the collection actions against Merrill (and presumably Wilk). In other words, TSI argues, it did not act as "debt collector" toward Plaintiffs for purposes of the FDCPA. TSI further argues that the records custodian affidavit it filed in the Merrill case in Grand Traverse County Circuit Court cannot give rise to a FDCPA claim because the records custodian's representations in the affidavit were not made for the purpose of collecting a debt.

The FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. To state a claim under § 1692e, "(1) plaintiff must be a 'consumer' as defined by the Act; (2) the "debt" must arise out of transactions which are 'primarily for personal, family or household purposes;' (3) defendant must be a 'debt collector' as defined by the Act; and (4) defendant must have violated § 1692e's prohibitions." *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012) (citing *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 926 (N.D. Ohio 2009)). As noted above, Plaintiffs allege that TSI violated the FDCPA by: (1) filing lawsuits and collecting judgments in the name of the NCSLT Trusts when it was not authorized to do so; (2) falsely asserting in lawsuits that an unbroken chain of title from the original lender to the NCSLT Trusts existed; and (3) submitting documents as true copies that were created by TSI's staff and/or falsely affirming that the affiant had first-hand knowledge of how the documents were created or maintained prior to their transfer to TSI. In particular, Plaintiffs allege that TSI violated

11

15 U.S.C. § 1692e(2)(A) by falsely representing "the character, amount, or legal status of [the] debt[s]." (ECF No. 1 at PageID.21.)

      **a.**      ***Debt Collector Status***

The FDCPA defines the term "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Thus, a person may be a "debt collector" if (1) debt collection is the principal purpose of the person's business; or (2) the person "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Whether a defendant qualifies as a "debt collector" depends, not on the defendant's alleged conduct in the particular case, but on the defendant's regular activity. *See Golliday v. Chase Home Fin., LLC*, 761 F. Supp. 2d 629, 635 (W.D. Mich. 2011) (noting that "the court must look beyond the facts of the particular case to determine whether a defendant's 'principal purpose' is to collect debts or whether the defendant regularly engages in collecting debts"). In other words, "the focus is not on the events of the particular transaction but on the principal purpose of the defendant's business and/or the defendant's regular activities." *Id.* (internal quotation marks omitted) (quoting *Stamper v. Wilson & Assoc. PLLC*, No. 3:09-cv-270, 2010 WL 1408585, at *8 (E.D. Tenn. Mar. 31, 2010)); *see also Schroyer v. Frankel*, 197 F.3d 1170, 1176 (6th Cir. 1999) (stating that to prove that an attorney or a law firm "regularly" collects debts for purposes of the FDCPA, a plaintiff must show that the attorney or law firm "collects debts as a matter of course for its clients or for some clients, or collects debts as a substantial, but not principal, part of his or its general law practice").

TSI makes two related arguments regarding its debt collector status. First, it contends that, because Plaintiffs fail to allege that TSI itself took any action toward collecting the debts in a communication that contained the alleged misrepresentations and because the Merrill state-court complaints attached to the complaint in this case show that the collection actions were filed by attorneys of record on behalf of the Trusts, not by TSI, TSI did not act as a "debt collector" in this case. (ECF No. 14 at PageID.210 (arguing that "TSI is not subject to FDCPA liability because it did not act as a 'debt collector' with respect to the plaintiffs and the subject loans"); (ECF No. 24 at PageID.560 ("Regardless, TSI's role in the debt collection industry generally has no probative value as to whether TSI is a 'debt collector ' in this case.").) This argument lacks merit for, as explained in *Golliday*, *supra*, in determining whether a defendant is a "debt collector" under the FDCPA, the focus is not on the conduct at issue but on the defendant's regular activities. Here, Plaintiffs allege that TSI is a "debt collector" as defined by the FDCPA because its principal business is the collection of debts and it regularly collects and attempts to collect debts due, owed or asserted to be due or owed to other persons or companies. (ECF No. 1 at PageID.1–2.) TSI does not contend that this allegation is insufficient to establish that it is a "debt collector," nor does it deny that its principal business is the collection of debts owed to another. The TSI Agreement is compelling proof of this fact.

TSI further argues that, with the exception of providing the records custodian affidavit (which it argues cannot support an FDCPA claim), it did not violate the FDCPA because it did not engage in debt collection. This argument ignores Plaintiffs' allegations that TSI uses an "Attorney Network" to initiate collection actions on behalf of the Trusts; TSI's "legal compliance managers" direct the attorneys that TSI retains; and "TSI directs the litigation, responds to discovery requests, and confers with the attorneys ostensibly representing the NCSLT Trusts." (ECF No. 1 at

PageID.9.) Plaintiffs further allege that the Shermeta Law Group filed the collection actions against Merrill on behalf of TSI. (*Id.* at PageID.14.)

TSI's argument is essentially that a debt collector cannot be liable for another debt collector's FDCPA violations, but it cites no authority for this proposition. However, *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103 (6th Cir. 1996), which U.S. Bank cites in support of its motion to dismiss, suggests TSI's argument is flawed. There, Credit Acceptance Corp. (CAC) provided dealer financing for used cars. Once the dealer completed the contract and sale, the contract was automatically assigned to CAC. Following the assignments of their contracts, the plaintiffs defaulted on their loans, and CAC retained counsel to file lawsuits. The plaintiffs sued both CAC and the law firm alleging FDCPA violations based on the law firm's debt collection activity. *Id.* at 105–06. Because it concluded that CAC was not a debt collector, the Sixth Circuit held that the district court properly granted CAC summary judgment. *Id.* at 107–08. Here, TSI, although similarly situated to CAC, *is* alleged to be a debt collector and thus can be liable for its attorneys' debt collection activity. *See White v. Sherman Fin. Grp., LLC*, 984 F. Supp. 2d 841, 853 (E.D. Tenn. 2013) (noting that under *Wadlington*, where a defendant is a debt collector under the FDCPA, it may be held vicariously liable for FDCPA violations committed by an attorney it hires who also qualifies as a debt collector). Moreover, another district court has previously rejected the same argument by TSI. *See Lizarraga-Davis v. Transworld Sys., Inc.*, No. 18-cv-04081, 2019 WL 8263436, at *5 (N.D. Cal. Aug. 29, 2019) (rejecting TSI's summary judgment argument that the plaintiff failed to identify any collection activity by TSI; the plaintiff alleged that TSI directed the law firm's collection efforts, and TSI failed to present any evidence refuting this theory). TSI's argument has no more merit here, at least on a motion to dismiss.

14

### b.    *FDCPA Violation*

TSI argues that Plaintiffs have not adequately pled an FDCPA claim against TSI because the representations in the records custodian affidavit that TSI provided in the Merrill case were not made "in connection with the collection of any debt" as required by 15 U.S.C. § 1692e. TSI does not address the two violations Plaintiffs allege in connection with the filing of the complaint. Nonetheless, before reaching TSI's affidavit argument, I explain why Plaintiffs' allegation that TSI filed the lawsuits without the Trusts' authorization does not raise a plausible FDCPA violation and should be dismissed.

First, to the extent Plaintiffs assert that the Trusts never authorized TSI to service the loans or file the lawsuits in the first place, they provide no factual support for this conclusion. Moreover, as U.S. Bank demonstrates in its brief in support of its motion to dismiss, the SSA and the incorporated-by-reference TSI Agreement plainly refute Plaintiffs' allegation. As mentioned above, the Owner Trustee—at the time, Wilmington Trust Company—had "all the rights, powers and duties" set forth in the Trust Agreement and was a party to the SSA. (ECF No. 11-3 at PageID.136, 157.) The SSA authorized FMER, and later NCO/TSI, through the TSI Agreement, to facilitate "the enforcement and collection of Delinquent Loans and Defaulted Loans to maximize the collection of amounts payable on the Student Loans," by, among other things, "[r]etaining counsel on behalf of the applicable Trust . . . to further pursue enforcement and collection of Delinquent Loans and Defaulted Loans, including through litigation . . . ." (SSA, § 2B(xv), ECF No. 11-3 at PageID.136, 139; *see also* TSI Agreement § 2.4 ("Litigation Management"), ECF No. 11-4 at PageID.175–76.) Thus, contrary to Plaintiffs' allegation, the Trusts specifically authorized TSI to file lawsuits to collect the student loans. As for Plaintiffs' allegation that the Residual Owners issued a directive to the Administrator in 2015 to stop

providing TSI with defaulted loan files, it is inaccurate. Instead, the Owner Trustee directed the Administrator "to immediately cease and desist from giving any direction to PHEAA." *National Collegiate Master Student Loan Trust I v. U.S. Bank Nat'l Assoc.*, No. 2018-0167-JRS, 2018 WL 3094756 (Del. Ch. Ct. June 15, 2018) (Verified Am. Compl. ¶ 60(2)).

Similarly, Plaintiffs' allegation that the Trusts filed suit in Delaware Chancery Court in 2018 against TSI and U.S. Bank seeking an injunction to prevent TSI from continuing to act without authorization is inaccurate. Instead, the action was filed by the Residual Owners, rather than the Owner Trustee, on behalf of the Trusts. *See In re Nat'l Collegiate Student Loan Trusts Litig.*, 2020 WL 5049402, at *2 (characterizing the Trust-related disputes as between two factions—the Residual Owners and the Noteholders (and the Indenture Trustee)—pulling the Owner Trustee in two directions). And as the District of Delaware has recently concluded, "unless the Trust Related Agreements provide otherwise, the Trusts are 'managed by or under the direction of' their trustee(s) and neither the power to direct such trustee(s) or other persons nor the exercise of such power by any person(s) (including the beneficial owner(s)) causes such person(s) to be a trustee, *i.e.* to assume the powers and responsibilities of a trustee." *Consumer Fin. Prot. Bureau v. National Collegiate Master Student Trust*, No. 17-1323, 2020 WL 2915759, at *3 (D. Del. May 31, 2020) (quoting DSTA § 3806(a)). In other words, the Owner Trustee not only may, but must, refuse the Residual Owners' directions when are contrary to the Trust Related Agreements. In any event, Plaintiffs allege no fact establishing that TSI was removed as, or does not remain, the Special Subservicer authorized to engage in collection activity on behalf of the Trusts.

Returning to TSI's argument, TSI contends that application of the factors set forth in *Goodson v. Bank of America, N.A.*, 600 F. App'x 422 (6th Cir. 2015), to the records custodian affidavit shows that TSI did not provide the affidavit in connection with the collection of a debt.

As TSI notes, to determine whether a communication is actionable under the FDCPA at the pleading stage, "the question for the Court is whether it is plausible, based on the facts alleged in the complaint, that one of the purposes animating the defendant's decision to send the communication was to induce payment." *Underhill v. Best*, No. 2:17-cv-154, 2018 WL 2150464, at *3 (W.D. Mich. May 10, 2018) (citing *Estep v. Manley Deas Kochalski*, 552 F. App'x 502, 505 (6th Cir. 2014)). In *Goodson*, the court cited the following factors as relevant to the whether a communication's animating purpose was to induce payment by the debtor: (1) the nature of the relationship of the parties; (2) whether the communication expressly demanded payment or stated a balance due; (3) whether it was sent in response to a inquiry or request by the debtor; (4) whether the statements were part of a strategy to make payment more likely; (5) whether the communication was from a debt collector; (6) whether the communication stated that it was an attempt to collect a debt; and (7) whether it threatened consequences should the debtor fail to pay. 600 F. App'x at 431 (citing *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011), and *McDermott v Randall S. Miller & Assocs., P.C.*, 835 F. Supp. 2d 362, 370–71 (E.D Mich. 2011)).

TSI contends that because the records custodian affidavit was provided to Merrill's counsel in response to discovery he had propounded in the collection suit, the animating purpose of the affidavit was not debt collection, but to comply with the state-court rules regarding discovery.[9]

---

[9] Plaintiffs attached a copy of the Audet affidavit to their complaint. (ECF No. 1-2.) Although Plaintiffs did not expound on the circumstances under which the affidavit was furnished, TSI has attached to its brief a declaration from Eduardo Pallares, an attorney with the Shermeta law firm who served as counsel for Plaintiff Merrill in the Grand Traverse County Circuit Court case. (ECF No. 14-2.) Attorney Pallares states that the affidavit was provided as part of a response to Merrill's motion to compel discovery in that case. TSI argues that the Court may consider the response to the motion to compel in deciding the motion to dismiss because Plaintiffs referred to the affidavit in their complaint and it is a public record because it was filed in the Merrill lawsuit. Plaintiffs do not dispute this contention. Because the documents attached to the Pallares declaration were filed

17

TSI further argues that the majority of the *Goodson* factors demonstrate that the affidavit was not provided for purposes of debt collection. Plaintiffs dispute that the *Goodson* factors are even applicable in this case because they were intended to evaluate letters sent directly to consumers rather than affidavits prepared in connection with debt collection litigation. The Court need not decide whether *Goodson* applies to litigation-related affidavits because even if it does, those factors, and the context in which TSI provided the affidavit, support a plausible claim that an animating purpose of the affidavit was to induce payment on a debt. While TSI is correct that the Shermeta firm provided the affidavit in order to comply with applicable discovery rules, TSI ignores that the affidavit was provided in the context of a debt collection suit, and the information it provided served to establish both the validity of the debt and its path from Charter One Bank, N.A. to NCSLT 2005-3. The goal of the lawsuit was to obtain payment. Given this context, *Goodson* factors (1) through (5) indicate that an animating purpose of the affidavit was to induce payment. First, as to the parties' relationship, although TSI did not directly provide the affidavit to Merrill's counsel, TSI was the Subservicer charged with collecting Merrill's loan, it retained the Shermeta firm to sue Merrill on behalf of the Trusts, and it oversaw the litigation. TSI was more than simply a passive keeper of the records. Second, the affidavit did not demand payment, but it did state the amount due as May 23, 2019. (ECF No. 1-2 at PageID.33.) Third, the affidavit was provided in response to a discovery request by Merrill's counsel, which *might* indicate that it was not part of a debt collection effort. But the affidavit was more than "merely a ministerial response to a debtor inquiry." *Grden*, 643 F.3d at 173. Rather, TSI provided it in the course of litigation as one necessary step toward securing a judgment. In other words, the affidavit made the

---

in the Merrill lawsuit, the Court will consider them. *See Granader v. Public Bank*, 417 F.2d 75, 82–83 (6th Cir. 1969) ("Federal courts may take judicial notice of proceedings in other courts of record.") (collecting cases).

litigation "more likely to succeed." *Id.* Fifth, as explained above, TSI was a debt collector. As for the last two factors, while the affidavit did not provide the FDCPA debt collection warning or threaten consequences, the absence of those characteristics does not undermine the plausibility of the claim.

Accordingly, Plaintiff Merrill has stated a valid FDCPA claim against TSI based on the alleged false misrepresentation that the Trusts owned the loans in question and the filing of a false or misleading affidavit in the Merrill Grand Traverse County Circuit Court case. However, Plaintiff Merrill's claim that TSI filed the lawsuits without authorization from the Trusts fails to state a claim. In addition, the portion of Plaintiffs' claim based on § 1692f(1), which prohibits "[t]he collection any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law," is subject to dismissal. The complaint alleges no facts to support such a claim, and Plaintiffs fail to respond to TSI's argument for dismissal of this portion of the claim.

### 2. U.S. Bank

U.S. Bank argues that Plaintiff's FDCPA claim against it must be dismissed because Plaintiffs fail to allege that it is a debt collector. As noted above, the FDCPA's definition of "debt collector" contains two prongs or categories: the "principal purpose" prong and the "regularly collects" prong. Plaintiffs do not allege that U.S. Bank qualifies as a debt collector under the "principal purpose" prong. Plaintiffs' sole allegation pertaining to U.S. Bank's debt collector status is that "U.S. Bank, through TSI, regularly collects debts allegedly owed to various NCSLT Trusts, and thus is a 'debt collector' as defined in Section 803(6) of the [FDCPA]." (ECF No. 1 at PageID.2.) Plaintiffs do not allege that U.S. Bank regularly collects debts itself, that is, that U.S. Bank performs direct debt collection in its role as Special Servicer or otherwise. Such an allegation

would be at odds with the SSA, which provides that the Back-Up Special Servicer (U.S. Bank) is not "require[d] or permit[ted] . . . to undertake direct collection or enforcement activities . . . with respect to consumer borrowers or other consumer obligors." (SSA, § 8.A., ECF No. 11-3 at PageID.142.) Plaintiffs also allege that U.S. Bank retains control over various aspects of TSI's debt collection activities and that TSI acts as U.S. Bank's agent. (ECF No. 1 at PageID.8.) Because Plaintiffs do not allege that U.S. Bank directly participated in any of TSI's debt collection activities, their claim against U.S. Bank is founded on a theory of vicarious liability for TSI's violations.

Courts within the Sixth Circuit have recognized that vicarious liability may be imposed against a principal for its debt collector-agent's FDCPA violations. *See White*, 984 F. Supp 2d at 853 (collecting cases). A principal will be held vicariously liable, however, only where it is itself a debt collector. *See Havens-Tobias v. Eagle*, 127 F.Supp.2d 889, 897–98 (S.D. Ohio 2001) (stating that "the law holds that '[l]iability under the FDCPA is possible only if one is a 'debt collector' within the meaning of the Act'") (quoting *West v. Costen*, 558 F. Supp. 564, 573 (W.D. Va. 1983)). As the Sixth Circuit stated in *Wadlington*, "it would [not] accord with the intent of Congress, as manifested in the terms of the Act, for a company that is *not* a debt collector to be held vicariously liable for a collection suit filing that violates the Act only because the filing attorney is a 'debt collector.'" 76 F.3d at 108 (italics in original).

Plaintiffs' theory alleged in their complaint is that U.S. Bank is an indirect debt collector through its association with TSI. In cases such as this, where the plaintiff alleges that an entity defendant is an indirect debt collector by reason of another entity's debt collection activity, courts have required a showing that the two entities constitute a "single economic enterprise"—a showing akin to that required for corporate veil piercing—to render the entity a debt collector. *See Gold v.*

*Midland Credit Mgmt., Inc.*, 82 F.Supp.3d 1064, 1072 (N.D. Cal. 2015) (proof of indirect debt collector status "requires an examination of the relationship between" the two companies); *Johnson v. Midland Credit Mgmt. Inc.*, No. 1:05-cv-1094, 2006 WL 2473004, at *14 (N.D. Ohio Aug. 24, 2006) ("To prove Encore is an indirect debt collector which may be held liable for the acts of its debt collection subsidiary, Johnson must pierce the corporate veil.") (citing, among others, *Crawford v. Equifax Payment Servs.*, No. 97 C 4240, 1998 WL 704050, at *10 (N.D. Ill. Sept. 30, 1998)); *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1142–43 (N.D. Ill. 1998) ("To find Union liable as an indirect debt collector under the FDCPA, plaintiffs must show Union and Transworld share an interdependence that renders them a 'single economic enterprise.'") (quoting *Harrison v. NBD, Inc.*, 968 F. Supp. 837, 845 (E.D.N.Y. 1997)). For example, in *United States v. ACB Sales & Service, Inc.*, 590 F. Supp. 561 (D. Ariz. 1984), an action under the Federal Trade Commission Act against an FDCPA debt collector, the court found that a corporate parent and its sixteen subsidiary collection agencies constituted "one economic enterprise" based on the companies' appearance to the public, their actual interdependent relationship, the letterhead and logo of each subsidiary indicating that it was a collection agency owned by the parent, use of common facilities, and an interlocking directorate. *Id.* at 574–75. Here, Plaintiff's allegation that U.S. Bank regularly collects debts through TSI is a bare legal conclusion that falls far short of "nudge[ing] their claim[] [against U.S. Bank] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. There is no plausible factual basis in the complaint to support that U.S. Bank and TSI constitute a single economic enterprise or are so entwined that their separate existences should be disregarded.

Plaintiffs do not address the insufficiency of their indirect debt collector allegation. Instead, they point to *Winne v. National Collegiate Student Loan Trust 2005-1*, 228 F. Supp. 3d 141 (D.

Me. 2017), in which the court concluded that the plaintiff sufficiently alleged that U.S. Bank is a debt collector because the "regularly collects" prong of the FDCPA's "debt collector" definition includes both direct and indirect debt collection, and the plaintiff had alleged that U.S. Bank is a Special Servicer to the Trusts and had hired TSI to collect debts. *Id.* at 152–53. *Winne*, a district court case, is not binding on this Court and did not apply Sixth Circuit law. Its reasoning is also unpersuasive. As U.S. Bank notes, the *Winne* court conflated the "debt collector" and vicarious liability analysis without inquiring as to whether the plaintiff had alleged sufficient facts to conclude that U.S. Bank and TSI constitute a single economic enterprise such that U.S. Bank can be considered an indirect debt collector. For example, as *Wadlington* illustrates, a client may hire a debt-collector attorney to sue on a debt, thereby forming a principal-agent relationship, but if the client does not independently qualify as a debt collector, it cannot be held liable for the attorney's FDCPA violations. *See Havens-Tobias*, 127 F.Supp.2d at 897–98. U.S. Bank's authority to coordinate and oversee TSI's debt collection activities is pertinent to the issue of agency but is not determinative of whether U.S. Bank is an indirect debt collector.

Plaintiffs also argue that U.S. Bank is a debt collector because, under the SSA, it regularly collects debts. This assertion or theory does not appear in the complaint. Regardless, it ignores the interplay between the SSA and the TSI Agreement. As discussed above, the SSA, which incorporated the TSI Agreement by reference, recognized that at some point, U.S. Bank might succeed FMER as the Special Servicer, and in that event, NCO (and TSI as NCO's successor) would assume the enforcement and collection obligations set forth in Section 2.B. of the SSA that FMER had been performing. Section 8.A. of the SSA, which states that U.S. Bank "shall assume the rights, duties and obligations of the Special Servicer *to the extent expressly required to be assumed and performed* by the Back-Up Special Servicer under this Agreement," and that "nothing

22

in this Agreement shall be construed to require or permit . . . [U.S. Bank] to undertake direct collection or enforcement activities including, without limitation, Early Awareness Services, with respect to consumer borrowers or other consumer obligors," underscores the parties' intent that U.S. Bank would not perform debt collection in its role as Special Servicer. (SSA, § 8.A., ECF No. 11-3 at PageID.142 (italics added).) Thus, the SSA does not show what Plaintiffs claim. Accordingly, the FDCPA claim should be dismissed against U.S. Bank.

### C.      MCPA and MOC Claims

TSI moves to dismiss the MCPA and MOC claims as a follow-on to its argument for dismissal of the FDCPA claim. As the parties recognize, the MCPA and MOC contain language that is very similar to that of the FDCPA. *See Gamby v. Equifax Info. Servs. LLC*, 462 F. App'x 552, 556 n.5 (6th Cir. 2012) (noting similarly between FDCPA and MCPA); *Nelski v. Risk Mgmt. Alternatives, Inc.*, No. 01-cv-71974-DT, 2005 WL 1038788, at *5 (E.D. Mich. Apr. 21, 2005) (noting that the FDCPA and the MCPA prohibit similar behavior). Thus, "MCPA claims which simply duplicate . . . claims under the FDCPA need not be addressed separately." *Comer v. Roosen Varchetti & Olivier, PLLC*, No. 17-13218, 2018 WL 5719793, at *4 (E.D. Mich. Nov. 1, 2018) (internal quotation marks omitted). Likewise, because the MOC's prohibitions are similar to those of the FDCPA, *see* Mich. Comp. Laws § 339.915(e) (prohibiting a licensee from making an "inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt"), courts may analyze MOC claims in the same manner as FDCPA claims. *See Boozer v. Enhanced Recovery Co.*, No. 17-cv-14190, 2019 WL 5295730, at *12 (E.D. Mich. Oct. 18, 2019). Because TSI offers no independent basis for dismissal of the MCPA and MOC claims, both claims should be allowed to proceed with the exception of Plaintiff's allegation that that TSI falsely represented that the NCSLT Trusts had authorized the filing of the lawsuits to collect the debts.

23

U.S. Bank argues that it is entitled to dismissal of the MCPA claim because Plaintiffs merely recite that U.S. Bank is a "regulated person" under the MCPA without alleging any factual basis showing that Plaintiff falls into any of the categories of businesses included within the definition of "regulated person" under the statute. *See* Mich. Comp. Laws. § 445.251(g). Plaintiffs do not directly address this argument. Instead, they assert that U.S. Bank may be held vicariously liable for the collection activity of TSI, which is a "regulated person" under the MCPA. (ECF No. 21 at PageID.359.) Applying the rationale of *Wadlington* in relation to the FDCPA, however, U.S. Bank may not be held liable under the MCPA for the acts of a "regulated person" unless U.S. Bank is itself a "regulated person" because the statute prohibits certain acts only by "[a] regulated person." Mich. Comp. Laws § 445.252. Accordingly, U.S. Bank is entitled to dismissal of the MCPA claim.

### D.    Violation of Mich. Comp. Laws § 600.2907

Count IV alleges a claim pursuant to Mich. Comp. Laws § 600.2907. The statute provides, in pertinent part:

> Every person who shall, for vexation and trouble or maliciously, cause or procure any other to be arrested, attached, or in any way proceeded against, by any process or civil or criminal action, or in any other manner prescribed by law, to answer to the suit or prosecution of any person, without the consent of such person, or where there is no such person known, shall be liable to the person so arrested, attached or proceeded against, in treble the amount of the damages and expenses which, by any verdict, shall be found to have been sustained and incurred by him . . . .

Mich. Comp. Laws § 600.2907.

Defendants argue that this claim is insufficiently pled because it fails to allege the elements of a common-law claim of malicious prosecution. To maintain a common-law action for malicious prosecution, a plaintiff must show that: (1) prior proceedings terminated in favor of the plaintiff; (2) the absence of probable cause for those proceedings; (3) malice, defined as a purpose other

than that of securing the proper adjudication of the claim; and (4) special injury that flows directly from the prior proceedings. *Young v. Motor City Apartments Ltd. Dividend Hous. Ass'n No. 1 and No. 2*, 133 Mich. App. 671, 675 (1984) (citing *Friedman v. Dozorc*, 412 Mich. 1, 48 (1981)). "Special injury" requires "injury to one's fame (as by a scandalous allegation), injury to one's person or liberty, and injury to one's property." *Friedman*, 412 Mich. at 33. With the exception of the special injury element, Plaintiffs do not dispute that they have not alleged the requisite elements for a common-law malicious prosecution claim, but they argue that the claim they have alleged under the statute does not depend on the common-law elements of favorable termination and absence of probable cause. The Court disagrees.

Plaintiffs cite *VanOrman v. Shook*, 602 F. Supp. 204, 206 (W.D. Mich. 1985), for the proposition that "in Michigan, malicious prosecution is both a common law and a statutory cause of action." The *VanOrman* court made this statement in passing, without much analysis, but cited *Drouillard v. Metropolitan Life Ins. Co.*, 107 Mich. App. 608 (1981). As in *VanOrman*, the *Drouillard* court made this statement with minimal analysis and no consideration of whether a plaintiff asserting a claim under the statute must allege the same elements for a common-law malicious prosecution cause of action. Courts that have conducted more in-depth analyses, however, have concluded that the statute does not create a separate statutory cause of action but merely provides an additional remedy for an underlying malicious prosecution claim. In *Sage Int'l, Ltd. v. Cadillac Gage Co.*, 556 F. Supp. 381 (1982), the court rejected the plaintiffs' argument that a plaintiff may proceed on a malicious prosecution claim under § 600.2907 without a showing of special injury. Citing two decisions from the Michigan Court of Appeals, *LaLone v. Rashid,* 34 Mich. App. 193 (1971), and *Peisner v. Detroit Free Press, Inc.*, 68 Mich. App. 360 (1976), and a decision from the Southern District of New York, *Chrysler Corp. v. Fedders Corp.*, 540 F. Supp.

706 (S.D.N.Y. 1982), the court concluded that rather than providing a separate cause of action for malicious prosecution, the statute simply provides for treble damages in certain types of malicious prosecution cases. In *LaLone*, posing the question of the statute's meaning, the court was "forced to conclude that the enactment provided only an additional method of computing punitive damages . . . [because] it added nothing to the substantive law . . . ." 34 Mich. App. at 202. State and federal courts continue to construe the statute in this manner, requiring a plaintiff to plead and prove all of the common law elements of malicious prosecution when seeking relief pursuant to § 600.2907. *See Bloch v. Bloch*, No. 307640, 2013 WL 951076, at *3 (Mich. Ct. App. Mar. 7, 2013) (per curiam) (noting that the statute "does not create a cause of action") (citing *LaLone*, 34 Mich. App. at 202); *Galinis v. County of Branch*, No. 1:14-cv-460, 2015 WL 13037567, at *5 (W.D. Mich. Aug. 11, 2015), *aff'd*, 660 F. App'x 350 (6th Cir. 2016) (citing common-law elements in analyzing the plaintiff's claim under § 600.2907).

The Michigan Supreme Court's decision in *Camaj v. S.S. Kresge Co.*, 426 Mich. 281 (1986)—which Plaintiffs cite—did not alter this interpretation. Rather, *Camaj* limited the statute's application to a narrow class of malicious prosecution cases known as "straw-party" suits. 426 Mich. at 287–89. Nothing in *Camaj* suggests that a plaintiff asserting a "straw-party"-type malicious prosecution claim is relieved from pleading the elements of common-law malicious prosecution.

Given that Plaintiffs are bound to plead the elements of the common-law cause of action, their claim fails at the first element, as neither Merrill nor Wilk can satisfy the favorable termination requirement.[10] Both of the cases against Merrill were dismissed with prejudice, *see*

---

[10] Plaintiffs' claim also fails because it is based on their allegation that Defendants filed the collection lawsuits without the consent of the Trusts. As set forth above, the SSA and the TSI Agreement specifically authorized TSI to retain attorneys to file lawsuits on behalf of the Trusts.

26

*Delorean v. Cork Gully*, 118 B.R. 932, 939 (E.D. Mich. 1990) ("For purposes of malicious prosecution, a stipulated dismissal with prejudice does not amount to a termination in the claimant's favor.") (citing *Kauffman v. Shefman*, 169 Mich. App. 829, 841 (1988)), and the Trusts obtained judgments against Wilk in both cases against her. Thus, this claim is subject to dismissal.

### E.     Unjust Enrichment

In Count V, Plaintiffs allege that Defendants were unjustly enriched because they obtained a benefit from Plaintiffs in the form of payments and/or garnishment proceeds. Unjust enrichment is an equitable doctrine based on the principle that a party should not be allowed to profit at the expense of another. *McCreary v. Shields*, 333 Mich. 290, 294 (1952). In cases of unjust enrichment, the law implies a contract to prevent the inequity arising from a defendant's receipt of a benefit from the plaintiff. *Sweet Air Inv., Inc. v. Kenney*, 275 Mich. App. 492, 504 (2007). To establish unjust enrichment, a plaintiff must show: (1) the receipt of a benefit by the defendant from the plaintiff; and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant. *Michigan Educ. Employees Mut. Ins. Co. v. Morris*, 460 Mich. 180, 198 (1999). A court will not imply a contract where there is an express contract governing the same subject matter. *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 32 F.Supp.2d 824, 833 (E.D. Mich. 2014) (citing *Fodale v. Waste Mgmt. of Mich., Inc.*, 271 Mich. App. 11, 36 (2006)).

Plaintiffs' claim is subject to dismissal for several reasons. First, as Defendants note, express contracts exist in this case covering Plaintiff's payments on their student loans. That is, Plaintiffs entered into Credit Agreements with their lenders, pursuant to which TSI collected student loan payments. (ECF No. 1-1; ECF No. 1-2 at PageID.38–41; ECF No. 1-3.) Plaintiffs do

---

Plaintiffs fail plausibly to allege that the Trusts have revoked or altered TSI's authority to continue filing lawsuits on behalf of the Trusts.

not deny that express contracts exist, but they contend that those contracts do not bar equitable relief in this case because they are not between Plaintiffs and TSI or U.S. Bank. But Michigan courts do not require that the contract be between the plaintiff and the defendant for this bar to apply. *See New Dimension Dev., Inc. v. Orchard, Hiltz & McCliment*, No. 262565, 2005 WL 2806234, at *6 (Mich. Ct. App. Oct. 27, 2005) (holding that unjust enrichment claim was barred by the plaintiffs' contracts with non-parties to the suit covering the subject matter at issue in the lawsuit); *Elite Commc'ns, Inc. v. Lastar.Com, Inc.*, No. 241843, 2004 WL 94106, at *3 (Mich. Ct. App. Jan. 20, 2004) (per curiam) (holding that the trial court did not err in failing to imply a contract because an express contract existed between the plaintiff and the third-party that contracted for the plaintiff's services).

Second, Plaintiffs do not allege that TSI or U.S. Bank received and retained a benefit from Plaintiffs. First, Plaintiffs do not allege that Merrill made any payments to TSI or any other party in either of the collection lawsuits. (ECF No. 1 at PageID.14–15.) As for Wilk, while Plaintiffs allege that TSI garnished her income tax refund and her paycheck on behalf of the NCSLT Trusts, they do not allege that that TSI retained those funds for its own benefit. In fact, under the SSA, funds that subservicers such as TSI collect on defaulted loans are deposited into a collection account in the name of the Indenture Trustee for the benefit of the Note holders. (SSA, § 2.B.(ix)– (x), ECF No. 11-3 at pageID.130.) Subservicers retain only their fees and expenses for their services. (SSA, § 5B., ECF No. 11-3 at PageID.139–40.) Plaintiffs also do not allege any fact showing that they conferred a benefit on U.S. Bank. Under Michigan law, a plaintiff must show that the defendant received a direct benefit from the plaintiff. *See Smith v. Glenmark Generics, Inc., USA.*, No. 315898, 2014 WL 4087968, at *1 (Mich. Ct. App. Aug. 19, 2014) (citing, among others, *Kammer Asphalt Paving Co. v. East China Twp. Schs.*, 443 Mich. 176, 179, 187–88

(1993)). Plaintiffs allege no fact showing that they conferred a direct benefit upon either Defendant.

Finally, Plaintiffs pled no basis for concluding that it would be unjust or inequitable if the collected funds are not returned do them. *See Daimler-Chrysler Servs. N. Am., LLC v. Summit Nat'l, Inc.*, 289 F. App'x 916, 924–25 (6th Cir. 2008) (noting that a contract will not be implied under Michigan law without a showing that it would be unjust or inequitable to allow the defendant to retain the benefit). Plaintiffs do not deny that they are debtors on the underlying student loans, and they do not allege they will be subjected to double liability or duplicative claims by different creditors claiming to own the loans. Thus, Plaintiffs have not pled an adequate basis for this claim.

## IV.    CONCLUSION

For the foregoing reasons, I recommend that the Court **grant in part and deny in part** Defendant TSI's Motion to Dismiss (ECF No. 13) as follows: (1) dismiss Plaintiff Wilk's FDCPA, MCPA and MOC claims as barred by the doctrine of collateral estoppel; (2) as to the FDCPA claim, dismiss Plaintiffs' allegation that TSI misrepresented that the Trusts authorized the filing of the lawsuits/garnishments and dismiss Plaintiff's claim under § 1692f(1) but allow the remainder of the claim to proceed as to Plaintiff Merrill; (3) as to the MCPA and MOC claims, dismiss Plaintiffs' allegation that TSI misrepresented that the Trusts authorized the filing of the lawsuits/garnishments and allow the remainder of the claims to proceed as to Plaintiff Merrill; and (4) dismiss Counts IV (violation of Mich. Comp. Laws § 600.2907) and V (unjust enrichment). I further recommend that Defendant U.S. Bank's Motion to Dismiss (ECF No. 10) be **granted** in its entirety and that U.S. Bank be dismissed from this case.

### <u>NOTICE</u>

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated: December 1, 2020                          /s/ Sally J. Berens
                                                SALLY J. BERENS
                                                U.S. Magistrate Judge