UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ALLISON L. MERRILL and BRITTANY WILK, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiff, | ) Case No. 1:20-cv-183<br>)<br>) Hon. Paul L. Maloney |
| v. | )<br>) |
| TRANSWORLD SYSTEMS, INC, and U.S. BANK NATIONAL ASSOCIATION | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

**OBJECTIONS TO REPORT AND RECOMMENDATION**

**I.  INTRODUCTION AND STANDARD**

Plaintiffs respectfully object to the Report and Recommendation entered December 1, 2020 (Dkt. No. 28).  Plaintiffs object to the GRANT of U.S. Bank's Motion to Dismiss because (1) the Report and Recommendation misconstrued the terms and effect of the Special Servicing Agreement by failing to find that it made U.S. Bank as Special Servicer responsible for the regularly collecting the debts of another, and thus is a "debt collector" as defined in Section 803(6) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6); and (2) applied the wrong standard to determine if U.S. Bank could be held vicariously liable for the actions of TSI. Plaintiffs also object to the dismissal of Plaintiff's claims under MCL § 600.2907 as the Report and Recommendation was incorrect that Plaintiffs are required to plead the elements of common law malicious prosecution for their claim.

Under FED R. CIV. P. 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the

1

matter to the magistrate judge with instructions." De novo review in these circumstances requires at least a review of the evidence before the Magistrate Judge. *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981).

## II. US BANK IS A "DEBT COLLECTOR" UNDER THE FDCPA

On June 21, 2012, U.S. Bank became the Special Servicer for the NCSLT Trusts. (Report and Recommendation, Dkt Entry 28 at 5, Complaint Dkt. Entry No. 1, ¶ 41). US Bank at that time "assumed the duties of the Special Servicer under the Special Servicing Agreements." (Third Amendment to Default Prevention and Collection Services Agreement, Dkt. Entry 21-2 at 77). Among the duties U.S. Bank assumed was "the enforcement and collection of Delinquent Loan and Defaulted Loans to maximize the collection of amounts payable on the Student Loans." (Special Servicing Agreement, Dkt. Entry No. 21-1 § 2.B). In other words, on June 21, 2012, U.S. Bank became a debt collector, responsible for collecting debts ostensibly owed to the Trusts.

U.S. Bank argues, and the Report and Recommendation agreed, that this was of no import because US Bank contracted for all direct collection to be done by a third party. But Plaintiffs are not alleging that US Bank is a debt collector by virtue of its relationship with TSI, which does the direct work of collecting; U.S. Bank is a debt collector because, as Special Servicer, it is responsible for "maximiz[ing] the collection of amounts payable" to the Trusts. That is does so "indirectly" through TSI is of no consequence. *See* 15 U.S.C. § 1692a(6) ("The term "debt collector" means any person . . . who regularly collects or attempts to collect, *directly or indirectly*, debts owed or due or asserted to be owed or due another.") (*emphasis added*).

The language in the Special Servicing Agreement, cited by the Report and Recommendation, that states U.S. Bank is not required or permitted to undertake *direct* collection or enforcement activities also fails to relieve U.S. Bank for responsibility under the

2

FDCPA. (Report and Recommendation, Dkt. No. 28, at 20). In the very next section after that cited in the Report and Recommendation the Special Servicing Agreement expressly states that US Bank, upon assuming the duties of the Special Servicer, is subject to all of the terms and conditions of the Agreement as "Special Servicer," is subject to the same standard of care, the same rights and privileges, and indeed, is paid the same compensation as its predecessor for its work to "maximize the collection of amounts payable" to the Trusts. (Special Servicing Agreement, Dkt. Entry No. 21-1 § 8.B).

The Default Prevention and Collection Services Agreement US Bank has with its agent TSI even provides that US Bank as Special Servicer engages in an active role in the collection efforts by TSI, not only through the control and direction of such activities as set forth in Plaintiff's Response to U.S. Bank's Motion, but also by requiring the consent of U.S. Bank as Special Servicer to settle or dismiss a collection action, including, presumably, the two collection actions against Plaintiff Merrill. (Default Prevention and Collection Services Agreement, Dkt. Entry 21-2 § 2.4).

Nor is the Report and Recommendation correct that Plaintiffs would need to plead and prove that "U.S. Bank and TSI constitute a single economic enterprise or so entwined that their separate existences should be disregard." (Repot and Recommendation, Dkt. Entry 28, at 21). The cases relied upon by the Report relate to instances where a plaintiff sought to hold a related corporate entity that did not participate in or direct collection activities liable for the collection actions of its affiliate. Thus, for example, in *Gold v. Midland Credit Management*, 82 F.Supp. 3d 1064 (N.D. Cal. 2015), the party seeking dismissal was Midland Funding., LLC, an affiliate company that had no employees and existed merely to hold acquired purchased debt for collection by Midland Credit Management. The Court held ". . . a company that (1) purchases

3

consumer debts for the purpose of making money on the debts, (2) acquires the debts at issue after they have been charged off, and (3) hires others to collect on those debts may meet the literal definition of a debt collector, but does not fit within the FDCPA's definition of that term. . . . Critically, the plaintiff . . . . failed to put forth any evidence suggesting that the entity that held the debt accounts had undertaken *any* collection activity, whether directly or *indirectly*." *Gold*, F.Supp. at 1072 (*some emphasis added*). The other cases cited by the Report and Recommendation are similar: *Johnson v. Midland Credit Mgmt.*, No. 1:05 CV 1094, 2006 U.S. Dist. LEXIS 60133 (N.D. Ohio Aug. 23, 2006) (parent company will not be liable for the FDCPA violations of its subsidiary absent unusual circumstances); *Crawford v. Equifax Payment Servs.*, Case No. 97 C 4240, 1998 U.S. Dist. LEXIS 15719, (N.D. Ill. Sep. 30, 1998) (same); *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1143 (N.D. Ill. 1998) (same; ". . . Union plays no role in either the actual debt collection process or in procuring creditor-clients").

Unlike the cases cited in the Report and Recommendation, this is not a case where a corporate affiliate simply holds acquired debt while another performs the actual collection, or where a parent is being sued over the actions of its subsidiary. Under the Special Servicing Agreement, U.S. Bank is responsible for collecting on debts owed to the Trusts, a responsibility it discharges through TSI as its agent. This is simply a case of one debt collector hiring another to do its dirty work. A debt collector should not be able to evade the FDCPA by hiring another to do what it legally cannot. *See, e.g., Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000) ("Thus, we conclude that NTF--which itself meets the definition of "debt collector"-- may be held vicariously liable for CARC's collection activity. We believe this is a fair result because an entity that is itself a "debt collector" - and hence subject to the FDCPA - should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf.").

At this stage of the case, Plaintiff has pleaded, and the documents plausibly show that U.S. Bank is a "debt collector" under the FDCPA, and therefore its motion should be denied.

### III. PLAINTIFF IS NOT REQUIRED TO ALLEGE COMMON LAW ELEMENTS OF MALICIOUS PROSECUTION FOR A CLAIM UNDER MCL § 600.2907

Plaintiffs object to the Report and Recommendation's recommended dismissal of Count IV of their Complaint for the reason MCL 600.2907 requires Plaintiffs to plead the common law elements of malicious prosecution and for the reason that TSI was acting within the scope of its authority when filing lawsuits on behalf of NCLST. The Report fails to acknowledge that (1) Plaintiffs have complied with the plain language required by MCL 600.2907 and (2) TSI is acting outside of its authority of the Trust Related Documents by filing lawsuits without valid and enforceable assignments and in violation of the Consent Decree it entered into with the Consumer Financial Protection Bureau ("CFPB").

The Report and Recommendation, relying on outdated case law, held that the statute requires the pleading of additional common law elements of malicious prosecution including (1) special damages and (2) that an action terminate in favor of the defendant. Neither of these elements are found within the statute. The plain language of MCL 600.2907 triggers liability upon a lawsuit that must be answered.

The Report and Recommendation does not examine the plain language of the statute, which has no element concerning special damages or the resolution of a lawsuit in favor of the defendant, and such judicial construction is not permitted.

When interpreting a statute, "our goal is to give effect to the Legislature's intent, focusing first on the statute's plain language." *Madugula v. Taub*, 496 Mich. 685, 696, 853 N.W.2d 75 (2014) (*quotation marks and citations omitted*). "In so doing, we examine the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme." *Id*. "When

a statute's language is unambiguous, ... the statute must be enforced as written. No further judicial construction is required or permitted." *Id*. (*quotation marks and citations omitted* ). The Sixth Circuit has held that "[e]xcept in rare and exceptional circumstances, such as where Congress expressly indicates its intent that the plain meaning of the statutory language be avoided, unambiguous statutory language is to be regarded as conclusive." *Boettger v. Brown*, 923 F.2d 1183, 1188 (6th Cir.1991).

The Report and some prior case law imply that the common law elements such as special damages and resolution in defendant's favor are required. Such a requirement is not based on the language of the statute but rather on the fact that this statute is titled a "malicious prosecution" statute or because the statute finds liability if a lawsuit is filed "maliciously." However, headings cannot be a basis for interpretation of the actual text. MCL 8.4b. Nor can additional elements of common-law malicious prosecution be added where the statute's words have a plain meaning as well as are part of a larger disjunctive term. Liability attaches where there is "vexation and trouble, or maliciously." The statute would clearly cover a situation, as alleged in Plaintiffs' Complaint, where a debt collector, without the ability to prove its ownership of the loan, would sign a false affidavit so that a defendant would believe she owed money to a particular party. The interpretation of the statute should stop after reviewing this plain language. *Boettger v. Brown*, 923 F.2d 1183, 1188 (6th Cir.1991). By ignoring the disjunctive nature of "vexation and trouble or maliciously," the Report's recommendation fails "give effect to every word, phrase, and clause and avoid an interpretation that would render any part of the statute surplusage or nugatory." *People v. Miller*, 498 Mich. 13, 25, 869 N.W.2d 204 (2015).

The Michigan Supreme Court clarified the same when holding that the statute only applied to unauthorized straw-man lawsuits: "[I]n order to make proper sense of § 2907, it must

be read as applying only to "[e]very person who shall, for vexation and trouble or maliciously, cause or procure any other to be arrested, attached, or in any proceeded against ... to answer to the suit or prosecution of any person, without the consent of such person, or where there is no such person known ...." *Camaj v S.S. Kresge Co.*, 426 Mich. 281, 289 (1986).

The Report and Recommendation ignores the extensive analysis in *Camaj* discussing the historical difference between straw-party lawsuits and those alleging "special damages." *Camaj* identified two types of actions (1) a malicious prosecution claim requiring special damages and (2) the straw-party lawsuit:

> In fact, "[i]n *Savile v Roberts* [1 Ld Raym 374; 91 Eng Rep 1147 (1698)], Lord Holt organized the kinds of damages previously recognized in actions on the case in the nature of conspiracy into two categories, one of particular or 'special' damage, the other of straw-party suits." Note, supra, p. 1228. "Unlike its modern descendants, conspiracy took aim not at all malicious suits, nor even at those causing special hardships, but solely at straw-party actions." *Camaj*, at 286 (citing *Note, Groundless litigation and the malicious prosecution debate: A historical analysis*, 88 Yale L.J. 1218, 1224–1225 (1979)." [*Camaj*, 426 Mich. at 289].

The *Camaj* Court gave prospective effect because it was a new interpretation of the statute. The Report's reliance on pre-*Camaj* cases, specifically *Sage Intern, Ltd. v Cadillac Gage Co.*, 556 F. Supp. 381 (1982), and *Lalone v. Rashid*, 34 Mich.App. 193, 191 N.W.2d 98 (1971), *lv. den.* 386 Mich. 756 (1971), fails to address the implications of *Camaj*. Nor do the Report and Recommendation's other cited cases such as address the implications of *Camaj*.

*Galinis v County of Branch*, *Galinis v. County of Branch*, No. 1:14-cv-460, 2015 WL 13037567, at *5 (W.D. Mich. Aug. 11, 2015), *aff'd*, 660 F. App'x 350 (6th Cir. 2016) was a police civil rights claim against police officers and agencies. There was no straw-man claim are required under *Camaj* and the claim would be appropriate to examine under the common law. Likewise, in *Bloch v. Bloch*, No. 307640, 2013 WL 951076, at *3 (Mich. Ct. App. Mar. 7, 2013) (per curiam) an ex-husband filed a lawsuit alleging malicious conduct arising out of his

7

relationship with his ex-wife and merely cites the same pre-*Camaj* case of *Lalone v Rashid*. Neither of these cases involved a third-party acting outside of its authority in filing a lawsuit in the name of another.

"[T]o justify a departure from the letter of the law ... the absurdity must be so gross as to shock the general moral or common sense. And there must be something to make plain the intent of Congress that the letter of the statute is not to prevail." *Crooks v. Harrelson,* 282 U.S. 55, 59–60, 51 S.Ct. 49, 75 L.Ed. 156 (1930). Had the Legislature intended to include additional common law elements to a statutory cause of action, it easily could have done so, as it has in other instances, such as the case of statutory conversion. MCL 600.2919a. In *Krueger v. City of Eastpointe*, 452 F. Supp. 3d. 679 (E.D. Mich. 2020), the U.S. District Court for the Eastern District of Michigan opined that a successful statutory conversion claim requires the common law elements of a "distinct act of dominion wrongfully exerted over another's personal property in denial or inconsistent with his rights therein" as well as the statutory addition of a converter's "own use" of the property. Id. at 696, *(citing Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 497 Mich. 337, 351-52, 335, 871 N.W.2d 136 (2015) (citing Mich. Comp. Laws § 600.2919))

Nothing in MCL 600.2907 requires that Plaintiffs to plead extra-statutory elements departing from the letter of the law. There is nothing that shocks the general moral or common sense for a legislature to impose liability on a party for filing an unauthorized lawsuit in the name of another. It makes complete sense that such conduct would be prohibited and punished due to the damage suffered by the defendant and the waste of judicial resources and the inability to sanction the actual party (TSI) bringing the lawsuit.

The Report and Recommendation also determined that the Trust Related Documents authorized TSI to file lawsuits against Plaintiffs and that Plaintiffs' claims under these facts must fail. However, the Report and Recommendation fails to account for the interplay between the CFPB Consent Order entered into by TSI prior to the initiation of Ms. Merrill's collection lawsuits and the Trust Related Documents.

It is important to point out that TSI entered into a stipulated Consent Agreement with the CFPB on September 15, 2017, prior to filing suit against Ms. Merrill. As outlined in Plaintiffs' Complaint, the CFPB found in the Consent Order, which was stipulated and agreed to by TSI, that TSI, acting through the law firms it retained, had represented, directly or indirectly, expressly or by implication, that when bringing a collection lawsuit it could be proven that the Trusts owned the loans in question, and that the consumers being sued owed the debt to the Trusts. This was untrue and in numerous instances TSI lacked documentation to prove the chain of title for the loans being sued upon, and/or the promissory notes needed to prove the existence of the loan and its terms.

The Consent Order, stipulated and agreed to by TSI, stated that these were material misrepresentations likely to affect how a consumer would respond to a lawsuit, and likely to mislead a consumer acting reasonably under the circumstances. (Complaint Dkt. Entry No. 1, ¶¶ 68-72). In addition to these being plausible FDCPA claims (as found in the Report and Recommendation ), the Consent Order explicitly stated that these material misrepresentations were violations of CFPA Sections 1031(a) and 1036(a)(1)(B) and 12 U.S.C. Sections 5531(a), 5536(a)(1)(B) and that further violations would bring additional civil and administrative penalties under 1055(c) CFPA, 12 U.S.C. Section 5565(c).

Even if the Trust Related Documents authorize the filing of the lawsuits to collect student loans, they only do so to the extent done legally. Plaintiffs are not intending told hold TSI liable under a Monday-morning quarterbacking instance where a party's conduct is later found to be a legal violation. Rather, Plaintiffs' allege that TSI agreed in the Consent Order that filing lawsuits without the chain of title was unlawful and continued to ignore the terms of the Consent Order and the DPCSA.

The lawsuit filed against Ms. Merrill was intended to harass Ms. Merrill into paying money or defaulting. The Report sets out that Ms. Merrill presents a plausible claim regarding these allegations. (Report and Recommendation, Dkt Entry 28). TSI's lawsuits against Ms. Merrill were filed to trick (or for vexation and trouble) Ms. Merrill into thinking that she had an obligation to pay the money claimed by TSI when TSI knew full-well it could not prove its chain of title. Plaintiffs' allegations are fully supported by facts and make a plausible claim for relief under MCL 600.2907, as well as Section 1692f(1) of the FDCPA.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request this Court reject the recommended disposition dismissing U.S. Bank and dismissing Count IV of the Complaint.

Dated: December 14, 2020

                                       Respectfully Submitted,

                                       _____/s/_____
Daniel Myers (P49250)
The Law Offices of Daniel O. Myers, PLLC
ATTORNEY FOR PLAINTIFFS
P.O. Box 1626
East Lansing, MI 48826-1626
Phone: (517)-929-9780
Toll Free: (800) 340-8500
dmyers@domlawoffice.com
www.domlawoffice.com

Matthew T. Hanley (P76164)
Heidi M. Hodek (P73966)
Ranieri Hanley & Hodek, PLC
ATTORNEYS FOR PLAINTIFFS
4020 Copper View, Ste. 225
Traverse City, MI  49684
Phone: (231) 486-6556
Fax: (231) 486-6560
hanley@rhhlawtc.com
hodek@rhhlawtc.com
www.rhhlawtc.com