IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| ALLISON L. MERRILL and BRITTANY WILK, *individually and on behalf of all others similarly situated,* | §<br>§<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | Case No. 1:20-cv-00183-PLM-SJB |
| TRANSWORLD SYSTEMS, INC. and U.S. BANK NATIONAL ASSOCIATION, | §<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | |

## DEFENDANT, TRANSWORLD SYSTEMS INC.'s ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' CLASS ACTION COMPLAINT

COMES NOW Defendant Transworld Systems Inc. ("TSI") by and through undersigned counsel, and for its answer and affirmative defenses to Plaintiffs' Class Action Complaint, states as follows:

## PARTIES AND JURISDICTION

1.      Plaintiff ALLISON L. MERRILL ("Plaintiff Merrill") is an individual who is a citizen of the State of Michigan, and resides in Leelanau County, Michigan.

**ANSWER: TSI denies the allegations in ¶ 1 for lack of knowledge or information sufficient to form a belief therein.**

2.      Plaintiff BRITTANY WILK ("Plaintiff Wilk") is an individual who is a citizen of the State of Michigan, and resides in Wayne County, Michigan.

**ANSWER:   TSI denies Wilk remains a proper party plaintiff in this action, as all claims she asserted in the Class Action Complaint have been dismissed.  *See* Order**

1

**Adopting Report and Recommendation (ECF No. 36); *see also* Report and Recommendation (ECF No. 28). Further answering, TSI denies the allegations in ¶ 2 for lack of knowledge or information sufficient to form a belief therein.**

3.      Defendant TRANSWORLD SYSTEMS, INC. ("TSI") is a California corporation. It may be served process in the State of Michigan through its registered office, The Corporation Company, 40600 Ann Arbor Road East, Ste, 201, Plymouth, Michigan. The principal business of Defendant TSI is the collection of debts. Defendant TSI regularly collects and attempts to collect debts due or owed or asserted to be due or owed to other persons or companies. Defendant TSI uses interstate commerce and the mails in the conduct of its business. TSI is a "debt collector" as defined in Section 803(6) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6). TSI files lawsuits and collects debts under the name of various National Collegiate Student Loan Trusts (hereinafter referred to generically as "NCSLT Trusts") as an agent of Defendant U.S. Bank National Association.

**ANSWER:   TSI admits it is a California corporation, that it has a registered agent at the address listed above, that at times, and under certain circumstances, its business activities include the collection of accounts owed to third parties, and that it uses the mails in its business. Except as specifically admitted, TSI denies the allegations in ¶ 3.**

4.      U.S. Bank National Association ("US Bank") is a nationally-chartered bank with its headquarters located at 800 Nicollet Mall, Minneapolis, MN 55402. It may be served process in the State of Michigan through its resident agent, Office of U.S. Bank National Association, 34405 W. 12 Mile Rd. Suite 215 Farmington Hills, MI 48331. US

Bank, through TSI, regularly collects debts allegedly owed to various NCSLT Trusts, and thus is a "debt collector" as defined in Section 803(6) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6).

**ANSWER:  TSI denies the allegations in ¶ 4 for lack of knowledge or information sufficient to form a belief therein.**

5.     This Court has personal jurisdiction over the defendants in this action as they regularly transact or conduct business in the State of Michigan, and a substantial part of the acts or omissions which gave rise the claims made herein occurred in Michigan.

**ANSWER:   TSI denies the allegations in ¶ 5 as calling for a legal conclusion. TSI leaves all matters of jurisdiction to the Court.**

6.     The subject matter of this action arises under the laws of the United States, and this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

**ANSWER:   TSI denies the allegations in ¶ 6 as calling for a legal conclusion. TSI leaves all matters of jurisdiction to the Court.**

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) as this is a class action and there is diversity of citizenship between one or more members of the proposed class and one or more Defendants, and the amount in controversy is more than $5,000,000.

**ANSWER:   TSI denies the allegations in ¶ 7 as calling for a legal conclusion. TSI leaves all matters of jurisdiction to the Court.**

8.     This Court has supplemental jurisdiction over the state law claims made in this action pursuant to 28 U.S.C. § 1367, in that those claims are so related to claims in the

action within such original jurisdiction that they form part of the same case or controversy.

**ANSWER:   TSI denies the allegations in ¶ 8 as calling for a legal conclusion. TSI leaves all matters of jurisdiction to the Court.**

9.      Venue is proper within this District and Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions which gave rise the claims made herein occurred in this District, and because there is personal jurisdiction over the named Defendants as they regularly conduct business in this judicial district.

**ANSWER:   TSI denies the allegations in ¶ 9 as calling for a legal conclusion. TSI leaves all matters of venue to the Court.**

## FACTUAL BACKGROUND

10.      Prior to 2008, over $12 billion in student loans were originated in the names of various lenders and securitized into fifteen trusts, namely, the National Collegiate Student Loan Trusts ("NCSLT Trusts"). Due to declining economic conditions, however, over $5 billion of these loans are or have been in default at some point.

**ANSWER:   Except to admit on information and belief that certain trusts established pursuant to 12 Del. C. § 3801 *et seq.*, named with some variant of "National Collegiate Student Loan Trust" (the "Trusts") own performing and non-performing loans, the allegations in ¶ 10 are denied for lack of sufficient information to justify a reasonable belief therein.**

11.      Since 2012, Defendants US Bank and TSI (or its predecessor, NCO) have brought numerous actions to enforce defaulted loans in the names of the various NCSLT Trusts. While many if not most of these lawsuits were undefended, the proceedings in

4

various contested cases have revealed missing and incomplete paperwork, and a lack of reliable evidence to support claims that the NCSLT Trusts actually have title to, or ownership rights in, the loans.

**ANSWER:   TSI denies the allegations in ¶ 11.**

12.     Despite filing lawsuits in the names of the NCSLT Trusts, TSI is not in fact authorized by the NCSLT Trusts to do so, a fact that TSI and its principal, US Bank, either knew or should have known since at least 2015. In fact, the NCSLT Trusts have filed suit in the Delaware state Chancery court seeking to enjoin TSI and US Bank from continuing to file lawsuits in the name of the NCSLT Trusts.

**ANSWER:  TSI denies the allegations in ¶ 12.  *See also* Order Adopting Report and Recommendation (ECF No. 36); Report and Recommendation (ECF No. 28).**

13.     The reason the NCSLT Trusts would seek to stop the TSI lawsuits from being filed is apparent:  by filing the lawsuits in the name of the NCSLT Trusts, TSI and US Bank have exposed the NCSLT Trusts to substantial liability risk. Numerous consumers have filed lawsuits against the NCSLT Trusts and/or TSI on the grounds that the TSI lawsuits lack appropriate legal and factual footing. Indeed, in 2017 TSI entered into a consent order with the Consumer Financial Protection Bureau which found, among other things, that TSI was filing lawsuits without proper documentation and using fraudulent statements, which harmed consumers by inducing them to pay on loans that were not enforceable. As part of the consent order, TSI was enjoined from filing any more lawsuits where documentation of the NCSLT Trusts' ownership was lacking, and from using false

testimony. Nevertheless, TSI persisted.

**ANSWER:   TSI denies the allegations in ¶ 13 as stated.**

### The Path of a Student Loan from Lender
### to the NCSLT Trusts, As Alleged

14.     The origins of this lawsuit lie almost twenty years in the past. In June 2001, First Marblehead Corporation ("FMC") acquired the loan processing capabilities of The Education Resource Institute, Inc., ("TERI") which at the time was the largest guarantor of private student loans. Through agreements with TERI and later with lenders such as Bank of America, JP Morgan Chase, and Charter Bank, FMC began a process of originating private student loans for securitization.

**ANSWER:  Except to admit certain, securitized loans now owned by the Trusts were made under loan programs funded in part by TERI, TSI denies the allegations in ¶ 14 as stated.**

15.     Typically, FMC would enter into Note Purchase Agreements with lenders to purchase loans originated through those lenders. The loans were eventually pooled into bankruptcy-remote trusts, which would in turn finance the purchase of the loan pool from the originator by issuing Notes entitling the Noteholder to receive a portion of the future income stream received from repayments of the underlying loans.

**ANSWER:   The referenced Note Purchase Agreements speak for themselves and are the best evidence of their content. To the extent the allegations in ¶ 15 misstate or mischaracterize the terms of the Note Purchase Agreements, the allegations are denied.**

16.     Although cloaked in the language of helping students to get an education, the true purpose of these loans was to enrich the banks and speculators who sold, packaged, and invested in the loans. FMC would receive fees from providing services to the banks and from the securitization process, in addition to servicing defaulted loans and holding a residual interest in the securitized trusts.

**ANSWER:  The referenced loans speak for themselves and are the best evidence of their content and purpose. To the extent the allegations in ¶ 16 misstate or mischaracterize the loans, the allegations are denied.**

17.     In theory, because the loans would be "guaranteed" by TERI, borrowers could not discharge the loans through bankruptcy, essentially safeguarding the future income stream to Noteholders (and FMC as the residual owner).

**ANSWER:  Except to admit certain, securitized loans now owned by the Trusts were made under loan programs funded in part by TERI and are *per se* nondischargeable in bankruptcy, TSI denies the allegations in ¶ 17 as calling for a legal conclusion.**

18.     Transfer of title to the loans was to be accomplished through periodic "Pool Supplements" to the Note Purchase Agreements, which transferred pools of loans to an intermediary entity who would then sell and transfer the loans from many such Pool Supplements to the newly formed NCSLT Trusts.

**ANSWER:  TSI admits the transfer of title to certain loans now owned by the Trusts was accomplished through "Pool Supplements" and "Deposit and Sale Agreements."  Except as specifically admitted, the allegations in ¶ 18 are denied.**

7

19.     By way of example, on May 15, 2002 Charter One Bank, N.A. and FMC entered into a Note Purchase Agreement whereby Charter One agreed to originate student loans pursuant to a program entitled "The CFS Direct to Consumer Loans Program," and FMC agreed that it or its designee would purchase the loans for securitization.

**ANSWER:   The referenced Note Purchase Agreement speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 19 misstate or mischaracterize the terms of the Note Purchase Agreement, the allegations are denied.**

20.     On October 12, 2005, Charter One Bank, N.A. and National Collegiate Funding, LLC, ("NCF") a subsidiary of FMC, entered into a "Pool Supplement" which purported to sell and assign a pool of loans originated under that Note Purchase Agreement among many to NCF, as purportedly evidenced by an attached "Schedule 2" of loans.

**ANSWER:   The referenced Pool Supplement speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 20 misstate or mischaracterize the terms of the Pool Supplement, the allegations are denied.**

21.     On that same day, NCF entered into a "Deposit and Sale Agreement" that purported to assign the loans from the Charter One Pool Supplement, together with other pools of loans similarly assigned, to the newly-formed National Collegiate Student Loan Trust 2005-3 ("NCSLT 2005-3").

**ANSWER:   The referenced Deposit and Sale Agreement speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 21 misstate or mischaracterize the terms of the Deposit and Sale Agreement, the allegations are**

8

**denied.**

22.     As a result of these arrangements and agreements, a typical student loan would be originated in the name of a lender and evidenced by an Agreement between the lender and the borrower. That loan, together with other loans originated in the name of that lender, would then be assigned through the Pool Supplement to NCF, and a schedule of loans purportedly attached to the Pool Supplement would designate and identify the individual loans being transferred. NCF would then assign the Pool Supplements, and the loans that were supposedly identified on those schedules, to the Trusts.

**ANSWER:   TSI admits the allegations in ¶ 22.**

23.     Through this process, FMC created fifteen NCSLT Trusts, purportedly holding student loans worth over $15 billion in face value.

**ANSWER:   The Note Purchase Agreements, Pool Supplements, and Deposit and Sale Agreements implicated by the allegations in ¶ 23 are the best evidence of their contents.   To the extent the allegations in ¶ 23 misstate or mischaracterize the terms of those documents, the allegations are denied.**

24.     There is, however, a break in the chain of title from the originating lenders to the NCSLT Trusts. More specifically, the original schedules of loans for the Pool Supplements appear to have been lost, or may never have existed in the first place -- rendering many, if not all, of the loans virtually uncollectible.

**ANSWER:   TSI denies the allegations in ¶ 24.**

25.     The missing loan schedules for the Pool Supplements has left the Trusts without standing to file collection lawsuits on defaulted loans.

**ANSWER: TSI denies the allegations in ¶ 25.**

<u>**The Formation of the NCSLT Trusts, As Alleged**</u>

26.     Each of the NCSLT Trusts was created as a Delaware statutory trust through a Trust Agreement. For example, NCSLT 2005-3 was formed on October 12, 2005 by a Trust Agreement between Delaware Trust Company, N.A. as "Owner Trustee," and NCF and TERI as "Owners."

**ANSWER: Except to admit the Trusts are parties to certain Trust Agreements, TSI denies the allegations in ¶ 26 as calling for a legal conclusion.**

27.     Under 12 Del. C. § 3801(g), a Delaware statutory trust is "a separate legal entity." It is a juridical entity that "may sue and be sued." 12 Del. C. § 3804(a).

**ANSWER: TSI admits the allegations in ¶ 27.**

28.     Although the NCSLT Trusts are legal entities that can sue and be sued in their own names, they have no employees and can operate only through agents. Therefore, each NCSLT Trust, through its respective Owner Trustee, would also execute an Indenture Agreement with U.S. Bank, N.A. as Indenture Trustee (collectively, the "Indentures"). For example, NCSLT 2005-3's agreement with U.S. Bank as Indenture Trustee was executed as of October 1, 2005.

**ANSWER: The referenced Indenture Agreement speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 28 misstate or mischaracterize the terms of the Indenture Agreement, the allegations are denied.**

29.     The Indentures give the Indenture Trustee certain specified and mostly ministerial duties, principally to deposit money collected on the Student Loans owned by

10

the Trusts, and to pay out money to Noteholders and others according to a specified "waterfall."

**ANSWER: The referenced Indenture Agreement speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 29 misstate or mischaracterize the terms of the Indenture Agreement, the allegations are denied.**

### The Servicing of the NCSLT Trust Loan Pools, As Alleged

30. In order to service the loans that were supposed to be assigned to the NCSLT Trusts, FMC entered into a Servicing Agreement with the Pennsylvania Higher Education Assistance Agency ("PHEAA"), doing business as American Education Services ("AES"). Each of the NCSLT Trusts consented to this Servicing Agreement after the pooling and purported assignment of the student loans. This Agreement, as amended and restated, essentially provides for the servicing of all loans purportedly held by the NCSLT Trusts, while those loans are in good standing.

**ANSWER: The referenced Servicing Agreement speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 30 misstate or mischaracterize the terms of the Servicing Agreement, the allegations are denied.**

31. Loans that have been defaulted upon, however, are subject to a different servicing system after sixty days. Originally, such loans were serviced by a wholly-owned subsidiary of FMC, First Marblehead Education Resources, Inc. ("FMER").

**ANSWER: The referenced Servicing Agreement speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 31 misstate or mischaracterize the terms of the Servicing Agreement, the allegations are denied.**

11

32.     On March 9, 2009, FMER entered into a Special Servicing Agreement ("SSA") as Special Servicer, with U.S. Bank, N.A. as Back-Up Special Servicer. The SSA was also acknowledged by U.S. Bank, N.A. as Indenture Trustee.

**ANSWER:   The referenced Special Servicing Agreement speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 32 misstate or mischaracterize the terms of the Special Servicing Agreement, the allegations are denied.**

33.     The SSA provided, among others, that U.S. Bank would step in as the Special Servicer, if FMER were to resign from that role.

**ANSWER:   The referenced Special Servicing Agreement speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 33 misstate or mischaracterize the terms of the Special Servicing Agreement, the allegations are denied.**

34.     The SSA also included specific instructions for removing the Special Servicer if certain events related to FMC's financial condition occurred. These provisions were likely included in response to TERI's bankruptcy filing in the first quarter of 2008, as well as uncertain and worsening economic conditions following the 2008 financial crisis.

**ANSWER:   The referenced Special Servicing Agreement speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 34 misstate or mischaracterize the terms of the Special Servicing Agreement, the allegations are denied.**

35.     FMER also represented and warranted that it would maintain in full force

either a Default Prevention and Collection Services Agreement dated March 1, 2009 with
NCO Financial Systems, Inc. ("NCO"), (the "NCO Agreement"), or "one or more other
Agreements" with subservicers "reasonably acceptable" to U.S. Bank to perform the duties
of a subservicer.

**ANSWER:   The referenced agreements speaks for themselves and are the best
evidence of their content. To the extent the allegations in ¶ 35 misstate or
mischaracterize the terms of the referenced agreements, the allegations are denied.**

36.     Despite its collateral effects upon the Trusts, however, the NCO Agreement
was not incorporated into the SSA, and the Trusts are not parties to the NCO Agreement.

**ANSWER: The referenced Special Servicing Agreement and "NCO
Agreement" speak for themselves and are the best evidence of their content. To the
extent the allegations in ¶ 36 misstate or mischaracterize the terms of the those
documents, the allegations are denied.**

37.     The NCO Agreement, which was originally entered into by FMER and NCO,
provided that US Bank would "outsource" its servicing obligations under the SSA to NCO,
in the event that FMER resigned as Special Servicer.

**ANSWER: The referenced agreement speaks for itself and is the best
evidence of its content. To the extent the allegations in ¶ 37 misstate or
mischaracterize the terms of the agreement, the allegations are denied.**

38.     Under the NCO Agreement, US Bank retains control over the collection
activities of TSI, and TSI acts as the agent of US Bank.

**ANSWER:  The referenced agreement speaks for itself and is the best**

evidence of its content. To the extent the allegations in ¶ 38 misstate or mischaracterize the terms of the agreement, the allegations are denied.

39.     For example, the NCO Agreement provides: that TSI must obtain US Bank's approval before negotiating and revising a borrower's payment schedule; that TSI must assign staff to act exclusively on US Bank accounts and perform as directed by US Bank; and that TSI must obtain US Bank's approval to hire any subservicers to assist in the collection of debts.

**ANSWER:  The referenced agreement speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 39 misstate or mischaracterize the terms of the agreement, the allegations are denied.**

40.     Under the NCO Agreement, US Bank also retains the rights to: restrict or limit the means used by TSI to collect debts; approve attorneys used by TSI for collection; manage and supervise TSI personnel assigned to its accounts; and remove TSI employees from its accounts.

**ANSWER:  The referenced agreement speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 40 misstate or mischaracterize the terms of the agreement, the allegations are denied.**

41.     FMER resigned as Special Servicer under the SSA, and U.S. Bank assumed the role of Successor Special Servicer on June 21, 2012. PHEAA subsequently began sending defaulted loans to NCO and TSI for servicing, on the instruction of the Trust Administrator.

**ANSWER:  TSI admits FMER resigned as Special Servicer, and that U.S.**

**Bank automatically became Successor Special Servicer, that NCO's role as Special Subserver became operative, and that NCO is TSI's predecessor-in-interest.  Except as specifically admitted, TSI denies the allegations in ¶ 41.**

42.     However, there was no authorization for NCO and TSI to be provided with borrower information and thus service the defaulted loans.

**ANSWER:   TSI denies the allegations in ¶ 42.**

43.     Unambiguously confirming TSI's lack of authority to service the defaulted loans, the NCSLT Trust Owners in 2015 issued a directive to the Trust Administrator (affiliated with TSI) to stop providing TSI with defaulted loan files, without additional authorization from the Trusts.

**ANSWER:  The referenced "directive" speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 43 misstate or mischaracterize the terms of the "directive", the allegations are denied.  Except as specifically admitted, TSI denies the allegations in ¶ 43.**

44.     Despite this 2015 directive, in addition to the actions of the Consumer Financial Protection Bureau in 2015, TSI continued to represent that it was acting on behalf of, and with the authorization of, the NCSLT Trusts. The NCSLT Trusts then filed suit in the Delaware Chancery Court in 2018 against TSI and US Bank, seeking an injunction to prevent TSI from continuing to act without authorization. Nevertheless, TSI, as agent of US Bank, continues to file lawsuits against borrowers without authorization from the NCSLT Trusts, and without proof of ownership of the loans.

**ANSWER:   The referenced Delaware Chancery Court suit speaks for itself**

15

**and is the best evidence of its content. To the extent the allegations in ¶ 44 misstate or mischaracterize the pleadings, rulings, and other matters of public record in the Delaware Chancery Court suit, the allegations are denied. Except as specifically admitted, TSI denies the allegations in ¶ 44.**

<u>**TSI's Unauthorized Filing of Collection Lawsuits
in the Name of the NCSLT Trusts, As Alleged**</u>

45.     TSI attempts to collect on loans purportedly held by the Trusts by mailing dunning letters directly or through agents, filing claims in bankruptcy cases, and filing collection actions in state courts.

**ANSWER: TSI admits its business activities include, under certain circumstances, collecting on accounts on behalf of the Trusts, filing proof of claims on behalf of the Trusts, referring accounts to collection agencies for collection on behalf of the Trusts, and referring accounts to counsel for collection on behalf of the Trusts. Except as specifically admitted, TSI denies the allegations in ¶ 45.**

46.     TSI utilizes an "Attorney Network" for its collection efforts involving litigation. TSI employees, titled as "legal compliance managers," direct attorneys retained by TSI to bring collection suits in the name of the Trusts.

**ANSWER: TSI admits it has access to attorneys throughout the country. Except as specifically admitted, TSI denies the allegations in ¶ 46.**

47.     When a lawsuit is brought by TSI in the name of one or more of the NCSLT Trusts, TSI directs the litigation, responds to discovery requests, and confers with the attorneys ostensibly representing the NCSLT Trusts, without input from the NCSLT Trusts

16

themselves.

**ANSWER: TSI denies the allegations in ¶ 47 as stated and avers it conducts its activities on behalf of the Trusts pursuant to the agreements under which it acts.**

48.     Although TSI institutes collection lawsuits in the names of the NCSLT Trusts and represents that it is acting on behalf of the NCSLT Trusts, the NCSLT Trusts have never actually approved the filing of such lawsuits by TSI. To the contrary, the NCSLT Trusts have sought an injunction to stop TSI from filing these actions. TSI, as agent of US Bank, has known or should have known since at least 2015 that it was not authorized by the NCSLT Trusts to bring lawsuits against borrowers in the name of the NCSLT Trusts.

**ANSWER: TSI denies the allegations in ¶ 48. *See also* Order Adopting Report and Recommendation (ECF No. 36); Report and Recommendation (ECF No. 28). Further answering, TSI avers it conducts its activities on behalf of the Trusts pursuant to the agreements under which it acts, and refers to the Delaware Chancery Court as the best evidence of its content. To the extent the allegations in ¶ 48 misstate or mischaracterize the pleadings, rulings, and other matters of public record in the Delaware Chancery Court suit, the allegations are denied.**

49.     In fact, the NCSLT Trusts are unable to exert direct control over the activities of TSI regarding the collection lawsuits. TSI is not and never has been an agent of the NCSLT Trusts – TSI is an agent of U.S. Bank as Special Servicer. Under the Special Servicing Agreement, U.S. Bank was responsible for "the enforcement, collection and servicing of Delinquent Loans and Defaulted Loans," including retaining counsel on behalf of the NCSLT Trusts.

**ANSWER:   The referenced Special Servicing Agreement speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 49 misstate or mischaracterize the Special Servicing Agreement, the allegations are denied.  Further answering, except as specifically admitted, TSI denies the allegations in ¶ 49 as calling for a legal conclusion.**

50.     Typically, lawsuits are initiated by TSI against borrowers in the name of the Trust that purportedly had been assigned the loan.

**ANSWER:   TSI denies the allegations in ¶ 50 as stated.**

51.     The Complaints in the TSI collection lawsuits represent, explicitly and/or implicitly, that the NCSLT Trusts are the parties bringing the lawsuits against the borrowers. In fact, the lawsuits are initiated and pursued by TSI without input, control, or even authorization from the NCSLT Trusts.

**ANSWER:   TSI denies the allegations in ¶ 51.**

52.     The Complaints in the TSI collection lawsuits represent, explicitly and/or implicitly, that an unbroken chain of title from the originating lenders to the NCSLT Trusts exist. In fact, this is not true.

**ANSWER:   The referenced Complaints speak for themselves and are the best evidence of their content. To the extent the allegations in ¶ 52 misstate or mischaracterize the referenced Complaints, the allegations are denied.  Further answering, except as specifically admitted, TSI denies the allegations in ¶ 52 as calling for a legal conclusion.**

53.     Affidavits and other documents prepared and filed by TSI in the collection

lawsuits represent, explicitly and/or implicitly, that TSI is acting on behalf of the NCSLT Trusts. In fact, such documents and affidavits are prepared and filed without input, control, or even authorization from the NCSLT Trusts.

**ANSWER:  The referenced Affidavits speak for themselves and are the best evidence of their content. To the extent the allegations in ¶ 53 misstate or mischaracterize the referenced Affidavits, the allegations are denied.  Further answering, except as specifically admitted, TSI denies the allegations in ¶ 53.**

## The Process of a Collection Lawsuit Initiated by TSI in the Name of the NCSLT Trusts, As Alleged

54.     When a Trust loan goes into default, PHEAA as servicer forwards to TSI an electronic file of information regarding the loan maintained in its system, called "OC Web" or "Compass."

**ANSWER:  Absent identification of the particular loan(s) that is/are the subject of this allegation, TSI denies the allegations for lack of sufficient information to justify a reasonable belief therein.**

55.     TSI also has records pertaining to loans in two other systems, "CRS" and "Media Locator." Scans of paper documents are kept in PDF or TIFF format in the Media Locator. Actual paper documents, whether duplicates or originals, are not retained.

**ANSWER:  Absent identification of the particular loan(s) that is/are the subject of this allegation, TSI denies the allegations for lack of sufficient information to justify a reasonable belief therein.**

56.     In the course of litigation, TSI employees execute "Affidavits of Account"

which purport to prove up the origination, assignment, and servicing of the loan.

**ANSWER: Absent identification of the particular loan(s), litigation, or affidavits that is/are the subject of this allegation, TSI denies the allegations for lack of sufficient information to justify a reasonable belief therein.**

57. TSI Affidavits of Account are prepared by an "affidavit production team," which merges loan and borrower data from TSI's system into a template affidavit using Microsoft Word.

**ANSWER: Absent identification of the particular loan(s), litigation, or affidavits that is/are the subject of this allegation, TSI denies the allegations for lack of sufficient information to justify a reasonable belief therein.**

58. The affidavit production team also pulls documents from various sources and attaches them to the affidavits as exhibits.

**ANSWER: Absent identification of the particular loan(s), litigation, or affidavits that is/are the subject of this allegation, TSI denies the allegations for lack of sufficient information to justify a reasonable belief therein.**

59. The affidavit and exhibits to be submitted in support of the TSI complaints are then forwarded together in batches to other TSI employees for execution.

**ANSWER: Absent identification of the particular loan(s), litigation, affidavits or exhibits that is/are the subject of this allegation, TSI denies the allegations for lack of sufficient information to justify a reasonable belief therein.**

60. When reviewing and executing the affidavit, TSI employees review only the merged affidavit and the documents attached thereto, and do not review any other records

or data associated with the account. The employees do not make an independent review of the loan records, merely approving what is provided to them, effectively acting as a "robo-signer."

**ANSWER: Absent identification of the particular loan(s), litigation, affidavits or exhibits that is/are the subject of this allegation, TSI denies the allegations for lack of sufficient information to justify a reasonable belief therein.**

61.    The merged affidavit refers to attached documents as "true copies" of certain relevant loan documents.

**ANSWER: Absent identification of the particular loan(s), litigation, affidavits or exhibits that is/are the subject of this allegation, TSI denies the allegations for lack of sufficient information to justify a reasonable belief therein.**

62.    For example, the TSI form affidavit will state that an exhibit is a "true copy" of the underlying promissory note on which the breach of contract action is based. These documents, however, are generated by the affidavit production team which cobbles together pages comprising the exhibit from separate databases.

**ANSWER: Absent identification of the particular loan(s), litigation, affidavits or exhibits that is/are the subject of this allegation, TSI denies the allegations for lack of sufficient information to justify a reasonable belief therein.**

63.    The document proffered as a true copy of the underlying note is in fact constructed from the signature page of the Note, taken from one electronic file, to which various "terms and conditions" pages are added from a separate file.

**ANSWER: Absent identification of the particular loan(s), litigation,**

21

**affidavits or exhibits that is/are the subject of this allegation, TSI denies the allegations for lack of sufficient information to justify a reasonable belief therein.**

64.     However, neither the "affidavit production team" nor the TSI employee executing the affidavit has any personal or direct knowledge that the terms and conditions they attached to the signature page were in fact the terms and conditions of the original Note actually signed by the borrower. Similarly, TSI and its employees are unable to establish how these documents were created by the original lender, or how the documents were maintained prior to transmittal to TSI. There is simply no basis for the TSI employee executing the Affidavit of Account to attest that the constructed exhibit is a "true copy" of the underlying Note associated with the loan.

**ANSWER: Absent identification of the particular loan(s), litigation, affidavits or exhibits that is/are the subject of this allegation, TSI denies the allegations for lack of sufficient information to justify a reasonable belief therein.**

65.     Similarly, the affidavit will state that an, attached exhibit is a "true copy" of the relevant Pool Supplement and a "redacted excerpt" of the schedule of loans purportedly assigned by the Pool Supplement.

**ANSWER: Absent identification of the particular loan(s), litigation, affidavits or exhibits that is/are the subject of this allegation, TSI denies the allegations for lack of sufficient information to justify a reasonable belief therein.**

66.     In fact, the Pool Supplement is often simply a downloaded copy, often incomplete, taken from the public SEC database or other source. Neither the "affidavit production team" nor the TSI employee executing the Affidavit of Account have any

22

knowledge of how these documents were created or maintained prior to transmittal to TSI. There is simply no basis for the TSI employee executing the affidavit to attest that the exhibit is a "true copy" of the Pool Supplement.

**ANSWER: Absent identification of the particular loan(s), litigation, affidavits or exhibits that is/are the subject of this allegation, TSI denies the allegations for lack of sufficient information to justify a reasonable belief therein.**

67.     Furthermore, the "redacted excerpt" is always taken from a separate data file and is not from a "schedule of loans" attached to the Pool Supplement. Neither the "affidavit production team" nor the TSI employee executing the affidavit has any basis to testify as to how this data file was compiled and maintained prior to transfer to TSI, or whether the loan described in the "excerpt" was in fact included in the loans assigned through the Pool Supplement, or that the schedule was attached to the Pool Supplement at the time of its execution.

**ANSWER: Absent identification of the particular loan(s), litigation, affidavits or exhibits that is/are the subject of this allegation, TSI denies the allegations for lack of sufficient information to justify a reasonable belief therein.**

**The CFPB Consent Order, As Alleged**

68.     On September 15, 2017, TSI stipulated to entry of a Consent Order from the Consumer Financial Protection Bureau ("CFPB") and agreed to pay a penalty of $2.5 million for violations related to its collection activities in the name of the NCSLT Trusts.

**ANSWER:  The referenced Consent Order speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 68 misstate or**

mischaracterize the terms of the Consent Order, the allegations are denied. Except as specifically admitted, TSI denies the allegations in ¶ 68.

69. The CFPB found in the Consent Order, stipulated and agreed to by TSI, that: (a) TSI had filed numerous lawsuits against consumers despite the absence of documentation proving that the Trusts owned the loans; (b) documentation of a chain of assignment from the original lender to the Trusts did not exist; and (c) TSI and attorneys hired through TSI's Attorney Network had filed collection lawsuits, even though it could not be proved that the debt was owed to the Trusts when contested by a borrower.

**ANSWER: The referenced Consent Order speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 69 misstate or mischaracterize the terms of the Consent Order, the allegations are denied. Except as specifically admitted, TSI denies the allegations in ¶ 69.**

70. The CFPB further found in the Consent Order, stipulated and agreed to by TSI, that TSI, acting through the law firms it retained, had represented, directly or indirectly, expressly or by implication, that when bringing a collection lawsuit it could be proven that the Trusts owned the loans in question, and that the consumers being sued owed the debt to the Trusts. This was untrue; in numerous instances TSI lacked documentation to prove the chain of title for the loans being sued upon, and/or the promissory notes needed to prove the existence of the loan and its terms.

**ANSWER: The referenced Consent Order speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 70 misstate or mischaracterize the terms of the Consent Order, the allegations are denied. Except as**

24

specifically admitted, TSI denies the allegations in ¶ 70.

71.     The CFPB found in the Consent Order stipulated and agreed to by TSI that these were material misrepresentations, likely to affect how a consumer would respond to a lawsuit, and likely to mislead a consumer acting reasonably under the circumstances.

**ANSWER:  The referenced Consent Order speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 71 misstate or mischaracterize the terms of the Consent Order, the allegations are denied. Except as specifically admitted, TSI denies the allegations in ¶ 71.**

72.     The CFPB found in the Consent Order stipulated and agreed to by TSI that consumers were injured by, among other things, making payments to settle debts that were not in fact enforceable.

**ANSWER:  The referenced Consent Order speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 72 misstate or mischaracterize the terms of the Consent Order, the allegations are denied. Except as specifically admitted, TSI denies the allegations in ¶ 72.**

## FACTUAL BACKGROUND

### The Lawsuits Against Plaintiff Merrill

73.     On or about March 6, 2019, the Shermeta Law Group filed an action in the 13th Judicial Circuit Court of Michigan, Grand Traverse County, on behalf of TSI but in the name of NCSLT 2005-3, naming Plaintiff Merrill as a defendant. This action was entitled NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3 V. ALLISON L. MERRILL, Case No. 19-34821-CK (hereinafter "the NCSLT 2005-3 Collection

Lawsuit"). The lawsuit alleged that Allison Merrill owed $36,816.10 on a Note that had been assigned to NCSLT Trust 2005-3. A copy of the Complaint is attached as Exhibit A.

**ANSWER:   The referenced action speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 73 misstate or mischaracterize the pleadings, rulings, and other matters of public record in the referenced action, the allegations are denied.**

74.   The Complaint and NCSLT 2005-3 Collection Lawsuit represented, explicitly and/or implicitly, that the lawsuit was filed with the authorization of and by NCSLT 2005-3. In fact, the lawsuit was filed by TSI in the name of NCSLT 2005-3 without authorization or direction from the NCSLT Trust.

**ANSWER:   The referenced action speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 74 misstate or mischaracterize the pleadings, rulings, and other matters of public record in the referenced action, the allegations are denied.**

75.   The Complaint and the NCSLT 2005-3 Collection Lawsuit represented, explicitly and/or implicitly, that an unbroken chain of title from the originating lenders to NCSLT 2005-3 existed. In fact, this is not true.

**ANSWER:   The referenced action speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 75 misstate or mischaracterize the pleadings, rulings, and other matters of public record in the referenced action, the allegations are denied.**

76.   In support of the NCSLT 2005-3 Collection Lawsuit, TSI employees created

and submitted an affidavit executed by TSI employee Jennifer A. Audet (the "Audet Affidavit"). A copy of that affidavit is attached as Exhibit B.

**ANSWER: TSI admits the Audet Affidavit was provided to counsel for NCSLT 2005-3 in the context of written discovery.  Except as specifically admitted, TSI denies the allegations in ¶ 76.**

77.     Ms. Audet attested that the document attached to the Audet Affidavit as "Exhibit B" is a "true copy" of the underlying Note for the loan on which the NCSLT 2005-3 Collection Lawsuit was based. In fact, "Exhibit B" was constructed from pages from two separate documents, and was created by TSI's "affidavit production team." When executing the Audet Affidavit, Ms. Audet had no knowledge whether the terms and attached to the signature page were in fact the terms and conditions of the Note actually signed by Plaintiff Merrill. Nor did Ms. Audet have knowledge of how these documents were created by the original lender, or how the documents were maintained prior to transmittal to TSI. There is simply no basis for her testimony that "Exhibit B" is a "true copy" of the underlying Note associated with the loan.

**ANSWER:   The Audet Affidavit speaks for itself and is the best evidence of its contents. To the extent the allegations in ¶ 77 misstate or mischaracterize the Audet Affidavit, the allegations are denied.  Further answering, except as specifically admitted, the allegations in ¶ 77 are denied.**

78.     TSI ultimately dismissed the NCSLT 2005-3 Collection Lawsuit with prejudice.

**ANSWER:   The official docket of the referenced action is the best evidence**

**of its content.  To the extent the allegations in ¶ 78 misstate or mischaracterize the pleadings, rulings, and other matters of public record in the referenced action, the allegations are denied.**

79.     On or about March 13, 2019 the Shermeta Law Group filed an action in the 13th Judicial Circuit Court of Michigan, Leelanau County, on behalf of TSI but in the name of NCSLT 2006-4, and naming Allison Merrill as a defendant. This action was entitled NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4 v ALLISON L. MERRILL and LOUANN L. MERRILL, Case No. 19-10267-CK (hereinafter "the NCSLT 2006-4 Collection Lawsuit"). The lawsuit alleged that Plaintiff Merrill owed $42,033.92 on a Note that had been assigned to NCSLT Trust 2006-4. A copy of the Complaint is attached as Exhibit C.

**ANSWER:   The referenced action speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 79 misstate or mischaracterize the pleadings, rulings, and other matters of public record in the referenced action, the allegations are denied.**

80.     The Complaint and the NCSLT 2006-4 Collection Lawsuit represented, explicitly and/or implicitly, that the lawsuit was filed with the authorization of and by NCSLT 2006-4. In fact, the lawsuit was filed by TSI in the name of NCSLT 2006-4 without authorization or direction from the NCSLT Trust.

**ANSWER:   The referenced action speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 80 misstate or mischaracterize the pleadings, rulings, and other matters of public record in the referenced action, the**

28

**allegations are denied.**

81.    The Complaint and the NCSLT 2006-4 Collection Lawsuit represented, explicitly and/or implicitly, that an unbroken chain of title from the originating lenders to NCSLT 2006-4 existed. In fact, this is not true.

**ANSWER:   The referenced action speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 81 misstate or mischaracterize the pleadings, rulings, and other matters of public record in the referenced action, the allegations are denied.**

82.    TSI ultimately dismissed the NCSLT 2006-4 Collection Lawsuit with prejudice.

**ANSWER:   The official docket of the referenced action is the best evidence of its content.  To the extent the allegations in ¶ 82 misstate or mischaracterize the pleadings, rulings, and other matters of public record in the referenced action, the allegations are denied.**

83.    At all times relevant to this complaint, TSI was acting as an agent of US Bank and not as the agent of the NCSLT Trusts.

**ANSWER:   TSI denies the allegations in ¶ 83 as calling for a legal conclusion.**

84.    At all times relevant to this complaint, TSI represented, explicitly or by implication: that it was acting on behalf of the NCSLT Trusts when it brought the NCSLT 2005-3 and NCSLT 2006-4 Collection Lawsuits; that the documents it presented to Plaintiff and the Court were "true and correct copies" of the Note and assignment of the loan at issue; and that Plaintiff Merrill was obligated to the NCSLT Trusts.

**ANSWER:   TSI denies the allegations in ¶ 84 as stated.**

85.     In fact, as outlined above, TSI and US Bank knew or should have known that these express and implied representations were false.

**ANSWER:   TSI denies the allegations in ¶ 85 as they relate to TSI.**

## The Garnishment of Plaintiff Wilk

86.     In 2014, TSI or its predecessor NCO, as agents for US Bank, obtained judgments against Plaintiff Wilk in two cases filed in the 22nd Judicial Circuit Court of Michigan, Washtenaw County, entitled NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3 v BRITTANY WILK Case No. 131036-CK and NATIONAL COLLEGIATE STUDENT LOAN TRUST 20042 v BRITTANY WILK Case No. 14477-CK (respectively, "NCSLT 2006-3 Collection Lawsuit" and "NCSLT 2004-2 Collection Lawsuit," and collectively, the "Wilk Collection Lawsuits").

**ANSWER:   TSI denies Wilk remains a proper party plaintiff in this action, as all claims she asserted in the Class Action Complaint have been dismissed.  *See* Order Adopting Report and Recommendation (ECF No. 36); *see also* Report and Recommendation (ECF No. 28). To the extent an answer is deemed to be required, the referenced action speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 86 misstate or mischaracterize the pleadings, rulings, and other matters of public record in the referenced action, the allegations are denied.**

87.     The Complaints in the Wilk Collection Lawsuits represented, explicitly and/or implicitly, that the actions were filed with the authorization of and by the NCSLT Trusts. In fact, the actions were filed by TSI or its predecessor NCO, as agents for US

Bank, without authorization or direction from the NCSLT Trusts.

**ANSWER: TSI denies Wilk remains a proper party plaintiff in this action, as all claims she asserted in the Class Action Complaint have been dismissed. *See* Order Adopting Report and Recommendation (ECF No. 36); *see also* Report and Recommendation (ECF No. 28). To the extent an answer is deemed to be required, the referenced action speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 87 misstate or mischaracterize the pleadings, rulings, and other matters of public record in the referenced action, the allegations are denied.**

88.     The Complaint and the Wilk Collection Lawsuits represented, explicitly and/or implicitly, that an unbroken chain of title from the originating lenders to the NCSLT Trusts existed. In fact, this is not true.

**ANSWER: TSI denies Wilk remains a proper party plaintiff in this action, as all claims she asserted in the Class Action Complaint have been dismissed. *See* Order Adopting Report and Recommendation (ECF No. 36); *see also* Report and Recommendation (ECF No. 28). To the extent an answer is deemed to be required, the referenced action speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 88 misstate or mischaracterize the pleadings, rulings, and other matters of public record in the referenced action, the allegations are denied.**

89.     Because the Wilk Collection Lawsuits were filed without the authorization of the NCSLT Trusts, and without a chain of title from the original lenders to the NCSLT Trusts, and because the plaintiffs in those actions knew or should have known of these fatal defects, the Judgments obtained in 2014 by TSI or its predecessor NCO, were obtained

through fraud.

**ANSWER:   TSI denies Wilk remains a proper party plaintiff in this action, as all claims she asserted in the Class Action Complaint have been dismissed.  *See* Order Adopting Report and Recommendation (ECF No. 36); *see also* Report and Recommendation (ECF No. 28). To the extent an answer is deemed to be required, TSI denies the allegations in ¶ 89.**

90.    On or about November 4, 2019, Defendant TSI served a Writ of Garnishment in the NCSLT 2006-3 Collection Lawsuit on the Michigan Department of Treasury, seeking to attach Plaintiff Wilk's Michigan income tax refund.

**ANSWER:   TSI denies Wilk remains a proper party plaintiff in this action, as all claims she asserted in the Class Action Complaint have been dismissed.  *See* Order Adopting Report and Recommendation (ECF No. 36); *see also* Report and Recommendation (ECF No. 28). To the extent an answer is deemed to be required, the referenced action speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 90 misstate or mischaracterize the pleadings, rulings, and other matters of public record in the referenced action, the allegations are denied.**

91.    On September 10, 2019, Defendant TSI served a Writ of Periodic Garnishment on Plaintiff Wilk's Employer, seeking garnishment of her paycheck.

**ANSWER:   TSI denies Wilk remains a proper party plaintiff in this action, as all claims she asserted in the Class Action Complaint have been dismissed.  *See* Order Adopting Report and Recommendation (ECF No. 36); *see also* Report and Recommendation (ECF No. 28). To the extent an answer is deemed to be required,**

**the referenced action speaks for itself and is the best evidence of its content. To the extent the allegations in ¶ 91 misstate or mischaracterize the pleadings, rulings, and other matters of public record in the referenced action, the allegations are denied.**

92.     The above garnishments represented, explicitly and/or implicitly, that the garnishments were filed with the authorization of and by the NCSLT Trusts. In fact, the garnishments were filed by TSI in the name of NCSLT Trusts without authorization or direction from the NCSLT Trusts.

**ANSWER:   TSI denies Wilk remains a proper party plaintiff in this action, as all claims she asserted in the Class Action Complaint have been dismissed.  *See* Order Adopting Report and Recommendation (ECF No. 36); *see also* Report and Recommendation (ECF No. 28). To the extent an answer is deemed to be required, the referenced garnishments speak for themselves and are the best evidence of their content. To the extent the allegations in ¶ 92 misstate or mischaracterize the pleadings, rulings, and other matters of public record in the referenced garnishments, the allegations are denied.**

93.     Pursuant to the garnishments filed by Defendant TSI, Plaintiff Wilk has had her personal funds seized by TSI.

**ANSWER:   TSI denies Wilk remains a proper party plaintiff in this action, as all claims she asserted in the Class Action Complaint have been dismissed.  *See* Order Adopting Report and Recommendation (ECF No. 36); *see also* Report and Recommendation (ECF No. 28). To the extent an answer is deemed to be required, TSI denies the allegations in ¶ 93.**

94.     At all times relevant to this complaint, when Plaintiffs or Class Members made payments to or had funds seized by TSI through garnishment or judgment execution measures, TSI and the other Defendants represented, explicitly or by implication, that TSI was collecting such payments or funds on behalf of the legal owners of loans, and that Plaintiffs or Class Members were legally obligated to make payments to TSI as authorized agents for the NCSLT Trusts.

**ANSWER:   TSI denies the allegations in ¶ 94.**

95.     TSI and the other Defendants knew or should have known as early as 2015 that the loans sued upon had not, in fact, been assigned to the NCSLT Trusts, and Plaintiffs and Class Members were therefore not legally obligated to make payments to TSI. TSI and the other Defendants knew or should have known as early as 2015 that TSI was not authorized to bring suit against the Plaintiffs and Class Members on behalf of the NCSLT Trusts.

**ANSWER:   TSI denies the allegations in ¶ 95 as they relate to TSI.**

96.     Plaintiffs and Class Members were harmed by the actions of TSI and the other Defendants by incurring costs to defend the lawsuits filed by TSI without authorization, damaging their credit scores and reputations, and making payments to or being garnished by TSI, for loans which were not collectible.

**ANSWER:   TSI denies the allegations in ¶ 96 and further denies that this lawsuit meets the requirements of a class action.**

## CLASS ACTION ALLEGATIONS

97.     Plaintiff brings this class action on behalf of herself and all others similarly

situated pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure.

**ANSWER:  TSI admits that plaintiff Merrill purports to bring this class action on behalf of herself and all others similarly situated pursuant to the Federal Rules enumerated in ¶ 97, but denies the allegations and further denies that this lawsuit meets the requirements of a class action.**

98.    Plaintiff seeks to certify a class of all persons who were subject to collection efforts by Defendants TSI and US Bank in the name of one or more NCSLT Trusts within the applicable statute of limitations, as well as a subclass of Michigan citizens who have claims under Michigan state statutes.

**ANSWER:  TSI admits that plaintiff Merrill seeks to certify a class as stated in ¶ 98 but denies the allegations and further denies that this lawsuit meets the requirements of a class action.**

99.    Excluded from the Class are: Defendants and their officers, directors, and employees; the Court, the Court's immediate family, and all Court staff; and Plaintiffs' attorneys and their immediate family members.

**ANSWER:  TSI admits that plaintiff Merrill seeks to exclude those individuals and entities listed in ¶ 99 but denies the allegations and further denies that this lawsuit meets the requirements of a class action.**

100.    **Numerosity**: The class described above is so numerous that joinder of all individual members in one action would be impracticable. On information and belief and within the applicable statute of limitations, TSI has filed thousands of actions in Michigan

seeking to enforce uncollectible loans, and has collected funds from hundreds if not thousands of persons through these same actions. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court, and will facilitate judicial economy.

**ANSWER:  TSI denies the allegations in ¶ 100 and further denies that this lawsuit meets the requirements of a class action.**

101.   **Ascertainability:** The class is ascertainable because Defendants keep and collect the information of each class member in a detailed electronic database, and Defendants record when class members are sued and/or garnished.

**ANSWER:  TSI denies the allegations in ¶ 101 and further denies that this lawsuit meets the requirements of a class action.**

102.   **Typicality:** Plaintiffs' claims are typical of the claims of the members of the class. The claims of the Plaintiffs and members of the class are based on the same legal theories and arise from the same unlawful conduct. The claims of Plaintiffs and the Class arise from the same practices. As such, the claims of Plaintiffs and the Class rise and fall together and are typical of one another.

**ANSWER:  TSI denies the allegations in ¶ 102 and further denies that this lawsuit meets the requirements of a class action.**

103.   **Common Questions of Fact and Law Predominate:** There are numerous questions of law or fact common to all class members, including: whether TSI and US Bank are acting on behalf of the NCSLT Trusts when they file lawsuits and collect on loans; whether the loans were properly assigned to Defendants; and whether the allegations

in the collection lawsuits brought by Defendants were made fraudulently. These questions and others like them predominate over individual issues. The same evidence needed to prove Plaintiffs' individual claims will be used to prove the claims of all Class Members.

**ANSWER: TSI denies the allegations in ¶ 103 and further denies that this lawsuit meets the requirements of a class action.**

104. **Adequacy of Representation:** Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the members of the class. Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of the members of the class and have no interests antagonistic to the members of the class. Plaintiffs have retained counsel who are competent and experienced in the prosecution of complex consumer class action litigation.

**ANSWER: TSI denies the allegations in ¶ 104 and further denies that this lawsuit meets the requirements of a class action.**

105. **Superiority:** The injury sustained by each class member, while meaningful on an individual basis, is not of such magnitude that it is economically feasible to prosecute individual actions against Defendants. Even if it were economically feasible, requiring a myriad of injured plaintiffs to file individual suits would impose a crushing burden on the court system and almost certainly lead to inconsistent judgments. By contrast, 'class treatment will present far fewer management difficulties and provide the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

**ANSWER: TSI denies the allegations in ¶ 105 and further denies that this lawsuit meets the requirements of a class action.**

37

106.    Class certification also is appropriate pursuant to Fed. R. Civ. P. 23(b)(2)

because Defendants have acted or refused to act on grounds generally applicable to the

Class, making appropriate both declaratory and injunctive relief with respect to Plaintiffs

and the Class as a whole.

**ANSWER:   TSI denies the allegations in ¶ 106 and further denies that this**

**lawsuit meets the requirements of a class action.**

<u>**COUNT I**</u>
<u>**ALLEGED VIOLATION OF THE**</u>
<u>**FAIR DEBT COLLECTION PRACTICES ACT**</u>
<u>**15 U.S.C. § 1692 et seq.**</u>

107.    The Fair Debt Collection Practices Act (the "FDCPA" or the "Act") was

enacted "to eliminate abusive debt collection practices . . . and . . . to protect consumers

against debt collection practice abuses." 15 U.S.C. § 1692e. Under the FDCPA, 15 U.S.C.

§§ 1692k(a), 1692e, and 1692f, a debt collector is subject to civil liability if it "use[s] any

false, deceptive, or misleading representation or means in connection with the collection

of any debt," or if it "use[s] unfair or unconscionable means to collect or attempt to collect

any debt." The Act imposes liability for "conduct the natural consequence of which is to

harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C.

§ 1692(d).

**ANSWER:   ¶ 107 contains a legal conclusion which requires no response. To**

**the extent a response is deemed to be required, TSI denies any violations, wrongdoing,**

**liability or damages to the extent alleged in ¶ 107.**

108.    A "debt collector" is defined by the FDCPA as "any person [1] who uses any

instrumentality of interstate commerce or the mails in any business the principal purpose

of which is the collection of any debts, or [2] who regularly collects or attempts to collect,

directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.

§ 1692a(6).

**ANSWER:   ¶ 108 contains a legal conclusion which requires no response. To the extent a response is deemed to be required, TSI denies any violations, wrongdoing, liability or damages to the extent alleged in ¶ 108.**

109.    Defendants are "debt collectors" as defined by the FDCPA for purposes of

this action.

**ANSWER:   ¶ 109 contains a legal conclusion which requires no response. To the extent a response is deemed to be required, TSI denies any violations, wrongdoing, liability or damages to the extent alleged in ¶ 109.**

110.    The FDCPA applies to improper legal actions taken in an attempt to collect

a debt, and applies to actions taken through an attorney, such as the filing of a complaint.

"Many courts have recognized that a company may be held vicariously liable for the

collection activities of attorneys working on its behalf." *Schutz v. Arrow Fin. Servs., LLC,*

465 F. Supp. 2d 872, 876 (D. Ill. 2006); *Kimber v. Fed. Fin. Corp.,* 668 F. Supp. 1480,

1486 (M.D. Ala. 1987).

**ANSWER:   ¶ 110 contains a legal conclusion which requires no response. To the extent a response is deemed to be required, TSI denies any violations, wrongdoing, liability or damages to the extent alleged in ¶ 110.**

111.    Section 1692(k) of the FDCPA states that "any debt collector who fails to

comply with any provision of [the Act] with respect to any person is liable to such person" in the amount of that person's actual damages, as well as such additional damages as the Court may allow not to exceed $1,000.

**ANSWER: ¶ 111 contains a legal conclusion which requires no response. To the extent a response is deemed to be required, TSI denies any violations, wrongdoing, liability or damages to the extent alleged in ¶ 111.**

112. Section 1692k(a)(3) provides that in an action to enforce the FDCPA, the Court may award a successful plaintiff "the costs of the action, together with a reasonable attorney's fee as determined by the court."

**ANSWER: ¶ 112 contains a legal conclusion which requires no response. To the extent a response is deemed to be required, TSI denies any violations, wrongdoing, liability or damages to the extent alleged in ¶ 112.**

113. Section 1692e of the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Without limiting what constitutes false, deceptive, or misleading representations or means, § 1692e states that, among others, it is a violation of the Act to make a false representation with respect to the "character, amount, or legal status of any debt."

**ANSWER: ¶ 113 contains a legal conclusion which requires no response. To the extent a response is deemed to be required, TSI denies any violations, wrongdoing, liability or damages to the extent alleged in ¶ 113.**

114. Section 1692f of the FDCPA prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect any debt. Without limiting what

constitutes an "unfair or unconscionable means," §1692f states that, among others, it is a violation of the Act to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless the amount is expressly authorized by the agreement creating the debt or permitted by law.

**ANSWER: ¶ 114 contains a legal conclusion which requires no response. To the extent a response is deemed to be required, TSI denies any violations, wrongdoing, liability or damages to the extent alleged in ¶ 114.**

115. Defendants misrepresented material facts regarding the alleged debt and violate the FDCPA, by, among others:

a. False representing, directly or indirectly, expressly or by implication, that their actions, including the filing of collection lawsuits and/or collecting on the purported debts, were authorized by the NCSLT Trusts, when in fact no such authorization existed and/or was rescinded expressly or by implication;

b. Falsely representing, directly or indirectly, expressly or by implication, that it could be proven that the Trusts owned the loans in question, when in fact no valid and enforceable assignment existed; and

c. Falsely representing, directly or indirectly, expressly or by implication, that the documents they filed and served in collection actions were true and accurate copies of original instruments and could be authenticated by TSI, when, in fact, such documents were

41

either inadmissible hearsay, or created by TSI for litigation purposes.

**ANSWER:   TSI denies any violations, wrongdoing, liability or damages, and further denies the allegations in ¶ 115.   Further answering, TSI denies ¶ 115, subparagraph (a) on the basis that this claim has been dismissed.  *See* Order Adopting Report and Recommendation (ECF No. 36); *see also* Report and Recommendation (ECF No. 28).**

116.   As a direct and proximate result of Defendants' violations, Plaintiffs and Class Members have suffered actual damages, including but not limited to: payments made to TSI or collected by TSI or others on debts that were in fact not legally enforceable; the costs associated with defending the collection lawsuits; and such other damages as may be proved at trial.

**ANSWER:   TSI denies any violations, wrongdoing, liability or damages, and further denies the allegations in ¶ 116.**

## COUNT II
## ALLEGED VIOLATION OF THE
## MICHIGAN COLLECTION PRACTICES ACT
## MCL §445.251 et seq.

117.   The Michigan Collection Practices Act (the "MCPA") MCL § 445.251 *et seq.* regulates debt collection in Michigan.

**ANSWER:   ¶ 117 contains a legal conclusion which requires no response. To the extent a response is deemed to be required, TSI denies any violations, wrongdoing, liability or damages to the extent alleged in ¶ 117.**

118.   Defendants are "regulated persons" as defined by the MCPA.

42

**ANSWER:   ¶ 118 contains a legal conclusion which requires no response. To the extent a response is deemed to be required, TSI denies any violations, wrongdoing, liability or damages to the extent alleged in ¶ 118.**

119.   MCL § 445.252(a) prohibits communicating with a debtor in a misleading or deceptive manner.

**ANSWER:   ¶ 119 contains a legal conclusion which requires no response. To the extent a response is deemed to be required, TSI denies any violations, wrongdoing, liability or damages to the extent alleged in ¶ 119.**

120.   MCL § 445.252(e) prohibits making inaccurate, misleading, untrue, or deceptive statements or claims in connection with collection of a debt.

**ANSWER:   ¶ 120 contains a legal conclusion which requires no response. To the extent a response is deemed to be required, TSI denies any violations, wrongdoing, liability or damages to the extent alleged in ¶ 120.**

121.   MCL § 445.252(f) prohibits misrepresenting in a communication with a debtor, among others, the legal status of a legal action being taken or threatened.

**ANSWER:   ¶ 121 contains a legal conclusion which requires no response. To the extent a response is deemed to be required, TSI denies any violations, wrongdoing, liability or damages to the extent alleged in ¶ 121.**

122.   Defendants misrepresented material facts regarding the alleged debt and violated the MCPA, by, among others:

a.   Falsely representing, directly or indirectly, expressly or by implication, that their actions, including the filing of collection

lawsuits and/or collecting on the purported debts were authorized by the NCSLT Trusts, when in fact no such authorization existed and/or was rescinded expressly or by implication;

b.      Falsely representing, directly or indirectly, expressly or by implication, that it could be proven that the Trusts owned the loans in question when in fact no valid and enforceable assignment existed; and

c.      False representing, directly or indirectly expressly or by implication, that the documents it filed and serve in collection actions were true and accurate copies or original instruments and could be authenticated by TSI, when, in fact, such documents were inadmissible hearsay or created by TSI for litigation purposes.

**ANSWER:   TSI denies any violations, wrongdoing, liability or damages, and further denies the allegations in ¶ 122.   Further answering, TSI denies ¶ 122, subparagraph (a) on the basis that this claim has been dismissed.  *See* Order Adopting Report and Recommendation (ECF No. 36); *see also* Report and Recommendation (ECF No. 28).**

123.    As a direct and proximate result of Defendants' violations, Plaintiff and Class Members have suffered actual damages, including but not limited to: payments made to TSI or collected by TSI or others on debts that were in fact not legally enforceable; the costs associated with defending the collection lawsuits; and such other damages as may be proved at trial.

44

**ANSWER:   TSI denies any violations, wrongdoing, liability or damages, and further denies the allegations in ¶ 123.**

### COUNT III
### ALLEGED VIOLATION OF THE
### MICHIGAN OCCUPATIONAL CODE
### MCL §339.901 et seq. (TSI)

124.   This Count is pleaded in the alternative against Defendant TSI only.

**ANSWER:   The allegations in ¶ 124 make no averment against TSI for which a response is required.**

125.   The Michigan Occupational Code MCL § 339.901 et seq. regulates the activities of debt collection agencies in Michigan.

**ANSWER:   ¶ 125 contains a legal conclusion which requires no response. To the extent a response is deemed to be required, TSI denies any violations, wrongdoing, liability or damages to the extent alleged in ¶ 125.**

126.   Defendant TSI is a "collection agency" as that term is defined by the Code. MCL § 339.901(1)(b).

**ANSWER:   ¶ 126 contains a legal conclusion which requires no response. To the extent a response is deemed to be required, TSI denies any violations, wrongdoing, liability or damages to the extent alleged in ¶ 126.**

127.   MCL § 339.915(a) prohibits communicating with a debtor in a misleading or deceptive manner.

**ANSWER:   ¶ 127 contains a legal conclusion which requires no response. To the extent a response is deemed to be required, TSI denies any violations, wrongdoing,**

45

**liability or damages to the extent alleged in ¶ 127.**

128.    MCL § 339.915(e) prohibits making inaccurate, misleading, untrue, or deceptive statements or claims in connection with collecting a debt.

**ANSWER:   ¶ 128 contains a legal conclusion which requires no response. To the extent a response is deemed to be required, TSI denies any violations, wrongdoing, liability or damages to the extent alleged in ¶ 128.**

129.    MCL § 339.915(f) prohibits misrepresenting in a communication with a debtor, among other things, the legal status of a legal action being taken or threatened.

**ANSWER:   ¶ 129 contains a legal conclusion which requires no response. To the extent a response is deemed to be required, TSI denies any violations, wrongdoing, liability or damages to the extent alleged in ¶ 129.**

130.    Defendant TSI misrepresented material facts regarding the alleged debts and violated the Code, by, among others:

a.    Falsely representing, directly or indirectly, expressly or by implication, that its actions, including the filing of collection lawsuits and/or collecting on the purported debts, were authorized by the NCSLT Trusts, when in fact no such authorization existed and/or was rescinded expressly or by implication;

b.    False representing, directly and indirectly, expressly or by implication, that it could be proven that the Trusts owned the loans in question when in fact no valid and enforceable assignment existed; and

    c.    False representing, directly or indirectly, expressly or by implication, that the documents it filed and serve in collection actions were true and accurate copies of original instruments and could be authenticated by TSI, when, in fact, such documents were either inadmissible hearsay or created by TSI for litigation purposes.

**ANSWER:   TSI denies any violations, wrongdoing, liability or damages, and further denies the allegations in ¶ 130.   Further answering, TSI denies ¶ 130, subparagraph (a) on the basis that this claim has been dismissed.  *See* Order Adopting Report and Recommendation (ECF No. 36); *see also* Report and Recommendation (ECF No. 28).**

131.   As a direct and proximate result of Defendant's violations, Plaintiffs and Class Members have suffered actual damages, including but not limited to: payments made to TSI or collected by TSI or others on debts that were in fact not legally enforceable; the costs associated with defending the collection lawsuits; and such other damages as may be proved at trial.

**ANSWER:   TSI denies any violations, wrongdoing, liability or damages, and further denies the allegations in ¶ 131.**

<u>**COUNT IV**</u>
<u>**ALLEGED VIOLATION OF MCL § 600.2907**</u>

132.   Mich. Comp. Law § 600.2907 provides that "[e]very person who shall, for vexation and trouble or maliciously, cause or procure any other to be . . . in any way proceeded against, by any process or civil or criminal action, or in any other manner

prescribed by law, to answer to the suit or prosecution of any person, without the consent of such person, . . . shall be liable to the person so arrested, attached or proceeded against, in treble the amount of the damages and expenses which, by any verdict, shall be found to have been sustained and incurred by him…"

**ANSWER: TSI denies ¶ 132 on the basis that plaintiffs' Mich. Comp. Law § 600.2907 claims have been dismissed.** *See* **Order Adopting Report and Recommendation (ECF No. 36);** *see also* **Report and Recommendation (ECF No. 28). To the extent an answer is deemed to be required, ¶ 132 contains a legal conclusion which requires no response. Further answering, TSI denies any violations, wrongdoing, liability or damages to the extent alleged in ¶ 132.**

133. Defendants TSI and US Bank, by filing lawsuits and garnishing consumers in the names of the various NCSLT Trusts without the consent of the NCSLT Trusts, have violated MCL § 600.2907.

**ANSWER: TSI denies ¶ 133 on the basis that plaintiffs' Mich. Comp. Law § 600.2907 claims have been dismissed.** *See* **Order Adopting Report and Recommendation (ECF No. 36);** *see also* **Report and Recommendation (ECF No. 28). To the extent an answer is deemed to be required, TSI denies any violations, wrongdoing, liability or damages, and further denies the allegations in ¶ 133 as it relates to TSI.**

134. The actions of Defendants TSI and US Bank were malicious in that TSI and US Bank knew or should have known that TSI was not authorized by the NCSLT Trusts to proceed against persons by filing lawsuits and collecting garnishments in the name of

48

the NCSLT Trusts.

**ANSWER: TSI denies ¶ 134 on the basis that plaintiffs' Mich. Comp. Law § 600.2907 claims have been dismissed.** *See* **Order Adopting Report and Recommendation (ECF No. 36);** *see also* **Report and Recommendation (ECF No. 28). To the extent an answer is deemed to be required, TSI denies any violations, wrongdoing, liability or damages, and further denies the allegations in ¶ 134 as it relates to TSI.**

135. As a direct and proximate result of Defendants' violations, Plaintiffs and Class Members have suffered actual damages, including but not limited to: payments made to TSI or collected by TSI or others on debts that were in fact not legally enforceable; the costs associated with defending the collection lawsuits; and such other damages as may be proved at trial.

**ANSWER: TSI denies ¶ 135 on the basis that plaintiffs' Mich. Comp. Law § 600.2907 claims have been dismissed.** *See* **Order Adopting Report and Recommendation (ECF No. 36);** *see also* **Report and Recommendation (ECF No. 28). To the extent an answer is deemed to be required, TSI denies any violations, wrongdoing, liability or damages, and further denies the allegations in ¶ 135.**

## COUNT V
## ALLEGED UNJUST ENRICHMENT

136. Defendants TSI and US Bank have obtained a benefit from Plaintiffs and Class Members in the form of payments and/or seizures by garnishment of Plaintiffs' and Class Members' personal funds, as described above.

49

**ANSWER: TSI denies ¶ 136 on the basis that plaintiffs' Unjust Enrichment claims have been dismissed.** *See* **Order Adopting Report and Recommendation (ECF No. 36);** *see also* **Report and Recommendation (ECF No. 28). To the extent an answer is deemed to be required, TSI denies the allegations in ¶ 136 and further denies that this lawsuit meets the requirements of a class action.**

137. It would be inequitable for Defendants to retain the benefit so obtained.

**ANSWER: TSI denies ¶ 137 on the basis that plaintiffs' Unjust Enrichment claims have been dismissed.** *See* **Order Adopting Report and Recommendation (ECF No. 36);** *see also* **Report and Recommendation (ECF No. 28). To the extent an answer is deemed to be required, TSI denies the allegations in ¶ 137.**

138. Defendants' actions as described herein constitute unjust enrichment of Defendants at Plaintiffs' and Class Members' expense.

**ANSWER: TSI denies ¶ 138 on the basis that plaintiffs' Unjust Enrichment claims have been dismissed.** *See* **Order Adopting Report and Recommendation (ECF No. 36);** *see also* **Report and Recommendation (ECF No. 28). To the extent an answer is deemed to be required, TSI denies any violations, wrongdoing, liability or damages, and further denies the allegations in ¶ 138.**

139. As a direct and proximate result of Defendants' violations, Plaintiffs' and Class Members have suffered actual damages through payments made to or collection by TSI or others on debts that were in fact not legally enforceable, in such amount as may be proved at trial.

**ANSWER: TSI denies ¶ 139 on the basis that plaintiffs' Unjust Enrichment**

**claims have been dismissed.** *See* **Order Adopting Report and Recommendation (ECF No. 36);** *see also* **Report and Recommendation (ECF No. 28). To the extent an answer is deemed to be required, TSI denies any violations, wrongdoing, liability or damages, and further denies the allegations in ¶ 139.**

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for judgment against Defendants as follows:

a.    For actual damages according to proof;

b.    For compensatory damages as permitted by law;

c.    For consequential damages as permitted by law;

d.    For statutory damages as permitted by law;

e.    For punitive damages as permitted by law;

f.    For equitable relief, including restitution;

g.    For interest as permitted by law;

h    For injunctive relief;

i.    For reasonable attorneys' fees and costs as provided by statute; and

j.    For such other relief as is just and proper.

**ANSWER:  In response to the allegations following ¶ 139, which constitutes a prayer for relief, TSI denies that plaintiffs are entitled to any relief, including the relief sought**.

## JURY TRIAL DEMANDED

Plaintiff hereby respectfully request a jury trial on all issues so triable.

**ANSWER:   In response to the allegations following ¶ 139, which constitutes a**

**Jury Demand, TSI admits that plaintiffs purport to seek a trial by jury, but denies that plaintiffs are entitled to any relief**.

## AFFIRMATIVE DEFENSES

AND NOW, in further Answer to the Complaint, Defendant Transworld Systems Inc. avers as follows:

### FIRST AFFIRMATIVE DEFENSE

Plaintiff Wilk is not entitled to any relief under the FDCPA, the MCPA, and the MOC, as her claims for such relief have been dismissed. *See* Order Adopting Report and Recommendation (ECF No. 36); *see also* Report and Recommendation (ECF No. 28).

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs Wilk and Merrill are not entitled to any relief under 15 U.S.C. § 1692f(1) upon an allegation that TSI misrepresented that the Trusts authorized the filing of lawsuits/garnishments, as TSI made no such misrepresentation and plaintiffs' claims for such relief have been dismissed. *See* Order Adopting Report and Recommendation (ECF No. 36); *see also* Report and Recommendation (ECF No. 28).

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs Wilk and Merrill are not entitled to any relief under the MCPA and MOC upon an allegation that TSI misrepresented that the Trusts authorized the filing of lawsuits/garnishments, as TSI made no such misrepresentation and plaintiffs' claims for such relief have been dismissed. *See* Order Adopting Report and Recommendation (ECF No. 36); *see also* Report and Recommendation (ECF No. 28).

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs Wilk and Merrill are not entitled to any relief under Mich. Comp. Law § 600.2907, as their claims for such relief have been dismissed. *See* Order Adopting Report and Recommendation (ECF No. 36); *see also* Report and Recommendation (ECF No. 28).

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs Wilk and Merrill are not entitled to any relief for unjust enrichment, as their claims for such relief have been dismissed. *See* Order Adopting Report and Recommendation (ECF No. 36); *see also* Report and Recommendation (ECF No. 28).

## SIXTH AFFIRMATIVE DEFENSE

Pursuant to 15 U.S.C. § 1692k(c), to the extent a violation(s) is established and in the event TSI is found to be a debt collector as defined in the FDCPA, which is specifically denied, any such violation(s) was not intentional and resulted from a *bona fide* error, notwithstanding the maintenance of procedures reasonably adapted to avoid such error. TSI maintains robust procedures designed to ensure compliance with the FDCPA. TSI trains its employees on compliance procedures and regularly reviews and updates its procedures. TSI's procedures are reasonably adapted to prevent the violations of the FDCPA that have been alleged by the plaintiff herein.

## SEVENTH AFFIRMATIVE DEFENSE

TSI denies any liability; however, regardless of liability, plaintiffs have suffered no actual damages as a result of TSI's purported violations.

## EIGHTH AFFIRMATIVE DEFENSE

Assuming plaintiff suffered any damages, which is denied, plaintiffs have failed to

mitigate damages or take other reasonable steps to avoid or reduce their damages.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are subject to a set-off.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs have not incurred an injury-in-fact, and plaintiffs do not therefore have

standing under Article III of the United States Constitution to bring the instant claims.

## ELEVENTH AFFIRMATIVE DEFENSE

Any harm suffered by plaintiffs was legally and proximately caused by persons or

entities other than TSI and were beyond the control or supervision of TSI or for whom TSI

was and is not responsible and liable.

## TWELFTH AFFIRMATIVE DEFENSE

This action should not be maintained as a class action because individual questions

predominate over common questions of law and fact, and a class action is not superior to

other available methods for the fair and efficient adjudication of the matter.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs fail in whole or in part to satisfy the requirements for a class action.

WHEREFORE, Defendant, Transworld Systems Inc., respectfully requests that

Plaintiffs' lawsuit be dismissed, with prejudice, and for all other general and equitable

relief.

Dated: February 4, 2021      Respectfully Submitted,

/s/ *Justin H. Homes*
Bryan C. Shartle
Justin H. Homes

54

Bradley J. St. Angelo
SESSIONS, ISRAEL & SHARTLE
3850 N. Causeway Blvd., Suite 200
Metairie, LA 70002
Telephone: (504) 828-3700
Facsimile: (504) 828-3737
Email: bshartle@sessions.legal
Email: jhomes@sessions.legal
Email: bstangelo@sessions.legal

Deborah A. Lujan (MI Bar # P46990)
Collins, Einhorn, Farrell & Ulanoff, P.C.
4000 Town Center, 9th Floor
Southfield, MI 48075
Telephone: (248) 355-4141
Email: deborah.lujan@ceflawyers.com

*Attorneys for Defendant,*
*Transworld Systems Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2021, a copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record herein.

*/s/ Justin H. Homes*
Justin H. Homes
SESSIONS, ISRAEL & SHARTLE
Email: jhomes@sessions.legal

55